JEFFERY J. DAAR (SBN 105536)
jdaar@daarnewman.com
DAAR & NEWMAN
A Professional Law Corporation
21700 Oxnard Street, Suite 350
Woodland Hills, CA 91367
(818) 615-0999      FAX: (818) 615-1066

Attorneys for Applicant
MAHMOUD VAHABZADEH, an individual

**FILED**

JUL 13 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 20                    80116MISC

IN RE APPLICATION OF
MAHMOUD VAHABZADEH, AN
INDVIDUAL, PURSUANT TO 28
U.S.C. § 1782 FOR TAKING OF
DISCOVERY FOR USE IN
FOREIGN PROCEEDING,

              Applicant.

CASE NO.

DECLARATION OF KENNETH M.
WEISSBERG IN SUPPORT OF EX PARTE
APPLICATION FOR DISCOVERY
PURSUANT TO 28 U.S.C. § 1782

I, KENNETH M. WEISSBERG declare and state as follows:

1.      I am an attorney duly admitted to practice law in France and I am admitted to the Paris Bar since 1979. I have been sworn and am licensed in New York State in 1986 as a Legal Consultant pursuant to Judiciary Law sec. 53 and in Florida I have been a Foreign Legal Consultant in Law of France since 2000. In addition to obtaining my *Juris doctorate* ("*maîtrise en droit*") at the University of Nice in France. I have also obtained a Master of Laws degree from New York University, in New York City. I submit this Declaration in support of Mahmoud VAHABZADEH's Ex Parte Application for

///

-1-

DECLARATION OF KENNETH M. WEISSBERG

DAAR & NEWMAN, PLC

Discovery Pursuant to U.S.C § 1782 (the "Application"). If called upon, I could and would competently testify to the following facts of my own personal knowledge.

2.    Based upon my background and experience, I am knowledgeable about and familiar with the laws of France, including as they relate to Inheritance law, Estate and Wills.

3.    I have been acting as the attorney in France for Mahmoud VAHABZADEH since 2014, defending his case before the Courts of Paris with respect to the liquidation of the Estate of his mother, Bibi Batoul GHORAICHI. I have a full knowledge of the relevant facts of this case and orders rendered in this matter by the courts in France.

4.    Bibi Batoul GHORAICHI, an Iranian citizen, died in Paris, FRANCE, on April 5, 2014, were she had her last domicile.

5.    By an authenticated will dated January 26, 2006, she bequeathed her entire Estate located in France to her son Mahmoud VAHABZADEH.

6.    By a second holographic will dated December 19, 2012, Bibi Batoul GHORAICHI confirmed her last wishes as previously stated in the authentic will of 2006, by bequeathing her whole Estate, both movable and immovable assets located in France, to Mahmoud VAHABZADEH, specifying that it included her apartment located 230 rue du Faubourg Saint Honoré 75008 Paris, FRANCE.

7.    Pursuant to French law, both wills are perfectly valid and enforceable. Their validity is not subject to any dispute in France.

8.    On July 17, 2014, the French Office of Notaire GROSSE – DUMONT – BUSSON in Paris, FRANCE, registered in its minutes the deed of notoriety stating that the legal heirs of Bibi Batoul GHORAICHI according to French law were :

- Mostafa VAHABZADEH, eldest son of the deceased
- Mahmoud VAHABZADEH, youngest son of the deceased
- Sahar VAHABZADEH, Sara VAHABZADEH and Mohammad VAHABZADEH, grandchildren of the deceased who inherited from their grandmother in place of their own father, Reza

-2-

DECLARATION OF KENNETH M. WEISSBERG

VAHABZADEH, deceased in 2009, prior to Bibi Batoul GHORAICHI.

This deed of notoriety also quotes the contents of the deceased's two wills. Attached as Exhibit A is a true and correct copy of this deed of notoriety and an English translation.

9. The Estate of Bibi Batoul GHORAICHI consisted of movable assets and immovable property located in both France and Iran, allowing her Estate to be legally considered to be international and requiring steps taken in Iran to precisely determine the extent of her Estate in that country.

10. On September 22, 2014, an evaluation of the furniture located in the apartment of 230 rue du Faubourg Saint Honoré, 75008 Paris, FRANCE, and of the jewelry deposited with the French notaire was carried out by Auctioneers, in the presence of the parties French notaries, Maître Dominique BUSSON and Maître Florence GEMIGNIANI .

11. By notarial deed of October 22, 2014, Mahmoud VAHABZADEH was transferred full ownership of the apartment located 230 rue du Faubourg Saint Honoré 75008 PARIS, FRANCE, in accordance with the last wishes of his mother.

12. On December 11, 2015, a statement of Inheritance signed by all heirs according to French law was filed with the competent tax office in Paris, FRANCE. In this statement of Inheritance, it is stated that, "this statement of inheritance only expresses the tax obligation of the deceased's beneficiaries. It shall in no way prejudge the civil liquidation of their rights subject to French law, which may only result from a subsequent deed of liquidation of the Estate." Attached as Exhibit B is a true and correct copy of this statement of Inheritance.

13. On January 16, 2016, Mostafa VAHABZADEH, Mohammad VAHABZADEH and Sara and Sahar VAHABZADEH filed a motion against Mahmoud VAHABZADEH before the President of the Paris Tribunal claiming to obtain an advance payment of 350 000 euros on their share of the Estate of Bibi Batoul GHORAICHI in France.

-3-

DECLARATION OF KENNETH M. WEISSBERG

14.   By an order dated May 3, 2016, the Paris Tribunal denied this motion, ruling that:

- "in the absence of available funds in the Estate of Mrs Bibi Batoul GHORAICHI, and for this reason alone, the application for a capital advance submitted by the applicants will be rejected"

- "Additionally, it appears from the various documents submitted to the Tribunal that the rights of the various parties to the Estate of Mrs Bibi Batoul GHORAICHI are contested, since the applicants claim that they are entitled to half of their mother's estate in France, whereas Mr. Mahmoud VAHABZADEH maintains that he is the sole owner of the apartment located in France, given the will of Mrs. GHORAICHI who establishes him as the universal legatee for this property and since the other heirs have benefited from real estate in Iran. Considering this, the judge [...] cannot verify that the advance payment requested doesn't exceed the rights of the applicants in the litigation of the Estate"

Attached as Exhibit C is a true and correct copy of the May 3, 2016 order. I am fluent and proficient in both English and French. The above quote is an accurate translation of that portion of the order.

15.   On September 26, 2017, Mohammad VAHABZADEH and Sara VAHABZADEH and Sahar VAHABZADEH filed a lawsuit against Mahmoud VAHABZADEH and Mostafa VAHABZADEH before the Paris Civil Court claiming a share of the French Estate of Bibi Batoul GHORAICHI. Attached as Exhibit D is a true and correct copy of the Paris Civil Court lawsuit and an English translation.

16.   Mostafa VAHABZADEH filed in the Paris Civil Court lawsuit a legal brief on January 18, 2018, also claiming a share of his mother's French Estate. Attached as Exhibit E is a true and correct copy of this legal brief.

///

-4-

DECLARATION OF KENNETH M. WEISSBERG

17. Mahmoud VAHABZADEH, the defendant in the Paris Civil Court lawsuit contends in that action that his brother and nephew and nieces received their share of the Estate of Bibi Batoul GHORAICHI, located in Iran, and that they have been fulfilled with their rights and have no valid claim as to the Estate of Bibi Batoul GHORAICHI in France.

18. Mostafa VAHABZADEH, Mohammad VAHABZADEH, Sara VAHABZADEH and Sahar VAHABZADEH have been denying constantly that they have received anything from the Estate of Bibi Batoul GHORAICHI in Iran. Mahmoud VAHABZADEH appointed an Iranian lawyer to investigate about his mother's assets in Iran. The Iranian lawyer found evidence of deeds of donations of the Teheran apartment and the farm and land in Iran to the benefit of Mostafa VAHABZADEH and his nephew and nieces, which contradicts their denials that they have not received anything from the Estate in Iran. Attached as Exhibit F is a true and correct copy of a collection of the evidence found by the lawyer in Iran with certified English translations.

19. On January 29, 2019, the Paris Civil Tribunal ruled and entered a judgment that Mostafa VAHABZADEH, Mohammad VAHABZADEH, Sara VAHABZADEH and Sahar VAHABZADEH's claims for distribution of the French Estate of Bibi Batoul GHORAICHI's assets and reduction of Mahmoud VAHABZADEH's bequest were admissible, without taking in account any assets they received in Iran from the deceased parent. Attached as Exhibit G is a true and correct copy of the January 29, 2019 court ruling with a certified English translation.

20. On April 18, 2019, Mahmoud VAHABZADEH lodged an appeal against the January 29, 2019 judgment and the appeal proceedings are pending. Attached as Exhibit H is a true and correct copy of the appeal and an English translation.

21. Based on the evidence found by the Iranian lawyer (Exhibit F), Mostafa VAHABZADEH, Mohammad VAHABZADEH, Sara VAHABZADEH and Sahar VAHABZADEH are concealing the assets they have received in Iran from their mother,

///

-5-

DECLARATION OF KENNETH M. WEISSBERG

henceforth they are attempting to get an illegitimate share of Mahmoud VAHABZADEH's bequeath.

22.     Mahmoud VAHABZADEH is requesting assistance of the United States Courts in accordance with U.S. Code, Title 28, Part V, Chapter 117, § 1782 to obtain the testimony under oath of Mostafa VAHABZADEH, residing in the state of California, at 209 North Hill Court, San Ramon, CA 94583, as well as any other relevant documentation relating to the Estate of Bibi Batoul GHORAICHI and in particular its assets located in Iran or in any other country worldwide.

23.     I understand that in person depositions are not presently feasible due to the pandemic. Accordingly, the applicant is requesting that he first be able to obtain documents by a subpoena and then if needed, after receiving the documents, and when in person depositions can be taken in the future, be able to take a one day deposition of Mostafa VAHABZADEH.

24.     I have reviewed a copy of the proposed Subpoena to Produce Documents, Information or Objects, etc., that I understand is being requested for the United States District Court to issue on behalf of Mahmoud VAHABZADEH to Mostafa VAHABZADEH. (Exhibit 1 to Mahmoud VAHABZADEH Memorandum of Points and Authorities in support of his Application.) The documents requested by the subpoena would be relevant to the issues before the French Courts on the appeal by Mahmoud VAHABZADEH of the ruling and judgment. The requested documents and information, can be presented to the French Court in the appeal, including but not limited to documents and any deposition testimony of Mostafa VAHABZADEH taken in California.

25.     The French Code of Civil Procedure empowers the court in the Foreign Proceeding to order production of evidence held by another party, or by third parties if there is no impediment.

26.     Where a party holds evidence, the judge may, at the request of the other party, order him to produce it, if necessary under penalty of a penalty payment. It may, at the request of either party, request or order, if necessary under the same penalty, the

-6-

DECLARATION OF KENNETH M. WEISSBERG

production of any documents held by third parties if there is no legitimate impediment. (Article 11, ¶ 2, Code of Civil Procedure of France).

27. There is no prohibition in France against the gathering of evidence in the United States for use in civil proceedings in France; in fact, parallel U.S. discovery has been welcomed. For example, in 2016, The Civil Court of Paris expressly recognized a party's right to introduce evidence collected in proper and competent discovery proceedings in the United States, noting that the French court ultimately retains the right to assess the weight and probative value of such evidence. Attached as Exhibit I is a true and correct copy of the decision of September 29, 2016, by the Tribunal De Grande Instance Of Paris in Case No.: 15/00961 with an English translation.

28. In the French judicial system, it is possible to present new facts and make new factual arguments in the appellate proceedings. The appellate proceedings are not limited only to a review of the record of the trial court.

29. I am not aware of any reason why a party to an appeal pending before the French Courts would by seeking information and documents in the United States by a subpoena or a deposition under oath would circumvent any laws or judicial policy in France.

30. The French Courts cannot compel testimony or the production of documentary evidence outside of France by Mostafa VAHABZADEH, without the help of a US Court.

31. It is critical for Mahmoud VAHABZADEH to obtain the information and documents that are requested from Mostafa VAHABZADEH so that such information and documents could be used in the appeal pending in the French Courts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 8, 2020

KENNETH M. WEISSBERG, Declarant

-7-

DECLARATION OF KENNETH M. WEISSBERG

## List of Exhibits

(Exhibit A) : Deed of Notoriety of July 17th, 2014

(Exhibit B): Statement of Inheritance filed with the Paris tax office on December 11th, 2015 in French

(Exhibit C) : Order of May 3rd, 2016 and partial translation in English

(Exhibit D) : writ of summons of September 26, 2017

(Exhibit E): legal brief of Mostafa VAHABZADEH filed on January 18th, 2018 and partial translation in English

(Exhibit F) : donation deeds and expert reports on assets pertaining to the Estate located in Iran and translations in English

(Exhibit G) : Judgment of the Civil tribunal of Paris of January 29th, 2019 and translation in English

(Exhibit H) :  Statement of appeal of January 29th, 2019 judgment and translation in English

( Exhibit I) : Decision of the Tribunal de Grande Instance, Paris, September 29th, 2016 – n° 15/00961 and translation in English

-8-

DECLARATION OF KENNETH M. WEISSBERG

EXHIBIT

A

Le 17 juillet 2014

NOTORIETE
Après le décès de
Madame Bibi BAIIAT SOLTAN ABADI

Compte : 113403
Dossier :  225935

Société Civile Professionnelle
Guy GROSSE - Marc DUMONT
Dominique BUSSON
Notaires Associés

MRE                                                                                    AC

DB/MR2/

22593503

**L'AN DEUX MILLE QUATORZE,**
**LE DIX-SEPT JUILLET**
**A PARIS (7ème) 21, Avenue Rapp, au siège de l'Office Notarial, ci-après nommé,**
**Maître Dominique BUSSON, Membre de la Société Civile Professionnelle "Guy GROSSE, Marc DUMONT et Dominique BUSSON, Notaires associés", titulaire d'un Office Notarial à PARIS (7ème) 21, Avenue Rapp ,**

**A REÇU LE PRESENT ACTE DE NOTORIETE A LA REQUETE DE :**

- Monsieur Mahmoud VAHABZADEH non présent mais représenté par Maître Kenneth WEISSBERG, Avocat à la Cour, son conseil, en vertu d'une procuration sous seings privés à PARIS du 26 mai 2014 dont l'original est demeuré ci-joint et annexé aux présentes.

- Madame Sahar SALEHINIA, Mademoiselle Sara VAHABZADEH et Monsieur Mohammad VAHABZADEH non présents mais représentés par Maître Florence GEMIGNANI, Notaire à PARIS, son conseil, en date à TEHERAN du 13 juillet 2014 dont l'original est demeuré ci-joint et annexé aux présentes.

- Monsieur Mostafa VAHABZADEH n'est ni présent ni représenté. Maître Emmanuel RAVANAS, Avocat à la Cour, son conseil, est présent.

**Etant observé que le ou les requérants ci-après qualifiés et domiciliés seront indifféremment dénommés aux présentes « les requérants » ou « les ayants-droit » et ce qu'il y ait ou non pluralité de requérants.**

**Il est demeuré ci-joint et annexé aux présentes la traduction du présent acte adressée par Maître Kenneth WEISSBERG, avocat à la Cour.**

Préalablement à leurs déclarations, les requérants exposent ce qui suit :

**EXPOSE**

**PERSONNE DECEDEE**

Madame Bibi Batoul **GHORAICHI**, Retraitée, demeurant à PARIS 8ÈME ARRONDISSEMENT (75008) 230, rue du Faubourg Saint Honoré.
Née à MECHED (IRAN), le 1er octobre 1924.
Veuve de Monsieur Ahmad **BAHAT SOLTAN ABADI** et non remariée.
Non liée par un pacte civil de solidarité.
De nationalité française.
Résidente au sens de la réglementation fiscale.

Décédée à PARIS 18ÈME ARRONDISSEMENT (75018),, le 5 avril 2014.

2

## DISPOSITIONS DE DERNIERES VOLONTES

1/ Aux termes d'un testament authentique enregistré reçu par Maître Catherine COUTRIS, Notaire à DOZULE, le 26 janvier 2006, la défunte a dicté au notaire les dispositions testamentaires suivantes :

« Je veux que tous mes biens en France reviennent à mon fils Mahmoud VAHABZADEH, demeurant actuellement en Floride ; c'est ce que mon mari voulait et que je veux aussi. Il pourra recevoir ces biens même si leur valeur dépasse ses droits légaux ».

2/ Aux termes d'un testament olographe fait à PARIS, en date du 19 décembre 2012, la personne décédée a institué pour légataire de tous les biens meubles et immeubles situés en France, ainsi repris littéralement ci-après :

« *Je soussignée, BIBI BATOUL veuve BAYAT*
*née à Meched (IRAN) en 1924*
*Lègue à mon fils, MAHMOUD Vahabzadeh,*
*Demeurant 159 promenade Way Jupiter FL 33458 (ETATS-UNIS) l'ensemble de mes biens meubles et immeubles situés en France.*
*A ce titre, je lui lègue notamment mon appartement situé à PARIS, 8$^{ème}$ arrondissement, 230, rue du Faubourg Saint Honoré.*
*Fait à PARIS*
*Le 19 décembre 2012* »

Monsieur Mahmoud **VAHABZADEH** demeurant à FLORIDA (33458) ETATS-UNIS 159 Promenade Way, Jupiter 21.
L'original de ces dispositions testamentaires a été déposé au rang des minutes de Maître Véronique DRILHON-JOURDAIN, Notaire à PARIS suivant procès-verbal d'ouverture et de description en date du 2 mai 2014.

## DEVOLUTION SUCCESSORALE

### Héritier

LAISSANT pour habiles à se dire et porter héritiers ensemble pour le tout ou chacun divisément pour         :

1/ Monsieur Mostafa **VAHABZADEH**, Sans profession, époux de Madame Claudia **ULRIKE SCHOEN**, demeurant à SAN RAMON CA (ETATS-UNIS) 209 Norhill.
Né à MASHAD (IRAN) le 31 janvier 1950.
Marié sans contrat aux termes de son union célébrée à CARSON (ETATS-UNIS), le 1er juin 1993
De nationalité iranienne.
Non résident au sens de la réglementation fiscale.

2/ Monsieur Mahmoud **VAHABZADEH**, Brand Manager, époux de Madame Shereen Marie **MATINRAZM**, demeurant à FLORIDA (33458) (ETATS-UNIS) 159 Promenade Way, Jupiter 21.
Né à MASHAD (IRAN) le 29 avril 1954.
Marié sans contrat aux termes de son union célébrée à DANVILLE CA (ETATS-UNIS), le 26 janvier 1985
Ce régime n'a subi aucune modification conventionnelle ou judiciaire depuis.
De nationalité iranienne.
Non résident au sens de la réglementation fiscale.

Ses ENFANTS issus de son union avec Monsieur Davoud **VAHABZADEH**

Etant précisé ici que de cette union était également issu un autre enfant :

- Monsieur Reza VAHABZADEH, né le 9 mai 1948 à MASHHAD (Iran) et décédé le 9 janvier 2009 à TEHERAN (Iran)

Et laissant à sa survivance ses descendants, savoir :

3/ Mademoiselle Sara **VAHABZADEH**, Etudiante, demeurant à TEHERAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave Iranian Building 11th FL .
Née à TEHERAN (IRAN) le 9 octobre 1981.
Célibataire.
Non liée par un pacte civil de solidarité.
De nationalité iranienne.
Non résidente au sens de la réglementation fiscale.

4/ Madame Sahar **VAHABZADEH**, Etudiante, épouse de Monsieur Iman **SALEHINIA**, demeurant    (ETATS-UNIS) 235 NW Anthony Street Apt 2 Pullman WA 99163.
Née à TEHERAN (IRAN) le 29 mai 1983.
Mariée sans contrat aux termes de son union célébrée à TEHERAN, le 26 juin 2010.
De nationalité iranienne.
Non résidente au sens de la réglementation fiscale.

5/ Monsieur Mohammad **VAHABZADEH**, Etudiant, demeurant à TEHERAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave. Iraninan Building 11th FL.
Né à TEHERAN (IRAN) le 9 juin 1990.
Célibataire.
Non lié par un pacte civil de solidarité.
De nationalité iranienne.
Non résident au sens de la réglementation fiscale.

### Qualités Héréditaires

Monsieur Mostafa **VAHABZADEH** et Monsieur Mahmoud **VAHABZADEH** sont habiles à se dire et porter héritiers de Madame Bibi **BAIIAT SOLTAN ABADI** conjointement pour **DEUX TIERS** en **PLEINE PROPRIETE** ou chacun divisément pour **UN TIERS** en **PLEINE PROPRIETE** sauf les droits du légataire.

Madame Sahar **SALEHINIA**, Mademoiselle Sara **VAHABZADEH** et Monsieur Mohammad **VAHABZADEH** sont habiles à se dire et porter héritiers de Madame Bibi **BAIIAT SOLTAN ABADI** conjointement pour **UN TIERS** en **PLEINE PROPRIETE** ou chacun divisément pour **UN NEUVIEME** en **PLEINE PROPRIETE** sauf les droits du légataire.

Ceci exposé, il est passé aux déclarations et affirmations du ou des requérants.

### AFFIRMATION DE LA QUALITE HEREDITAIRE

Les requérants attestent la dévolution successorale telle qu'elle est établie ci-dessus, et certifient qu'à leur connaissance il n'existe aucun autre ayant-droit venant à la succession.
Ils déclarent que la personne décédée n'a laissé aucune disposition à cause de mort non relatée aux présentes.
Ils affirment, en conséquence, que les personnes figurant dans la dévolution successorale ont seules vocation et qualité à recueillir la succession.

4

A l'appui de leurs affirmations et déclarations, les requérants apposeront leur signature en fin des présentes.

Les requérants affirment en outre :
- que le notaire soussigné les a informés de la possibilité d'accepter purement et simplement la succession ou d'y renoncer, ou encore d'accepter la succession à concurrence de l'actif net pour n'être, dans cette dernière hypothèse, tenu des dettes successorales que jusqu'à concurrence de la valeur des biens recueillis ;
- qu'il a particulièrement attiré leur attention :

    1 - sur les conséquences de l'acceptation pure et simple qui les rend alors responsables des dettes de la succession sur leur patrimoine personnel sans limitation ;

    2 - sur le recel des biens ou des droits d'une succession ou la dissimulation de l'existence d'un cohéritier, qui rend l'héritier fautif purement et simplement acceptant de la succession nonobstant toute renonciation ou acceptation à concurrence de l'actif net, sans pouvoir prétendre à aucune part dans les biens ou droits divertis ou recelés ;

    3 - sur les dispositions de l'article 786 du Code civil ci-après littéralement rapportées :

*« L'héritier acceptant purement et simplement ne peut plus renoncer à la succession ni l'accepter à concurrence de l'actif net. Toutefois, il peut demander à être déchargé en tout ou partie de son obligation à une dette successorale qu'il avait des motifs légitimes d'ignorer au moment de l'acceptation, lorsque l'acquittement de cette dette aurait pour effet d'obérer gravement son patrimoine personnel. L'héritier doit introduire l'action dans les cinq mois du jour où il a eu connaissance de l'existence et de l'importance de la dette. »*

Un inventaire a été dressé par Maître Denis Calippe, huissier de justice à PARIS, le 15 avril 2014.

## ACTE DE DECES

Une copie intégrale de l'acte de décès de Madame Bibi BAIIAT SOLTAN ABADI dressée le 5 avril 2014 est demeurée annexée.

## FICHIER DES DISPOSITIONS DE DERNIERES VOLONTES

Le fichier des dispositions de dernières volontés a adressé au notaire soussigné, sur sa demande, un certificat demeuré annexé révélant l'existence de l'une des dispositions de dernières volontés sus visées en date du 19 décembre 2012.

## PIECES JUSTIFICATIVES PRODUITES

Outre les documents visés aux présentes, ont été produites entre les mains du notaire soussigné les pièces suivantes :
- la copie traduite de l'extrait d'acte de naissance de la défunte
- la copie traduite du livret de famille de la défunte avec Monsieur Davoud VAHABZADEH mentionnant leurs trois enfants, Reza, Mostafa et Mahmoud
- la copie traduite de l'extrait d'acte de naissance de Madame Sahar SALEHINIA, Mademoiselle Sara VAHABZADEH et Monsieur Mohammad VAHABZADEH
- la copie traduite de l'extrait d'acte de décès de Monsieur Reza VAHABZADEH
- la copie du livret de famille traduit de Monsieur Reza VAHABZADEH

## EFFETS DE L'ACTE DE NOTORIETE

Le notaire soussigné a donné lecture aux requérants des articles 730-2, 730-3, 730-4, 730-5 du Code civil ci-après littéralement rapportés :

*Article 730-2 - L'affirmation contenue dans l'acte de notoriété n'emporte pas, par elle-même, acceptation de la succession.*

(Sauf s'il y a une acceptation expresse dans l'acte)

*Article 730-3 - L'acte de notoriété ainsi établi fait foi jusqu'à preuve du contraire.*

*Celui qui s'en prévaut est présumé avoir des droits héréditaires dans la proportion qui s'y trouve indiquée.*

*Article 730-4 - Les héritiers désignés dans l'acte de notoriété ou leur mandataire commun sont réputés, à l'égard des tiers détenteurs de biens de la succession, avoir la libre disposition de ces biens et, s'il s'agit de fonds, la libre disposition de ceux-ci dans la proportion indiquée à l'acte.*

*Article 730-5 - Celui qui, sciemment et de mauvaise foi, se prévaut d'un acte de notoriété inexact, encourt les pénalités de recel prévues à l'article 778, sans préjudice de dommages-intérêts.*

### ATTESTATION IMMOBILIERE

Le notaire soussigné informe les ayants-droit de l'obligation de faire constater dans une attestation notariée toutes transmissions par décès des droits réels immobiliers pouvant dépendre de la succession.

Les ayants droit requièrent le notaire soussigné d'établir cette attestation, s'obligeant à lui fournir à sa demande tous les éléments nécessaires.

### OBLIGATIONS FISCALES

Les requérants déclarent avoir été avertis par le notaire soussigné de l'obligation de déclarer à l'administration fiscale le patrimoine de la succession et ce dans un délai de six mois à compter du jour du décès, la déclaration devant être accompagnée du règlement des droits s'il y a lieu.

En cas de dépassement de ce délai, ou de redressement pour omission dans la déclaration, ou de non paiement en tout ou partie des droits exigibles, court un intérêt de retard mensuel fixé par l'administration et calculé sur le montant des droits. En outre, une pénalité est susceptible d'être appliquée, notamment après mises en demeure, ou en cas de manoeuvres destinées à éluder tout ou partie de l'impôt.

Il est précisé qu'aux termes des dispositions de l'article 1709 du Code général des impôts les droits de mutations par décès sont acquittés par les héritiers, donataires ou légataires. Les cohéritiers sont solidaires du paiement de ces droits, cette solidarité n'existe toutefois pas entre les héritiers et les légataires même universels, ni entre les légataires.

Les requérants demandent au notaire soussigné d'établir cette déclaration, s'obligeant à lui fournir à sa demande tous les éléments nécessaires, sans exception aucune, ou à lui donner pouvoir pour les obtenir.

### MENTION DE L'ACTE DE NOTORIETE

Mention de l'existence de l'acte de notoriété sera portée en marge de l'acte de décès.

### MENTION LEGALE D'INFORMATION

L'office notarial dispose d'un traitement informatique pour l'accomplissement des activités notariales, notamment de formalités d'actes.

A cette fin, l'office est amené à enregistrer des données concernant les parties et à les transmettre aux organismes du notariat et à certaines administrations.

En vertu de la loi n°78-17 du 6 janvier 1978 relative à l'informatique, aux fichiers et aux libertés, les parties peuvent exercer leurs droits d'accès et de rectification aux données les concernant en s'adressant au correspondant Informatique et Libertés désigné par l'office à : Etude de Maîtres POISSON, GROSSE & DUMONT, titulaire d'un Office Notarial sis à PARIS (7ème) 21, Avenue Rapp Téléphone : 01.40.62.25.25 Télécopie : 01.40.62.25.00 Courriel : @paris.notaires.fr .

6

## FORMALISME LIE AUX ANNEXES

Les annexes, s'il en existe, font partie intégrante de la minute.

Lorsque l'acte est établi sur support papier les pièces annexées à l'acte sont revêtues d'une mention constatant cette annexe et signée du notaire, sauf si les feuilles de l'acte et des annexes sont réunies par un procédé empêchant toute substitution ou addition.

Si l'acte est établi sur support électronique, la signature du notaire en fin d'acte vaut également pour ses annexes.

### DONT ACTE sur SIX pages

**Comprenant**
- renvoi approuvé : *sans*
- blanc barré : *sans*
- ligne entière rayée : *sans*
- nombre rayé : *sans*
- mot rayé : *sans*

**Paraphes**

Fait et passé aux lieu, jour, mois et an ci-dessus indiqués.

Et après lecture faite, les requérants ont certifié exactes les déclarations contenues au présent acte, et les signatures ont été recueillies par Mademoiselle Marguerite de RAVEL d'ESCLAPON, Clerc de notaire, habilité à cet effet depuis le 18 juin 2009 et assermenté par actes déposés au rang des minutes de l'office notarial dénommé en tête des présentes le 18 juin 2009, qui a lui-même signé avec eux.

Le présent acte a été signé par le notaire le même jour.

ANNEXE N° 4
à un Acte
reçu par le Nota're
soussigné, le 13/c4 /A\

[Traduction Libre du cabinet WEISSBERG 81, rue de l'Université 75007 PARIS]

2259350

**YEAR TWO THOUSAND FORTEEN,**
**ON**
IN PARIS (7th), 21, Avenue Rapp, at the head office of Notary Office, hereinafter named,
**Maître Dominique DUSSON, Member of the Société Civile Professionnelle "Guy GROSSE, Marc DUMONT et Dominique DUSSON, Notaires associés »,**
owner of a notarial office in Paris (7th) 21, Avenue Rapp,

**HAS RECEIVED THIS PRESENT SWORN STATEMENT UPON REQUESTFROM:**
- Mister Mostafa VAHABZADEH
- Mister Mahmoud VAHABZADEH
- Madam Sahar VAHABZADEH
- Miss Sara VAHABZADEH
- Mister Mohammad VAHABZADEH

**It being observed that the applicants, as hereinafter described and living at the addresses hereunder stated shall interchangeably be referred to as "the applicants" or "the right-holders" whether or not there may be multiple applicants.**

Prior to their declarations, applicants expose the following:

### PRESENTATION

### DECEASED PERSON

Madam Bibi Batoul GHORAICHI, Retired, living in PARIS 8th ARRONDISSEMENT (75008) 230, rue du Faubourg Saint Honoré.
Born in MECHED (IRAN), on October 1st 1924.
Widow of Mister Ahmad BAIIAT SOLTAN ADABI and not remarried.
Not subject to a civil pact of solidarity.
Of Iranian nationality.
French Resident according to fiscal regulations.

Passed away in PARIS 18TH ARRONDISSEMENT (75018), on April 5th 2014.

### PROVISIONS OF LAST WILLS

1/ Following the terms of an authentic and registered will, received by Catherine COURTIS, Notary at DOZULE, on January 26th 2006, the deceased recited the following testamentary provisions to the notary public:

"I want all my goods in France to go to my son Mahmoud VAHABZADEH, currently living in Florida; it is what my husband wanted and what I also want. He may receive these goods even if their value exceeds his legal rights."

2/ Following the terms of a holograph will made in Paris on the date of December 19th 2012, the deceased established as legatee of all movables and immovable located in France, as literary reproduced hereafter :

*"I, the undersigned, BIBI BATOUL widow BAYAT*
*Born in Meched (IRAN) in 1924*
*Bequeath to my son, MAHMOUD Vahabzadeh,*

1

*Living at 159 promenade Way Jupiter FL 33458 (UNITED STATES) the entirety of my movables and immovable located in France.*
*As such, I especially bequeath to him my apartment located in PARIS, 8th arrondissement, 230, rue du Faubourg Saint Honoré.*
*Made in PAIRS*
*On 19th of December 2012"*

Mister Mahmoud **VAHABZADEH** living at 159 Promenade Way, Jupiter 21 33458 FLORIDA.
The original of these testamentary provisions have been recordedin the minutes of Maître Véronique DRILHON-JOURDAN, Notary in Paris, pursuant to the minutes of opening and description dated ...

## TESTAMENTARY DISPOSITIONS

### Heirs

1/ Mister Mostafa **VAHABZADEH**, without profession, spouse of Madam Claudia ULRIKE SCHOEN, living 209 Norhill, San Ramon CA UNITED STATES.
Born in MASHAD (IRAN) on January 29th 1950.
Married without marital contract following celebration of his union CARSON (USA), june 1th, 1993
Of United States of America nationality.
Non-resident according to fiscal regulations.

2/ Mister Mahmoud **VAHABZADEH**, Brand Manager, spouse of Madam Shereen Marie MATINRAZM, living 159 Promenade Way, Jupiter 21 33458 FLORIDA.
Born in MASHAD (IRAN) on April 29th 1954.
Married without marital contract following celebration of his union in DANVILLE CA (UNITED STATES), on January 26th 1985.
This regime has not been subjected to any contractual or legal modifications since.
Of United States of America nationality.
Non-resident according to fiscal regulations.

3/ Madam Sahar**VAHABZADEH**, Student, spouse of Mister Iman **SALEHINIA**, living 235 NW Anthony Street Apt. 2 Pullman WA 99163 (UNITED STATES).
Born in TEHRAN (IRAN) may 29, 1983
Married without marital contract following celebration of her union in TEHRAN, on
Of Iranian nationality.
Non-resident according to fiscal regulations.

4/ Miss Sara **VAHABZADEH**, Student, living in TEHRAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave Iranian Building 11th FL.
Born in TEHRAN (IRAN) on October 9th 1981
Single.
Not subjected to civil pact of solidarity.
Of Iranian nationality.
Non-resident according to fiscal regulations.

5/ Mister Mohammad **VAHABZADEH**, Student, living in TEHRAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave. Iranian Building 11th Fl.
Born in TEHRAN (IRAN) June 9, 1990
Single.
Not subjected to civil pact of solidarity.
Of Iranian nationality.
Non-resident according to fiscal regulations.

2

Being specified here that Madam Sahar **VAHABZADEH**, Miss Sara **VAHABZADEH** and Mister Mohammad **VAHABZADEH** are the grandchildren of the deceased, from the union of Mister Reza **VAHABZADEH**, son of the deceased, with Madam Zari. Mister Rera VAHABZADEH passed away on leaving as his only heirs Madam Sahar**VAHABZADEH**, Miss Sara **VAHABZADEH** and Mister Mohammad **VAHABZADEH** as attested in the notarized act received by    on  (or family booklet).

## HEREDITARY ENTITLEMENTS

Mister Mostafa **VAHABZADEH** is entitled to say and carry himself as heir for one third of goods of the estate except for the legatee's rights.
Mister Mahmoud **VAHABZADEH** is entitled to say and carry himself as heir for one third of the goods in the estate,and also as legatee of movable and immovable goods located in France.
Madam Sahar **SALEHINIA**is entitled to say and carry herself as heir for $1/9^{th}$ of goods in the estate except for the legatee's rights.
Mister Mohammad **VAHABZADEH** is entitled to say and carry heir for $1/9^{th}$ of goods in the estate except for rights of the legatee.

These being presented, will now be exposed the declarations and affirmations of applicants.

## AFFIRMATION OF THE STATUS OF HEIR

The applicants affirmthe devolution of the estate as established hereunder, and certify that, to their knowledge, there exist no other right-owners in the estate.
They declare that the deceased never made any provisions upon death that has not been reported in the present act.
They consequently affirm that the persons presented in the hereditary entitlements are the only ones having quality and destined to receive the estate.
To support their affirmations and declarations, the applicants shall appose their signature herein.

The applicants affirm furthermore:

- The undersigned notary has informed them of the possibility to simply accept the estate or refuse it, or even still, to accept the estate but up until the net assets so that they may only be, in this last case, held to the estate debts up to the value of received goods.

- He especially brought to their attention :

1. – the consequences of simple acceptation which renders them liable for the estate debts on their personal property and without limitation;

2. – that concealment of goods or rights under an estate or dissimulation of the existence of an heir, causes the faulty heir to simply accept the estate notwithstanding any renunciation or acceptation up until the net assets, without any rights in the goods or rights thus changed or concealed;

3. – the provisions of article 786 of the Civil Code hereafter literary copied

"The heir which simply accepts may neither renounce the estate nor accept it up to the net assets. However, he may ask to be fully or partially discharged from his liability regarding an estate debt, the existence of which he ignored for legitimate reasons at the time of acceptation, if payment of this debt will have as effect to seriously burden his personal estate. The heir must commence action within five months from the day where he gained knowledge of the existence of and of the importance of the debt."

3

## DEATH CERTIFICATE

An integral copy of the death certificate of Madam BAIIAT SOLTAN ABADI established on April 5th 2014 remains in attachment.

## REGISTRAR OF PROVISIONS OF LAST WILL

The Registrar of provisions of last will has sent to the undersigned notary, upon his request, a certificate of which remains in attachment and reveals the existence of the last will provisions here above stated on the date of December 19 2012.

## SUPPORTING DOCUMENTS PRODUCED

Other than the documents referred to in this act, the following documents have been produced in the hands of the undersigned notary :

## EFFECTS OF THE NOTARIZED ACT

The undersigned notary has read to the applicantsarticles 730-2, 730-3, 730-4, 730-5 of the Civil Code literary here after transcribed:

*Article 730-2 - An affirmation in a notarized act does not imply, by itself, acceptation of the estate.*
(unless there is express acceptation in the act)

*Article 730-3 – A notarized act thus established is deemed authentic unless otherwise proven.*
*Those who rely on it are deemed to have hereditary rights in the established proportions.*

*Article 730-4 – Heirs named in the notarized act or their common authorized agent are presumed, regarding third parties detaining goods in the estate, to have free disposal of such goods and, if they are funds, free disposal of them in proportions indicated in the act.*

*Article 730-5- One who, willfully and in bad faith, takes advantage of an incorrect notarized act, incurs penalties for fraud under article 778, without prejudice to rights to damages.*

## IMMOVABLE ATTESTATION

The undersigned notary informs the right-owners of their obligation to have any transmission upon death of property rights that could depend on the estate noted in a notarized attestation.

The right-owners require that the undersigned notary establish this attestation, and undertake to grant him, at his request, any necessary elements.

## FISCAL OBLIGATIONS

The applicants declare having been warned by the undersigned notary of their obligation to declare the property of the estateto the fiscal administration within six months starting on the date of passing;this declaration must be accompanied with payments of rights, if any.

If the deadline is passed or if any adjustments for omissions in the declaration occur, or in case ofnonpayment in whole or in part of rights due, a monthly late interest fixed by the administration and calculated on the amount of rights will run.

Furthermore, a penalty may apply, especially after formal notice, or in case of maneuvers destined to avoid all or part of taxes.

II it specified that following the terms of article 1709 of the General Tax Code, the transfer of duty upon death are paid by heirs, donees or legatees. Heirs are severally liable for payment of these rights, but this is neither the case between heirs and legatees, even though universal, norbetween the legatees.

The claimants ask the undersigned notary to establish this declaration, undertake to provide him, upon request, all necessary elements, without exception, or to grant him authorization to receive them.

4

## NOTARIZED ACT MENTIONED

In the margin the of death certificate the existence of the notarized act shall be mentioned.

## LEGAL NOTICE ON INFORMATION

The Notary Office uses electronic treatment for accomplishing notarial activities, namely act formalities.

In this regard, the office may register information regarding the parties and transfer them to notarial organisms and certain administrations.

Pursuant to law n°78-17 of January 6 1978 on electronic files and rights, parties may exercise their right to access and rectify information pertaining to them by contacting the Electronic and Rights contact designated by the office at : Office of Maîtres POISSON, GROSSE & DUMONT, owner of a Notary Office located in PARIS (7th) 21, Avenue Rapp

Telephone: 01.40.62.25.25 Telefax: 01.40.62.25.00. Email: @paris.notaires.fr.

## FORMALITIES ATTACHED IN SCHEDULES

Schedules, if any, form integral parts of the minutes.

If the act is established on paper support the documents attached to it contain a mention noting the schedule, except if the papers of the act and the schedule are united by a process which prevents all substitution or addition.

If the act is established on electronic support, the notary's signature at the end of the act is also worth for the schedules.

**ACT on 5 pages**

**Initials**

**Including:**
- approved reference
- barred space
- full line striped
- word striped

Made and passed in place, day, month and year hereunder indicated.

And, after reading the act, applicants certify the declarations herein to be true, and signatures have been collected by Miss Marguerite de RAVEL D'ESCLAPON, Notary clerk, authorized to this effect since June 18th 2009 and sworn by acts deposited at ranks and minutes of the Notary Office named in letter head of the present act on June 18th 2009, who has himself signed with them.

This present act has been signed by the notary on the same day.

5

100863901
FG/FG/

## PROCURATION À LA REQUÊTE DE :

1°)Madame Sahar **VAHABZADEH**, Etudiante, épouse de Monsieur Iman **SALEHINIA**, demeurant        (ETATS-UNIS) 235 NW Anthony Street Apt 2 Pullman WA 99163.
Née à TEHERAN (IRAN) le *8 octobre 1981 29 mai 1983*
Mariée sans contrat aux termes de        union célébrée à TEHERAN, le
De nationalité iranienne.
       au sens de la réglementation fiscale.


2°)Mademoiselle Sara **VAHABZADEH**, Etudiante, demeurant à TEHERAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave Iranian Building 11th FL .
Née à TEHERAN (IRAN) le *9 octobre 1981*
Célibataire.
Non liée par un pacte civil de solidarité.
De nationalité iranienne.
       au sens de la réglementation fiscale.


3°)Monsieur Mohammad **VAHABZADEH**, Etudiant, demeurant à TEHERAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave. Iraninan Building 11th FL.
Né à TEHERAN (IRAN) le *9 juin 1990*
Célibataire.
Non lié par un pacte civil de solidarité.
De nationalité française.
       au sens de la réglementation fiscale.


**Etant observé que le ou les requérants seront invariablement dénommés aux présentes « le requérant ».**
**Lequel requérant constitue pour mandataire :**

*Maitre Florence GEMIGNANI*


**1°)A l'effet d'intervenir, pour lui et en son nom personnel, à un acte de notoriété concernant le décès ci-après relaté et d'y effectuer les déclarations indiquées aux présentes.**


## DECES - DEVOLUTION SUCCESSORALE


### PERSONNE DECEDEE

Madame Bibi Batoul **GHORAICHI**, Retraitée, demeurant à PARIS 8ÈME ARRONDISSEMENT (75008) 230, rue du Faubourg Saint Honoré.
Née à MECHED (IRAN), le 1er octobre 1924.

Veuve de Monsieur Ahmad BAIIAT SOLTAN ABADI et non remariée.
Non liée par un pacte civil de solidarité.
De nationalité française.
                au sens de la réglementation fiscale.

        à PARIS 18ÈME ARRONDISSEMENT (75018),, le 5 avril 2014.

### DISPOSITIONS DE DERNIÈRES VOLONTÉS

        1/ Aux termes d'un testament authentique enregistré reçu par Maître Catherine COUTRIS, Notaire à DOZULE, le 26 janvier 2006, la défunte a dicté au notaire les dispositions testamentaires suivantes :

        « Je veux que tous mes biens en France reviennent à mon fils Mahmoud VAHABZADEH, demeurant actuellement en Floride ; c'est ce que mon mari voulait et que je veux aussi. Il pourra recevoir ces biens même si leur valeur dépasse ses droits légaux ».

        2/ Aux termes d'un testament olographe fait à PARIS, en date du 19 décembre 2012, la personne décédée a institué pour légataire de tous les biens meubles et immeubles situés en France, ainsi repris littéralement ci-après :

        « Je soussignée, BIBI BATOUL veuve BAYAT
        née à Meched (IRAN) en 1924
        Lègue à mon fils, MAHMOUD Vahabzadeh,
        Demeurant 159 promenade Way Jupiter FL 33458 (ETASUNIS) l'ensemble de mes biens meubles et immeubles situés en France.
        A ce titre, je lui lègue notamment mon appartement situé à PARIS, 8ème arrondissement, 230, rue du Faubourg Saint Honoré.
        Fait à PARIS
        Le 19 décembre 2012 »

### DECLARATIONS DES REQUERANTS

        Le requérant déclare :
        - attester la dévolution successorale telle qu'elle est établie ci-dessus ;
        - que la défunte était résidente en France et que son domicile selon le droit international privé était fixé en France,
        - que la dévolution des biens meubles conformément aux règles de conflit de lois de droit français relève de la loi du domicile savoir: la loi française,
        - que la dévolution des biens immeubles conformément aux règles de conflit de lois de droit français relève de la loi de situation et pour l'immeuble sis à Paris savoir: la loi française,
        - que la personne décédée n'a laissé aucune disposition à cause de mort non relatée aux présentes ;
        - avoir vocation et qualité à recueillir la succession ;
        - certifier qu'à sa connaissance il n'existe aucun autre ayant droit à la succession dont il s'agit.

        Le requérant déclare qu'après le décès et jusqu'à ce jour, il n'a pas été dressé d'inventaire.
        Le requérant confère également par les présentes au mandataire pouvoir :
        2°) - de faire dresser toutes attestations de propriété immobilières prévues par le décret numéro 55-22 du 4 janvier 1955 pour faire constater la transmission de propriété des biens et droits immobiliers appartenant en tout ou partie à la personne

3

décédée, et intervenir dans l'acte pour y faire toutes déclarations, affirmations et évaluations nécessaires ;

3°)- se réserver de demander à ce que soit dressé un inventaire des forces et charges tant de la communauté ayant, le cas échéant, existé entre le conjoint survivant et la personne décédée, que de la succession de cette personne, et plus particulièrement un inventaire avec prisée du mobilier meublant et des objets et autres valeurs, ainsi qu'un état des immeubles pouvant dépendre desdites communauté ou succession ;

4°)- de faire toutes déclarations d'état civil et autres ;

5°)- de se présenter à la recette principale des impôts qu'il appartiendra à l'effet de déposer la déclaration de succession dont il s'agit et d'acquitter les droits de mutation qui peuvent être dus par suite du décès ;

6°)- de faire toutes déclarations et affirmations requises, certifier tous états de mobilier et de passif, faire toutes évaluations d'immeubles et de biens mobiliers, produire tous titres et pièces, renoncer à toutes créances, faire toute demande de paiement différé ou fractionné, constituer à cet effet toutes garanties, payer tous droits, en retirer quittances ainsi que tous certificats de paiement de droits, demander toute restitution éventuelle, faire toutes pétitions et demandes de remise de pénalités, à cet effet signer tous registres, formulaires ;

7°)- enfin, de demander tous éléments nécessaires à la déclaration de succession à qui de droit concernant toute assurance-vie souscrite par la personne décédée et, le cas échéant, en demander le versement. D'une manière générale, agir auprès de toutes compagnies d'assurances.

## OBLIGATIONS FISCALES

Le requérant déclare avoir été averti de l'obligation de déclarer à l'administration fiscale le patrimoine de la succession et ce dans un délai de six mois à compter du jour du décès, la déclaration devant être accompagnée du règlement des droits s'il y a lieu.

En cas de dépassement de ce délai, ou de redressement pour omission dans la déclaration, ou de non paiement en tout ou partie des droits exigibles, court un intérêt de retard mensuel fixé par l'administration et calculé sur le montant des droits. En outre, une pénalité est susceptible d'être appliquée, notamment après mises en demeure, ou en cas de manoeuvres destinées à éluder tout ou partie de l'impôt.

Il est précisé qu'aux termes des dispositions de l'article 1709 du Code général des impôts les droits de mutations par décès sont acquittés par les héritiers, donataires ou légataires. Les cohéritiers sont solidaires du paiement de ces droits, cette solidarité n'existe toutefois pas entre les héritiers et les légataires même universels, ni entre les légataires.

Le requérant demande, le cas échéant, au notaire chargé du règlement la succession d'établir et de déposer cette déclaration, s'obligeant à lui fournir à sa demande tous les éléments nécessaires, sans exception aucune, ou à lui donner pouvoir pour les obtenir.

## LECTURE DES ARTICLES 730-2, 730-3, 730-4 ET 730-5 DU CODE CIVIL

Le requérant déclare avoir eu connaissance des articles 730-2, 730-3 et 730-4 du Code civil ci-après littéralement rapportés :

Article 730-2 - « L'affirmation contenue dans l'acte de notoriété n'emporte pas, par elle-même, acceptation de la succession. »

Article 730-3 - « L'acte de notoriété ainsi établi fait foi jusqu'à preuve du contraire.

Celui qui s'en prévaut est présumé avoir des droits héréditaires dans la proportion qui s'y trouve indiquée. »

Article 730-4 - « Les héritiers désignés dans l'acte de notoriété ou leur mandataire commun sont réputés, à l'égard des tiers détenteurs de biens de la succession, avoir la libre disposition de ces biens et, s'il s'agit de fonds, la libre disposition de ceux-ci dans la proportion indiquée à l'acte. »

4

Article 730-5 - « Celui qui, sciemment et de mauvaise foi, se prévaut d'un acte de notoriété inexact, encourt les pénalités de recel prévues à l'article 792. sans préjudice de dommages-intérêts. »

## DECHARGE DE MANDAT

A la suite de ces opérations, le mandataire sera bien et valablement déchargé de tout ce qu'il aura fait en vertu du présent mandat par le seul fait de la signature de l'acte, lequel s'il ne contient aucune réserve autre que celle pouvant être incluse aux présentes emportera de plein droit la décharge du mandataire, sans qu'il soit besoin à cet égard d'un écrit spécial.

**Aux effets ci-dessus, passer et signer tous actes, documents et pièces, élire domicile, substituer et généralement faire le nécessaire.**

Fait à *Tehran*
LE *July/13/2014*
Les présentes comprenant :
- pages *quatre*
- renvoi approuvé *Sans*
- barre tirée dans des blancs *Sans*
- ligne entière rayée *Sans*
- chiffre rayé nul *S*
- mot nul *Un*

**POUVOIR**

ANNE... 3
à un Acte
reçu par le
sous...gné, ...

Je, soussigné,
Monsieur Mahmoud VAHAZADEH, né le 29 avril 1954 en Iran, de nationalité américaine

Demeurant :
159 Promenade Way, Jupiter, 33458-3013, Floride, Etats-Unis d'Amérique

**DONNE POUVOIR A:**

**LA SELARL WEISSBERG,** représenté par Me Kenneth WEISSBERG, Avocat au barreau
de Paris, demeurant 81 rue de l'Université 75007 PARIS, tél : 01 47 20 99 70,

De me représenter, de prendre tous contacts, discuter et signer tous documents et donner
quittance, ainsi que d'effectuer toutes les démarches nécessaires dans le cadre de la
succession ouverte suite au décès de ma mère Madame Bibi Batoul GHORAICHI le 5 avril
2014 à Paris et relativement à la succession de mon beau-père Ahmad Ali Khan BAYAT
SOLTANABADI prédécédé.

Fait à Paris,

Le 9 avril 2014

*Bon Pour Pouvoir*

*M. Vahazadeh*

ANNEXE N° 1
à un Acte
reçu par le Notaire
soussigné, le 21/12/14

DB/MR2/



22593504

THE FOLLOWING PERSONS APPEARED

The Undersigned :

Mister Mahmoud **VAHABZADEH**, Brand Manager, spouse of Madam Shereen Marie MATINRAZM, residing 159 Promenade Way, Jupiter 21 33458 FLORIDA USA.
Born in MASHAD (IRAN) on April 29th 1954.
Married withoutprenuptial agreementfollowing celebration of his union in DANVILLE CALIFORNIA USA on January 26th 1985.
United States of America citizen
Non-resident in France according to fiscal regulations.

Authorized to be the successor of part of the estate of :

#### DECEASED PERSON

Madam   Bibi   Batoul   **GHORAICHI**,   Retired,residing   in   PARIS   8th ARRONDISSEMENT
230, rue du Faubourg Saint Honoré (75008)
Born in MECHED (IRAN), on October 1st 1924.
Widow of Mister Ahmad **BAYAT SOLTAN ADABI** and not remarried.
Not subject to a civil pact of solidarity.
Of Iranian nationality.
French Resident according to fiscal regulations.

Passed away in PARIS 18TH ARRONDISSEMENT (75018), on April 5th 2014.

*By this deed, the undersigned appoints as special authorised agent :*

Mr Kenneth Weissberg.

*And any Clerks of the Notary's Office At 21, avenue Rapp, Paris (75007).*

*Tho whom he gives a power of attorney to acte for he and in his name, whith the right to acte jointly or separately, for the purpose to do all of the thgins bellow on his behalf and in his personal capacity and in particular : to sign th following affidavit :*

#### DECEASED PERSON

Madam   Bibi   Batoul   **GHORAICHI**,   Retired,residing   in   PARIS   8th ARRONDISSEMENT
230, rue du Faubourg Saint Honoré (75008)
Born in MECHED (IRAN), on October 1st 1924.
Widow of Mister Ahmad **BAYAT SOLTAN ADABI** and not remarried.
Not subject to a civil pact of solidarity.
Of Iranian nationality.
French Resident according to fiscal regulations.

Passed away in PARIS 18TH ARRONDISSEMENT (75018), on April 5th 2014.

#### PROVISIONS OF LAST WILLS

1/ Following the terms of an authentic and registered will, received by Catherine COURTIS, Notary at DOZULE, on January 26th 2006, the deceased dictated the following testamentary provisions to the 2notary:

"I want all my assets in France to go to my son Mahmoud VAHABZADEH, currently living in Florida; it is what my husband wanted and what I also want. He may receive these assets even if their value exceeds his legal rights."

2/ Following the terms of a holograph will made in Paris on the date of December 19th 2012, the deceased established as legatee of all movable and immovable assets located in France, as literary reproduced hereafter :

*"I, the undersigned, BIBI BATOUL widow BAYAT*
*Born in Meched (IRAN) in 1924*
*Bequeath to my son, MAHMOUD Vahabzadeh,*
*Living at 159 promenade Way Jupiter FL 33458 (UNITED STATES) the entirety of my movables and immovable assets located in France.*
*As such, I especially bequeath to him my apartment located in PARIS, 8th arrondissement, 230, rue du Faubourg Saint Honoré.*
*Made in PARIS*
*On 19th of December 2012"*

**The original of these testamentary provisions have been recorded in the minutes of Maître Veronique DRILHON-JOURDAN, Notary in Paris, pursuant to the minutes of opening and description dated may 2th, 2014.**

<u>TESTAMENTARY DISPOSITIONS</u>

<u>Heirs</u>

1/ Mister Mostafa **VAHABZADEH**, engineer , spouse of Madam Claudia ULRIKE SCHOEN, residing 209 Norhill, San Ramon CALIFORNIA USA
Born in MASHAD (IRAN) on January 31st 1949.
Married withoutprenuptial agreement following celebration of his unionin CARSON NEVADA on June 1st 1993
United States of Americacitizen
Non-resident in France according to fiscal regulations.

2/ Mister Mahmoud **VAHABZADEH**, Brand Manager, spouse of Madam Shereen Marie MATINRAZM, residing 159 Promenade Way, Jupiter 21 33458 FLORIDA USA.
Born in MASHAD (IRAN) on April 29th 1954.
Married withoutprenuptial agreementfollowing celebration of his union in DANVILLE CALIFORNIA USA on January 26th 1985.
United States of America citizen
Non-resident in France according to fiscal regulations.

3/ Madam Sahar**VAHABZADEH**, Student, spouse of Mister Iman **SALEHINIA**, living 235 NW Anthony Street Apt. 2 Pullman WA 99163 (UNITED STATES).
Born in TEHRAN (IRAN) on ...........
Married without marital contract following celebration of her union in TEHRAN, on
Citizen of IRAN
Non-resident in France according to fiscal regulations.

4/ Miss Sara **VAHABZADEH**, Student, living in TEHRAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave Iranian Building 11thFL.
Born in TEHRAN (IRAN) on October 9th 1981
Single.
Not subjected to civil pact of solidarity.
Citizen of IRAN
Non-resident in France according to fiscal regulations.

5/ Mister Mohammad **VAHABZADEH**, Student, living in TEHRAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave. Iranian Building 11th Fl.

Born in TEHRAN (IRAN) on

Single.

Not subjected to civil pact of solidarity.

Citizen of IRAN

Non-resident in France according to fiscal regulations.

Being specified here that Madam Sahar **VAHABZADEH**, Miss Sara **VAHABZADEH** and Mister Mohammad **VAHABZADEH** are the grandchildren of the deceased, from the union of Mister Reza **VAHABZADEH**, son of the deceased, with Madam Zari. Mister Reza VAHABZADEH passed away on    leaving as his only heirs Madam Sahar**VAHABZADEH**, Miss Sara **VAHABZADEH** and Mister Mohammad **VAHABZADEH** as attested in the notarized act received by    on  (or family booklet).

## HEREDITARY ENTITLEMENTS

Mister Mostafa **VAHABZADEH** is entitled to say and carry himself as heir for one third of assetsof the estate except for the legatee's rights.

Mister Mahmoud **VAHABZADEH** is entitled to say and carry himself as heir for one third of the goods in the estate,and also as legatee of all movable and immovable assets located in France.

Madam Sahar **SALEHINIA**is entitled to say and carry herself as heir for 1/9th of assets in the estate except for the legatee's rights.

Miss Sara **VAHABZADEH** is entitled to say and carry herself as heir for 1/9th of assets in the estate except for the legatee's rights.

Mister Mohammad **VAHABZADEH** is entitled to say and carry heir for 1/9th of assets in the estate except for the legatee rights .

These being presented, will now be exposed the declarations and affirmations of applicants.

## AFFIRMATION OF THE STATUS OF HEIR

The applicant affirmsthe devolution of the estate as established hereunder, and certifies that, to his knowledge, there exist no other right-owners in the estate.

Hedeclares that the deceased never made any provisions upon death that has not been reported in the present act.

He consequently affirm that the persons presented in the hereditary entitlements are the only ones having quality and destined to receive the estate.

To support hisaffirmation and declaration, the applicant shall appose his signature herein.

The applicant affirms furthermore:

The undersigned notary has informed him of the possibility to simply accept the estate or refuse it, or even still, to accept the estate but up until the net assets,  so that they may only be, in this last case, held to the estate debts up to the value of received assets

He especially brought to his attention :

1.                                                          – the consequences of a simple acceptation of the heirswhich renders them liable for the estate debts on their personal property and without limitation;

2.                                                          – that concealment of assets or rights under an estate or dissimulation of the existence of an heir, causes the faulty heir to simply accept the estate notwithstanding any renunciation or acceptation up until the net assets,  without any rights to  theassets or rights thus changed or concealed;

3.                                                          – the provisions of article 786 of the Civil Code hereafter literary copied :

"The heir which simply accepts may neither renounce the estate nor accept it up to the net assets. However, he may ask to be fully or partially discharged from his liability regarding an estate debt, the existence of which he ignored for legitimate reasons at the time of acceptation, if payment of this debt will have as effect to seriously burden his personal estate. The heir must commence action within five months from the day where he gained knowledge of the existence of and of the importance of the debt."

## DEATH CERTIFICATE

An integral copy of the death certificate of Madam BAYAT SOLTAN ABADI established on April 5th 2014 remains in attachment.

## REGISTRAR OF PROVISIONS OF LAST WILL

The Registrar of provisions of last will has sent to the undersigned notary, upon his request, a certificate of which remains in attachment and reveals the existence of the last will provisions here above stated on the date of December 19 2012.

## SUPPORTING DOCUMENTS PRODUCED

Other than the documents referred to in this act, the following documents have been produced in the hands of the undersigned notary:

## EFFECTS OF THE NOTARIZED ACT

The undersigned notary has read to the applicantsarticles 730-2, 730-3, 730-4, 730-5 of the Civil Code literary here after transcribed:

*Article 730-2 - An affirmation in a notarized act does not imply, by itself, acceptation of the estate.*

(Unless there is express acceptation in the act)

*Article 730-3 – A notarized act thus established is deemed authentic unless otherwise proven.*

*Those who rely on it are deemed to have hereditary rights in the established proportions.*

*Article 730-4 – Heirs named in the notarized act or their common authorized agent are presumed, regarding third parties detaining goods in the estate, to have free disposal of such goods and, if they are funds, free disposal of them in proportions indicated in the act.*

*Article 730-5- One who, willfully and in bad faith, takes advantage of an incorrect notarized act, incurs penalties for fraud under article 778, without prejudice to rights to damages*

## IMMOVABLE ATTESTATION

The undersigned notary informs the right-owners of their obligation to have any transmission upon death of property rights that could depend on the estate noted in a notarized attestation.

*The right-owner require that the undersigned notary establish this attestation,* and undertake to grant him, at his request, any necessary elements.

## FISCAL OBLIGATIONS

The applicantdeclares having been warned by the undersigned notary of the right owners obligation to declare the property of the estateto the fiscal administration within six months starting on the date of passing;this declaration must be accompanied with *payments of rights, if any.*

5

If the deadline is passed or if any adjustments for omissions in the declaration occur, or in case ofnonpayment in whole or in part of rights due, a monthly late interest fixed by the administration and calculated on the amount of rights will run.

Furthermore, a penalty may apply, especially after formal notice, or in case of maneuvers destined to avoid all or part of taxes.

II it specified that following the terms of article 1709 of the General Tax Code, the transfer of duty upon death are paid by heirs, donees or legatees. Heirs are severally liable for payment of these rights, but this is neither the case between heirs and legatees, even though universal, norbetween the legatees.

The claimantss asks the undersigned notary to establish this declaration, undertake to provide him, upon request, all necessary elements, without exception, or to grant him authorization to receive them.

## NOTARIZED ACT MENTIONED

In the margin the of death certificate the existence of the notarized act shall be mentioned.

At
The

*In Paris       26-05-2014*

*Mahmoud Vahabzadeh*

LE NOTAIRE ASSOCIÉ SOUSSIGNÉ
CERTIFIE LA SIGNATURE MATÉRIELLE
DE M. *Monsieur Mahmoud*
*VAHABZADEH*
PARIS, LE *26 / 05 / 14*

ANNEXE N° 3
à un Acte
reçu par le Notaire
soussigné, le 17/2/14

# MAIRIE DE PARIS

## Acte de décès - Copie Intégrale

Acte de décès n°542

**Bibi Batoul GHORAICHI**

Le cinq avril deux mil quatorze, à vingt heures, est décédée 46, rue Henri Huchard, **Bibi Batoul GHORAICHI**, domiciliée à Paris huitième -------------- arrondissement, 230 rue du faubourg Saint Honoré, née à Mashad (Iran) le - 21 mars 1924, retraitée, fille de Mirza Mohammad GHORAICHI et de Assieh, - décédés. Veuve de Ahmad Ali Khan BAYAT SOLTANABADI. --------------------- ---- Dressé le 07 avril 2014, à 14 heures 02 minutes, sur la déclaration - de Yveline BERMONT, âgée de 59 ans, adjoint administratif, exerçant à ----- Paris dix-huitième arrondissement, 46 rue Henri Huchard, qui, lecture ---- faite et invitée à lire l'acte, a signé avec Nous, Flora FRANCIETTE, ----- Fonctionnaire Municipal agissant en matière d'Etat-Civil par délégation du Maire du 18ème arrondissement de Paris. --------------------------------

Le Fonctionnaire municipal délégué dans les fonctions d'Etat civil
par le Maire de Paris dix-huitième arrondissement

Copie conforme à l'acte original conservé par
**la mairie de Paris dix-huitième arrondissement,**
délivrée le 26 mai 2014

 **ADSN** *au service du développement notarial*
*Fichier central de dispositions de dernières volontés (FCDDV)*

ADSN 95 avenue des Logissons 13107 VENELLES cedex
Tél.: 0 800 803 865 - Fax : 04 42 54 41 58
fcddv@notaires.fr



ETUDE : 75075

Référence : CSE

LETULLE M, DELOISON G, LETULLE H, DRILHON-
JOURDAIN V & DELOISON A
NOTAIRES ASSOCIES
3 RUE MONTALIVET
75383 PARIS

**Folio 1 / 3**

11/04/2014

 **ADSN**

Fichier Central des Dispositions de Dernières Volontés
ADSN 95 avenue des Logissons 13107 VENELLES cedex - Tél.: 0 800 803 665 - Fax : 04 42 54 41 58
fcddv@notaires.fr

**COMPTE RENDU D'INTERROGATION**

**Numéro : 2014041181557**

| | | |
|---|---|---|
| Nom : | **GHORAICHI** | Sexe : F |
| Prénoms : | **BIBI, BATOUL** | |
| Né(e) le : | **21/03/1924**   à :   **MASHAD, IRAN, RÉPUBLIQUE ISLAMIQUE D'** | |
| Conjoint : | **BAYAT SOLTANABADI** | Date de décès 05/04/2014 |

*Aucune inscription au Fichier Central en date 11/04/2014*

**Attention : Les Folios suivants comportent d'autres informations relatives au disposant**

**Folio 1 / 3**

 **ADSN** *au service du développement notarial*
*Fichier central de dispositions de dernières volontés (FCDDV)*

ADSN 95 avenue des Logissons 13107 VENELLES cedex
Tél.: 0 800 803 865 - Fax : 04 42 54 41 56
fcddv@notaires.fr



ETUDE : 75075

Référence : CSE

LETULLE M, DELOISON G, LETULLE H, DRILHON-
JOURDAIN V & DELOISON A
NOTAIRES ASSOCIES
3 RUE MONTALIVET
75383 PARIS

**Folio 2 / 3**

11/04/2014

 **ADSN**

Fichier Central des Dispositions de Dernières Volontés
ADSN 95 avenue des Logissons 13107 VENELLES cedex - Tél.: 0 800 803 865 - Fax : 04 42 54 41 58
fcddv@notaires.fr

## COMPLEMENT DE COMPTE RENDU D'INTERROGATION

2014041181557

| | | |
|---|---|---|
| Nom: | **GHORAICHI** | Sexe : **F** |
| Prénoms : | **BIBI, BATOUL** | |
| Né(e) le : | **00/00/1924**  à : **MASHAD, IRAN, RÉPUBLIQUE ISLAMIQUE D'** | |
| Conjoint : | **BAYAT SOLTANABADI** | Date de décès : **05/04/2014** |

*Le fichier central a enregistré les inscriptions suivantes :*

Acte du : 19/12/2012     Etude     **75075**
                         Compostage **2012122070705**

LETULLE M, DELOISON G, LETULLE H, DRILHON-
JOURDAIN V & DELOISON A
NOTAIRES ASSOCIES
3 RUE MONTALIVET
75383 PARIS

*Le fichier central a été interrogé :*
Le   10/04/2014           Etude   **75007**

RICHEN & KEY
NOTAIRES ASSOCIES
24 RUE VIGNON
75009 PARIS

**Attention : Les Folios suivants comportent d'autres informations relatives au disposant**

**Folio 2 / 3**

 **ADSN** *au service du développement notarial*
*Fichier central de dispositions de dernières volontés (FCDDV)*

ADSN 95 avenue des Logissons 13107 VENELLES cedex
Tél.: 0 800 803 665 - Fax : 04 42 54 41 58
fcddv@notaires.fr



ETUDE : 75075

Référence : CSE

LETULLE M, DELOISON G, LETULLE H, DRILHON-
JOURDAIN V & DELOISON A
NOTAIRES ASSOCIES
3 RUE MONTALIVET
75383 PARIS

**Folio 3 / 3**

11/04/2014

 **ADSN**
Fichier Central des Dispositions de Dernières Volontés
ADSN 95 avenue des Logissons 13107 VENELLES cedex - Tél.: 0 800 803 665 - Fax : 04 42 54 41 58
fcddv@notaires.fr

## COMPLEMENT DE COMPTE RENDU D'INTERROGATION

2014041181557

Nom:          **GHORAICHI**                                  Sexe : **F**

Prénoms :     **BIBI, BATOUL**

Né(e) le :    **01/10/1924**        à :   **MASHAD, IRAN, RÉPUBLIQUE ISLAMIQUE D'**

Conjoint :    **BAIIAT**                              Date de décès : **05/04/2014**

*Le fichier central a enregistré les inscriptions suivantes :*

Acte du : 26/01/2005        Etude        **14069**          Maîtres KECHICHIAN & PORCQ
                            Compostage **2006030820272**    NOTAIRES ASSOCIES
                                                            10 bis FAUBOURG DU PONT MOUSSE
                                                            B.P 1
                                                            14430 DOZULE

*Le fichier central a été interrogé :*
Le   10/04/2014        Etude   **75007**        RICHEN & KEY
                                               NOTAIRES ASSOCIES
                                               24 RUE VIGNON
                                               75009 PARIS

**Folio 3 / 3**

EXHIBIT B





RÉPUBLIQUE FRANÇAISE

N°2705

DÉCLARATION DE SUCCESSION

**CADRE A REMPLIR PAR LE DEPOSANT**

SERVICE DES IMPÔTS DES ENTREPRISES (SIE)
*(SIE du domicile du défunt)*
SUCCESSION DE :          M<sup>ME</sup> ☒          M<sup>LLE</sup> ☐          M ☐
NOM GHORAICHI                              PRÉNOM Bibi
*(Nom de naissance du défunt)*
DATE DE NAISSANCE · 1ER OCTOBRE 1924 COMMUNE DE NAISSANCE MECHEO
DÉPARTEMENT DE NAISSANCE MECHED                    OU PAYS IRAN
SITUATION FAMILIALE veuve en secondes noces de Monsieur BAIIAT SOLTAN ABADI
ADRESSE DU DOMICILE · 230, rue du Faubourg Saint Honoré
CODE POSTAL 75008   COMMUNE Paris 8ème Arrondissement (75008)
PROFESSION Retraitée
DÉCÉDÉE À Paris 18ème Arrondissement          CODE POSTAL 75018
LE 5 avril 2014

*22593509 DB MR2   113403*

CACHET DE L'ÉTUDE

**CADRE RÉSERVÉ À L'ADMINISTRATION**
*(à remplir par le service des impôts des entreprises du domicile du défunt)*

Référence comptable

Déclaration 2705 n° ......
Du

DECLARATIONS ET PAIEMENTS

| Nature | Date | N° | Sommes versées en euros |
|--------|------|-----|--------------------------|
|        |      |     |                          |
|        |      |     |                          |
|        |      | Total . . . . . |                          |

FORMULE N°2709

Renvoyée à

ANNOTATIONS DIVERSES                              Fiche de décès annotée

La déclaration comporte des titres de société
- Titres cotés
- Titres non cotés

Les dispositions des articles 39 et 40 de la loi n° 78-17 du 6 janvier 1978 relative à l'informatique, aux fichiers et aux libertés modifiée, par la loi n° 2004-801 du 6 août 2004 garantissent les droits des personnes physiques à l'égard des traitements des données à caractère personnel

## DISPOSITIONS RELATIVES À LA SITUATION PATRIMONIALE

- Date du mariage .
- Régime matrimonial adopté par les époux
- En cas d'absence de contrat de mariage : ☐ (cocher la case)
- En cas d'existence d'un contrat de mariage :
    • Date du contrat de mariage :
    • Nom et adresse du notaire          Notaire à
- Modifications du régime matrimonial .
    • Date de la décision du Tribunal de Grande Instance :

**OU**

## DISPOSITIONS EVENTUELLES RELATIVES AU PACTE CIVIL DE SOLIDARITE

- Date du PACS
- Date d'enregistrement du PACS au Tribunal d'instance

## DISPOSITIONS ÉVENTUELLES RELATIVES AUX DONATIONS ENTRE ÉPOUX

- Date de l'acte :
- Nom et adresse du notaire : Maître          , Notaire à
- Quotité (part disponible) choisie :

## DISPOSITIONS TESTAMENTAIRES

- Date du testament .
- Date du codicille (s'il y a lieu)
- Date de dépôt à l'étude notariale (en cas de testament olographe) .
- Nom et adresse du notaire :

## CONTRATS D'ASSURANCES SOUSCRITS EN CAS DE VOL D'OBJETS D'ART OU DE COLLECTION

- Nom ou dénomination sociale de la compagnie d'assurance .
- Adresse :
- N° du contrat :                              Date de souscription .
- Montant des valeurs assurées :

## DONATIONS, DONATIONS-PARTAGES ET DONS MANUELS CONSENTIS ANTÉRIEUREMENT PAR LE DÉFUNT

Remplissez ce cadre uniquement en présence d'une seule donation. S'il y a eu plusieurs donations, repro-duisez sur papier libre le modèle proposé ci-dessous pour chacune des donations consenties par le défunt.

- Date de l'acte de donation ou de donation-partage

- Nom et adresse du notaire :

- Références à l'enregistrement
    • Date
    • N°                    Bordereau .                    Case

- Date de dépôt (ou de révélation de la déclaration du don manuel)

- Désignation du bénéficiaire
    • Nom, Prénom .
    • Adresse :

cerfa
N°2022:01
DIRECTION GÉNÉRALE
DES FINANCES PUBLIQUES



**RÉPUBLIQUE FRANÇAISE**

N°2705-S
@internet-DGFip

## DÉCLARATION DE SUCCESSION
*de suites*

| DÉCLARANT |
| --- |

- (1) Pour les femmes mariées, indiquer le nom de jeune fille
- (2) Conjoint survivant, héritier, légataire, donataire, tuteur curateur, mandataire

### DEVOLUTION SUCCESSORALE (1)

#### Personne Décédée
Madame Bibi Batoul GHORAICHI, Retraitée, demeurant à PARIS 8ÈME ARRONDISSEMENT (75008) 230, rue du Faubourg Saint Honoré.
Née à MECHED (IRAN), le 1er octobre 1924.
Veuve de Monsieur Ahmad BAIIAT SOLTAN ABADI et non remariée.
Non liée par un pacte civil de solidarité
De nationalité française.
Résidente au sens de la réglementation fiscale

Décédée à PARIS 18ÈME ARRONDISSEMENT (75018),. le 5 avril 2014

#### Dispositions de dernieres volontes
1/ Aux termes d'un testament authentique enregistré reçu par Maître Catherine COUTRIS, Notaire à DOZULE, le 26 janvier 2006, la défunte a dicté au notaire les dispositions testamentaires suivantes :

« Je veux que tous mes biens en France reviennent à mon fils Mahmoud VAHABZADEH, demeurant actuellement en Floride : c'est ce que mon mari voulait et que je veux aussi. Il pourra recevoir ces biens même si leur valeur dépasse ses droits légaux ».

2/ Aux termes d'un testament olographe fait à PARIS, en date du 19 décembre 2012, la personne décédée a institué pour légataire de tous les biens meubles et immeubles situés en France, ainsi repris littéralement ci-après :

« Je soussignée, BIBI BATOUL veuve BAYAT
née à Meched (IRAN) en 1924
Lègue à mon fils, MAHMOUD Vahabzadeh,
Demeurant 159 promenade Way Jupiter FL 33458 (ETATS-UNIS)
l'ensemble de mes biens meubles et immeubles situés en France.
A ce titre, je lui lègue notamment mon appartement situé à PARIS, 8ème arrondissement, 230, rue du Faubourg Saint Honoré.
Fait à PARIS
Le 19 décembre 2012 »

Monsieur Mahmoud VAHABZADEH demeurant à FLORIDA

(1) Énoncer les nom, prénoms, domicile du conjoint survivant, des héritiers, donataires et légataires, leur degré de parenté avec le défunt leur date et lieu de naissance ainsi que les date et lieu de naissance de leurs enfants vivants au jour de l'ouverture de la succession





N°2706

DIRECTION GÉNÉRALE
DES FINANCES PUBLIQUES

RÉPUBLIQUE FRANÇAISE

Page 4

## DÉCLARATION DE SUCCESSION
*(Feuille intercalaire)*

| | A REMPLIR PAR LE DÉCLARANT EN EUROS | RÉSERVE A L'ADMINISTRATION |
|---|---|---|

(33458) ETATS-UNIS 159 Promenade Way. Jupiter 21.
L'original de ces dispositions testamentaires a été déposé au rang des minutes de Maître Véronique DRILHON-JOURDAIN, Notaire à PARIS suivant procès-verbal d'ouverture et de description en date du 2 mai 2014

### Dévolution Successorale
### Héritier

LAISSANT pour habiles à se dire et porter héritiers ensemble pour le tout ou chacun divisément pour        :

1/ Monsieur Mostafa VAHABZADEH  Sans profession, époux de Madame Claudia ULRIKE SCHOEN, demeurant à SAN RAMON CA (ETATS-UNIS) 209 Norhill
Né à MASHAD (IRAN) le 31 janvier 1950.
Marié sans contrat aux termes de son union célébrée à CARSON (ETATS-UNIS), le 1er juin 1993
De nationalité iranienne.
Non résident au sens de la réglementation fiscale.

2/ Monsieur Mahmoud VAHABZADEH, Brand Manager, époux de Madame Shereen Marie MATINRAZM, demeurant à FLORIDA (33458) (ETATS-UNIS) 159 Promenade Way, Jupiter 21.
Né à MASHAD (IRAN) le 29 avril 1954
Marié sans contrat aux termes de son union célébrée à DANVILLE CA (ETATS-UNIS), le 26 janvier 1985
Ce régime n'a subi aucune modification conventionnelle ou judiciaire depuis
De nationalité iranienne.
Non résident au sens de la réglementation fiscale.

Ses ENFANTS issus de son union avec Monsieur Davoud VAHABZADEH

Etant précisé ici que de cette union était également issu un autre enfant :

- Monsieur Reza VAHABZADEH, né le 9 mai 1948 à MASHHAD (Iran) et décédé le 9 janvier 2009 à TEHERAN (Iran)

Et laissant à sa survivance ses descendants, savoir .

3/ Mademoiselle Sara VAHABZADEH. Etudiante, demeurant à

---

**AFFIRMATION DE SINCERITE** (art.802 du code général des impôts)
*A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme, en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie. »

A                    le                    Signature(s)





N°2706

République Française

DÉCLARATION DE SUCCESSION

Page 5

| | A REMPLIR PAR LE DECLARANT EN EUROS | RÉSERVÉ A L'ADMINISTRATION |
|---|---|---|
| TEHERAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave Iranian Building 11th FL .<br>Née à TEHERAN (IRAN) le 9 octobre 1981<br>Célibataire<br>Non liée par un pacte civil de solidarité<br>De nationalité iranienne.<br>Non résidente au sens de la réglementation fiscale | | |
| 4/ Madame Sahar VAHABZADEH, Etudiante, épouse de Monsieur Iman SALEHINIA, demeurant    (ETATS-UNIS) 235 NW Anthony Street Apt 2 Pullman WA 99163<br>Née à TEHERAN (IRAN) le 29 mai 1983<br>Mariée sans contrat aux termes de son union célébrée à TEHERAN, le 26 juin 2010<br>De nationalité iranienne.<br>Non résidente au sens de la réglementation fiscale | | |
| 5/ Monsieur Mohammad VAHABZADEH, Etudiant, demeurant à TEHERAN (IRAN) Shahrak Ghods Vahazbadeh Iranzamin Ave. Iraninan Building 11th FL.<br>Né à TEHERAN (IRAN) le 9 juin 1990.<br>Célibataire.<br>Non lié par un pacte civil de solidarité<br>De nationalité iranienne<br>Non résident au sens de la réglementation fiscale | | |

**PRECISIONS**

**Qualités Héréditaires**

Monsieur Mostafa VAHABZADEH et Monsieur Mahmoud VAHABZADEH sont habiles à se dire et porter héritiers de Madame Bibi BAIIAT SOLTAN ABADI conjointement pour DEUX TIERS en PLEINE PROPRIETE ou chacun divisément pour UN TIERS en PLEINE PROPRIETE sauf les droits du légataire. Madame Sahar SALEHINIA, Mademoiselle Sara VAHABZADEH et Monsieur Mohammad VAHABZADEH sont habiles à se dire et porter héritiers de Madame Bibi BAIIAT SOLTAN ABADI conjointement pour UN TIERS en PLEINE PROPRIETE ou chacun divisément pour UN NEUVIEME en PLEINE PROPRIETE sauf les droits du légataire.

L'ACTE DE NOTORIETE constatant cette devolution successorale a été reçu par Maître Dominique BUSSON Membre de la Société Civile Professionnelle "Guy GROSSE, Marc DUMONT et

**AFFIRMATION DE SINCÉRITÉ** (art.802 du code général des impôts)
*A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie »

A              Le              Signature(s)

S.V        S.V        M.V





N°2706

DIRECTION GÉNÉRALE
DES FINANCES PUBLIQUES

RÉPUBLIQUE FRANÇAISE

Page 6

# DÉCLARATION DE SUCCESSION
*(Feuille intercalaire)*

| | A REMPLIR PAR LE DÉCLARANT EN EUROS | RÉSERVÉ A L'ADMINISTRATION |
|---|---|---|
| Dominique BUSSON, Notaires associés", titulaire d'un Office Notarial à PARIS (7eme) 21, Avenue Rapp, le 17 juillet 2014 | | |
| **OBSERVATIONS PRELIMINAIRES** | | |
| **Assurance-vie** | | |
| Le ou les soussignés déclarent que la personne décédée n'avait souscrit aucun contrat d'assurance-vie pouvant entrer dans le cadre du régime des articles 757 B ou 990 I du Code général des impôts. | | |
| **ACTIF DE SUCCESSION** | | |
| 1°) Une somme d'argent trouvée au domicile de la personne décédée, d'un montant de 9 800,00 €. | | |
| Ci | 9 800,00 € | |
| 2°) Les bijoux, objets d'art de collection, ont été prisés aux termes d'un inventaire reçu, conformément aux dispositions de l'article 764 I 2 du Code général des impôts et du BOI-ENR-DMTG-10-40-10-20-20120912 titre III, par Maître Dominique BUSSON, notaire à PARIS, le 22/09/14. L'estimation a été effectuée par Maître Ludovic MORAND, Commissaire-priseur à PARIS pour un montant de 23 170,00 €. | | |
| Ci | 23 170,00 € | |
| 3°) A la banque dénommée BNP Paribas. 3.1°) Un compte chèques n° 30004 00575 00001466431 10 ayant pour titulaire la défunte et dont le solde créditeur au jour du décès est de 20 096,68 € | | |
| Ci | 20 096,68 € | |
| 3.2°) Un livret de développement durable n° 30004 0 0575 00075195840 10 ayant pour titulaire la défunte et dont le solde créditeur en capital et intérêts au jour du décès est de 5 439,57 €. | | |
| Ci | 5 439,57 € | |
| 3.3°) Un compte d'instruments financiers n° 30004 0 0575 1810466431 10 ayant pour titulaire la défunte et dont le solde créditeur au jour du décès est de 2 698,00 € | | |
| Ci | 2 698,00 € | |
| 4°) Divers actifs situés en Iran 4.1°) Dans une banque iranienne, un compte courant ayant pour | | |

**PRECISIONS .**

**AFFIRMATION DE SINCERITE** (art.802 du code général des impôts)
*A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie »

A                    Le                    Signature(s)





N°2706

*Liberté · Égalité · Fraternité*
RÉPUBLIQUE FRANÇAISE

Page 7

DIRECTION GÉNÉRALE
DES FINANCES PUBLIQUES

# DÉCLARATION DE SUCCESSION
*(Feuille intercalaire)*

| | À REMPLIR PAR LE DÉCLARANT EN EUROS | RÉSERVÉ À L'ADMINISTRATION |
|---|---|---|
| titulaire la défunte et dont le solde créditeur au jour du décès est inconnu à ce jour | | |
| Ci . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Mémoire | |
| 4.2°) Des biens immobiliers et leur mobilier | | |
| Ci | Mémoire | |

5°) Le bien immobilier ci-après désigné :
**A PARIS 8ÈME ARRONDISSEMENT (75008) 230 Rue du Faubourg Saint Honoré**

Cadastre

| Préfixe | Section | N | Lieudit | Surface |
|---|---|---|---|---|
| | BC | 36 | 230 rue du Faubourg Saint Honoré | 00 ha 26 a 05 ca |

Total Surface : 00 ha 26 a 05 ca

**- Lot numéro 184 :**

Cage d'accès numéro cinq - au premier étage:
Première porte à droite, un appartement donnant sur le jardin numéro 2 du plan composé de: entrée, living-room, deux chambres, cuisine, salle de bains avec water-closet, cabinet de toilette, dégagement, placards.

Avec 84 / 1000 des parties communes générales

**- Lot numéro 239 :**

Cage d'accès numéro cinq - au premier sous-sol:
Une cave portant le numéro 4.

Avec 1 / 100000 des parties communes générales.

**- Lot numéro 332 :**

Cage d'accès numéros un à sept - au deuxième sous-sol.
un emplacement de parking portant le numéro 2.

Avec 5 / 10000 des parties communes générales

Ci . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **750 000,00 €**

**TOTAL ACTIF BRUT DE SUCCESSION** . . . . . . . . . . . . . . . . . . . . .   **811 404,25 €**

---

**AFFIRMATION DE SINCÉRITÉ (art.802 du code général des impôts)**
*A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie »

À                       Le                            Signature(s)





N°2706

DIRECTION GÉNÉRALE
DES FINANCES PUBLIQUES

RÉPUBLIQUE FRANÇAISE

Page 8

## DÉCLARATION DE SUCCESSION
*d'aule intermédiaire*

|  | A REMPLIR PAR LE DÉCLARANT EN EUROS | RÉSERVÉ A L'ADMINISTRATION |
|---|---|---|

### PASSIF DE SUCCESSION

1°) La taxe foncière de l'année 2014 portant sur le bien situé à PARIS, pour un montant de 407,00 €

Ci ...............  **407,00 €**

2°) Le montant non couvert par la Caisse Primaire d'Assurance Maladie et éventuellement la complémentaire des frais de dernière maladie, pour 517,38 €

Ci ...............  **517,38 €**

3°) Les frais funéraires portés pour un montant forfaitaire de 1500 Euros, montant maximum autorisé par l'administration fiscale qu'il y ait ou non production de facture.

Ci ...............  **1 500,00 €**

TOTAL PASSIF DE SUCCESSION..............  **2 424,38 €**

### BALANCE

Actif brut de succession.....................................  **811 404,25 €**

Passif de succession ........................................  **2 424,38 €**

Actif net de succession .....................................  **808 979,87 €**

A ajouter montant taxable des contrats d'assurance-vie ........  **0,00 €**

A ajouter montant des donations rapportables ..............  **0,00 €**

Masse taxable . . ...........................  **808 979,87 €**

Total des donations non rapportables .............  **0,00 €**

### PARTS IMPOSABLES ET LIQUIDATION DES DROITS

**Monsieur VAHABZADEH Mostafa**

Part lui revenant .....................  **202 245 €**

Représentant savoir .

Part légale ..........................  **202 245 €**
3/12 PP : 808 979,87 x 3/12 = 202 244,97

A déduire

Abattement ..............  **100 000 €**

Abattement déjà utilisé  **NEANT**

Abattement résiduel ...  **100 000 €**

---

**AFFIRMATION DE SINCÉRITÉ (art.802 du code général des impôts)**
A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie. »

A            Le            Signature(s) :

**cerfa**

DIRECTION GÉNÉRALE
DES FINANCES PUBLIQUES



RÉPUBLIQUE FRANÇAISE

N°2706

Imprimé DGFiP

Page 9

## DÉCLARATION DE SUCCESSION
*(Feuille intercalaire)*

| | A REMPLIR PAR LE DÉCLARANT EN EUROS | RESERVÉ A L'ADMINISTRATION |
|---|---|---|

Part nette taxable .................................................. 102 245 €
**DROITS BRUTS A PAYER** ..................... ..... 18 644 €
Calcul des droits :
8 072 €.. .. .à .. ... 5%    . = 404 €
4 037 €  .. à  .. 10%  .. .= 404 €
3 823 €  .... à  . . 15%  .. = 573 €
86 313 €.. . .à  .. . 20%  = 17 263 €

Total       18 644 €

Réduction pour enfant déjà utilisée       NEANT
Réduction pour enfant utilisée,...    , . .      NEANT
**DROITS NETS A PAYER** . .... ..... ...... .. ..... 18 644 €
Acompte déjà versé. .... ... .. .. ... .... .. .. . . .. NEANT
**DROITS NETS RESTANT A PAYER** ........................ 18 644 €

PRÉCISIONS

### Monsieur VAHABZADEH Mahmoud

Part lui revenant    . . ... ..  .        404 490 €
Représentant savoir
Part legale . . .... ... ........ .... .. . ..      404 490 €
  6/12 PP . 808 979,87 x 6/12 = 404 489,93

A déduire
Abattement.. .. . ... ...    . . .   ...   .. 100 000 €
Abattement déjà utilisé       .. ..... NEANT
Abattement résiduel    ...    . ...... 100 000 €

Part nette taxable ................................... .... ............. 304 490 €
**DROITS BRUTS A PAYER** ................ .... ... . ... .. . 59 093 €
Calcul des droits .
8 072 €.      à      5%    . : 404 €
4 037 €..     à     10%   .. = 404 €
3 823 € ...     à    15%    .... = 573 €
288 558 €     à     20%   = 57 712 €

Total        59 093 €

Réduction pour enfant déjà utilisée      NEANT
Réduction pour enfant utilisée. . . .      NEANT
**DROITS NETS A PAYER** ......... .. ... .. .......... ....... 59 093 €
Acompte déjà versé  ........ ..... .... .      ... NEANT
**DROITS NETS RESTANT A PAYER** ... .  .. .. ... 59 093 €

---

### AFFIRMATION DE SINCÉRITÉ (art.802 du code général des impôts)
*A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie. »
A            le            Signature(s)





N° 2706

Page 10

# DÉCLARATION DE SUCCESSION
*(Feuille intercalaire)*

| | A REMPLIR PAR LE DÉCLARANT EN EUROS | RÉSERVE A L'ADMINISTRATION |
|---|---|---|
| **Madame SALEHINIA Sahar** | | |
| Part lui revenant ................................. 67 415 € | | |
| Représentant savoir . | | |
| Part légale ................................... 67 415 € | | |
| 1/12 PP : 808 979,87 x 1/12 = 67 414,99 | | |
| A déduire : | | |
| Abattement légal suivi par représentation........... 33 333 € | | |
| Abattement légal suivi par représentation déjà utilisé .... NEANT | | |
| Abattement légal suivi par représentation résiduel . . . 33 333 € | | |
| Part nette taxable ...................... 34 082 € | | |
| DROITS BRUTS A PAYER ........................ 5 011 € | | |
| Calcul des droits : | | |
| 8 072 € ........... à ...... 5%      = 404 € | | |
| 4 037 € . ........ à ..... 10%      404 € | | |
| 3 823 € ... .. à ... .. 15%      573 € | | |
| 18 150 € . ..... à ... . 20%      = 3 630 € | | |
| Total              5 011 € | | |
| Réduction pour enfant déjà utilisée .            . . NEANT | | |
| Réduction pour enfant utilisée....           . . . NEANT | | |
| DROITS NETS A PAYER ......................... 5 011 € | | |
| Acompte déjà versé........             NEANT | | |
| DROITS NETS RESTANT A PAYER  ...  ....... .. .. 5 011 € | | |
| **Mademoiselle VAHABZADEH Sara** | | |
| Part lui revenant ................................. 67 415 € | | |
| Représentant savoir . | | |
| Part légale ................................... 67 415 € | * |
| 1/12 PP · 808 979,87 x 1/12 = 67 414,99 | | |
| A déduire | | |
| Abattement légal suivi par représentation . . .       33 333 € | | |
| Abattement légal suivi par représentation déjà utilisé ..  NEANT | | |
| Abattement légal suivi par représentation résiduel . ..... 33 333 € | | |
| Part nette taxable ........................... 34 082 € | | |
| DROITS BRUTS A PAYER ... .. .. .. .. .. ... 5 011 € | | |
| Calcul des droits | | |
| 8 072 € ............ à ....... 5%      = 404 € | | |
| 4 037 € ............ a ........ 10%      = 404 € | | |
| 3 823 € ............ a ....... 15%      = 573 € | | |

**AFFIRMATION DE SINCERITE** (art.802 du code général des impôts)
A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires,
*leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme, en outre, sous les peines édictées par
l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs
mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie. »

A              Le              Signature(s) :

PRECISIONS





N°2706

*Quatemat DGFip*

Page II

DÉCLARATION DE SUCCESSION
*(Feuille intercalaire)*

| | A REMPLIR PAR LE DÉCLARANT EN EUROS | RÉSERVE A L'ADMINISTRATION |
|---|---|---|

18 150 €        à      20% . .... = 3 630 €

Total                  ..... ..... .. 5 011 €

| | |
|---|---|
| Réduction pour enfant déjà utilisée | NEANT |
| Réduction pour enfant utilisée .. . ... | NEANT |
| DROITS NETS A PAYER .. .. . .... . ..... .. | 5 011 € |
| Acompte déjà versé......... . ............. ... ........ | NEANT |
| DROITS NETS RESTANT A PAYER ............................. | 5 011 € |

### Monsieur VAHABZADEH Mohammad

| | |
|---|---|
| Part lui revenant .............................................................. | 67 415 € |
| Représentant savoir ' | |
| Part légale ......... ........... . | 67 415 € |

*1/12 PP : 808 979,87 x 1/12 = 67 414,99*

A déduire .

| | |
|---|---|
| Abattement légal suivi par représentation . ...... | 33 333 € |
| Abattement légal suivi par représentation déjà utilisé | NEANT |
| Abattement légal suivi par représentation résiduel .... | 33 333 € |
| Part nette taxable .. .. ...... ... . ... . ... ... .. .... ... | 34 082 € |
| DROITS BRUTS A PAYER ............ . ..... ... . .. . ........... .... | 5 011 € |

Calcul des droits

8 072 €.. .. .   à . .   5%     .. = 404 €
4 037 € .... .   à .   10%    .. = 404 €
3 823 € ......   .a .  . 15% ..  ... = 573 €
18 150 € .. . à    20%     = 3 630 €

Total   .         .          5 011 €

| | |
|---|---|
| Réduction pour enfant déjà utilisée | NEANT |
| Réduction pour enfant utilisée .... . | NEANT |
| DROITS NETS A PAYER ..  ..  ..   ..  .. ..... . | 5 011 € |
| Acompte déjà versé.. .  .. . .. | NEANT |
| DROITS NETS RESTANT A PAYER .   ..... .  .. 5 011 € |

| TOTAL DES DROITS A PAYER    .  . . .. | 92 770 € |

#### DECLARATION EXPRESSE
Le déclarant déclare effectuer la déclaration de succession pour remplir ses obligations sur le plan fiscal. Compte-tenu de la solidarité existant entre les ayants droit, il propose de régler la totalité des droits dus par la succession et au titre de son legs

**AFFIRMATION DE SINCÉRITÉ** (art.802 du code général des impôts)
*A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.*

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie »

A                   Le                    Signature(s)

S.v          M.v     S.v





N°2706

Page 12

DÉCLARATION DE SUCCESSION
(Feuille intercalaire)

| | A REMPLIR PAR LE DÉCLARANT EN EUROS | RESERVÉ A L'ADMINISTRATION |
|---|---|---|

La présente déclaration de succession n'exprime que l'obligation fiscale des ayants-droit de la défunte. Elle est établie en l'état de la connaissance du patrimoine de la défunte et ne préjuge en rien de la liquidation civile de leurs droits soumis à la loi française qui ne pourra résulter que d'un acte liquidatif ultérieur.

Le déclarant affirme sincère et véritable la présente déclaration contenue en 12 pages

Il affirme en outre, sous les peines édictées par l'article 8 de la loi du 18 Avril 1918 (article 1837 du C G I) que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères, qui à sa connaissance au jour de la signature de la présente déclaration de succession, appartenaient au défunt, soit en totalité, soit en partie.

Fait à PARIS

Le    17 novembre    ...

Mohammad Vahabzadeh
10/11/2015

11/10/2015

Sara Vahabzadeh
10/11/2015

Cahal Vahabzadeh
10/11/2015

**AFFIRMATION DE SINCÉRITÉ** (art.802 du code général des impôts)
A ne signer qu'en dernière page de la déclaration par le conjoint survivant, les héritiers, donataires et légataires, leurs tuteurs, curateurs ou administrateurs légaux. Ne vaut pas signature de la déclaration.

« J'affirme sincère et véritable la présente déclaration contenue en 12 pages. J'affirme en outre, sous les peines édictées par l'article 1837 du Code général des impôts, que cette déclaration comprend l'argent comptant, les créances et toutes autres valeurs mobilières françaises ou étrangères qui, à ma connaissance, appartenaient au défunt, soit en totalité, soit en partie. »

A        le        Signature(s)

EXHIBIT C

RÉPUBLIQUE FRANÇAISE
Au nom du Peuple Français

EXTRAIT
des minutes du Greffe

# TRIBUNAL

# DE GRANDE INSTANCE

# DE

# PARIS

## EXPÉDITION EXÉCUTOIRE

**Nº RG : 16/53419**

**Me Kenneth WEISSBERG, avocat au barreau de PARIS - #P0046**

**TRIBUNAL
DE GRANDE
INSTANCE
DE PARIS**



## ORDONNANCE en la forme des RÉFÉRÉS
### rendue le 03 mai 2016

N° RG :
16/53419

N° : 2

Assignation du :
16 Février 2016

par **Bérengère DOLBEAU, Vice-Présidente** au Tribunal de Grande Instance de Paris, agissant par délégation du Président du Tribunal,

Assistée de **Géraldine DRAI, Greffier**.

**DEMANDEURS**

**Monsieur Mostafa VAHABZADEH**
San Ramon
CA209 NORHILL / ETATS UNIS

**Madame Sara VAHABZADEH**
Shahrak Ghods Vahazbadeh Iranzamin ave Iranian Building 11th
TEHERAN / IRAN

**Madame Sahar VAHABZADEH**
235 NW Anthony Street
Appt 2
99163 PULLMANN / ETATS UNIS

**Monsieur Mohammad VAHABZADEH**
Shahrak Ghods Vahazbadeh Iranzamin ave Iranian Building 11th
TEHERAN / IRAN

représentés par Me Emmanuel RAVANAS, avocat au barreau de PARIS - #D1318

**DEFENDEUR**

**Monsieur Mahmoud VAHABZADEH**
159 Promenade Way Jupiter 21
33458 FLORIDE / ETATS UNIS
représenté par Me Kenneth WEISSBERG, avocat au barreau de PARIS - #P0046

**2 Copies exécutoires
délivrées le:**

**Page 1**

## DÉBATS

A l'audience du **12 Avril 2016**, tenue publiquement, présidée par **Bérengère DOLBEAU, Vice-Présidente**, assistée de **Géraldine DRAI, Greffier**,

Nous, Président,

Après avoir entendu les parties comparantes ou leur conseil,

## EXPOSÉ DU LITIGE, PROCÉDURE, PRÉTENTIONS ET MOYENS DES PARTIES

Mme Bibi GHORAICHI est décédée le 5 avril 2014 à Paris 8ème, en laissant deux fils et trois petits enfants, descendants d'un troisième fils pré-décédé.

Par testament olographe rédigé le 19 décembre 2012, Mme Bibi GHORAICHI a souhaité que ses biens en France reviennent à son fils Mahmoud VAHABZADEH, notamment l'appartement situé 230 rue du Faubourg Saint Honoré à Paris 8ème.

L'actif brut de succession en France a été évalué à la somme de 811 404,25 €, dont le bien immobilier évalué à 750 000 €.

C'est dans ces conditions que par acte d'huissier en date du 16 février 2016, devant le président du tribunal de grande instance de Paris statuant en la forme des référé, M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH ont assigné M. Mahmoud VAHABZADEH, aux fins de se voir autoriser à vendre le bien situé 203 rue Faubourg Saint Honoré à Paris 8ème, et de leur allouer la somme de 350 000 € à valoir sur leurs droits dans la succession, outre la condamnation de M. Mahmoud VAHABZADEH à leur verser une somme de 3 000 € au titre de l'article 700 du code de procédure civile.

Au soutien de leurs prétentions, M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH expliquent qu'en application de l'article 815-11 du code civil, ils doivent en leur qualité d'héritiers réservataires recueillir la moitié de la succession de Mme GHORAICHI, et qu'ils sollicitent une avance en capital dont M. Mahmoud VAHABZADEH devra s'acquitter dans les deux mois, et s'il n'y satisfait pas, ils sollicitent l'autorisation de vendre le bien immobilier.

Par conclusions déposées à l'audience du 12 avril 2016 et soutenues oralement à celle-ci, M. Mahmoud VAHABZADEH, représenté, soulève in limine litis la nullité de l'assignation délivrée à défaut de traduction en anglais de l'acte, et subsidiairement, sollicite le rejet de la demande, en raison de l'absence d'indivision successorale entre les parties, M. VAHABZADEH étant le seul propriétaire de cet appartement, outre la somme de 6 000 € au titre de l'article 700 du code de procédure civile.

Page 2

Il expose qu'au fond, la demande d'avance en capital sera rejetée, en raison de l'absence d'indivisions successorale, et de fonds disponibles ; qu'en effet, en sa qualité de légataire universel et d'héritier réservataire, il est saisi de plein droit de son legs, et est seul propriétaire de l'appartement ; que les droits de chaque héritier ne sont ni déterminés, ni déterminables et qu'il n'existe aucun fonds disponibles.

Il précise que les demandeurs sont de mauvaise foi depuis le début de la succession, niant les biens que leur mère possédait en Iran, ce qui caractérisent un recel successoral.

Il est renvoyé aux conclusions sus-visées des parties pour un plus ample exposé des moyens qui y sont contenus, conformément à l'article 455 du code de procédure civile.

A l'audience du 12 avril 2016, l'affaire a été mise en délibéré au 3 mai 2016, date de la présente ordonnance.

**SUR CE**

- <u>Sur la nullité de l'assignation tirée de la violation de la convention de la Haye du 15 novembre 1965</u> :

Le défendeur conclut à la nullité de l'assignation au motif qu'il est en droit de bénéficier des dispositions de la convention de la Haye du 15 novembre 1965, en sa qualité de citoyen américain demeurant de façon habituelle sur le territoire des Etats-Unis, à savoir une signification à son domicile avec une traduction des demandes formulées à son encontre en langue anglaise.

Toutefois, il n'y a pas lieu d'annuler cette assignation pour avoir été rédigée en langue française dans la mesure où, dans le cadre de la convention de La Haye du 15 novembre 1965 relative à la notification et à la signification des actes judiciaires et extrajudiciaires en matière civile et commerciale signée par la France et les Etats-Unis, la traduction des actes judiciaires n'a pas été imposée, et n'a pas été demandée dans les réserves formulées par les Etats Unis.

En outre, en se fondant sur l'article 114 du code de procédure civile, il y a lieu de constater que le demandeur ne justifie d'aucun grief dans la mesure où il a eu le temps de préparer sa défense et de développer au soutien de ses prétentions une argumentation juridique et que dès lors, sa demande de nullité de l'assignation doit être rejetée.

En effet, l'assignation a été délivrée au domicile du défendeur aux Etats-Unis, conformément à l'article 686 du code de procédure civile, le 16 février 2016 pour l'audience du 12 avril 2016, audience à laquelle le défendeur a été représenté et a pu déposer ses conclusions et ses pièces.

Il y a lieu de constater qu'un temps suffisant s'est écoulé entre l'assignation et l'audience pour la préparation de la défense de M. Mahmoud VAHABZADEH, et qu'il n'y a pas lieu de faire droit à la demande de nullité de l'assignation de ce chef.

- <u>Sur la demande principale d'avance en capital</u> :

L'article 815-11 du Code civil dispose qu'à concurrence des fonds disponibles, le président du tribunal de grande instance peut ordonner une avance en capital sur les droits de l'indivisaire dans le partage à intervenir.

Le président du Tribunal de grande instance statue en fonction de l'intérêt de l'indivision et de l'intérêt de chaque indivisaire. L'indivisaire n'a pas à établir qu'il est dans le besoin pour réclamer une part des fonds disponibles de l'indivision, mais le juge tiendra compte des circonstances propres à chaque espèce.

Le demandeur doit apporter la preuve de l'existence de ces fonds, ce qui englobe toutes les liquidités, qu'il s'agisse de fonds originaires, ou de fruits et revenus des biens indivis, ainsi que toutes les sommes provenant de la vente de ces biens.

Le juge doit vérifier que l'avance sollicitée n'excède pas les droits du demandeur dans le partage à intervenir.

En l'espèce, les demandeurs versent notamment aux débats:
- l'acte de notoriété du 17 juillet 2014 après le décès de Mme Bibi GHORAICHI;
- le testament olographe de Mme Bibi BATOUL GHORAICHI du 19 décembre 2012 ;
- un procès-verbal d'inventaire établi par huissier le 15 avril 2014 et le 23 avril 2014 ;
- une consultation juridique d'un professeur de droit iranien du 31 octobre 2014 ;
- des échanges de courriels entre conseils des parties ;
- la déclaration de succession déposée le 17 novembre 2015 ;

M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH sollicitent qu'il leur soit accordé une avance en capital sur leur part dans le prix du bien immobilier situé 230 rue du Faubourg Saint Honoré, estimé dans la déclaration de succession à la somme de 750 000 €.

Il résulte cependant de cette déclaration de succession que les fonds disponibles s'élevaient à environ 35 000 € le 17 novembre 2015, les autres biens constituant l'actif de succession étant un bien immobilier (230 rue du Faubourg Saint Honoré) dont la vente n'est pas intervenue, et des biens mobiliers (bijoux) qui ne peuvent être qualifiés de fonds disponibles.

Cette absence de fonds disponibles est confirmée par la production du compte de succession de Mme Bibi GHORAICHI en date du 24 février 2016, qui présente un solde créditeur de 15,12 €, suite aux différents frais réglés à hauteur de 29 475,18 € (passif de succession, frais funéraires, droits de succession, honoraires...).

En l'absence de tout fonds disponible dans le cadre de la succession de Mme Bibi GHORAICHI, et pour ce seul motif, la demande d'avance en capital présentée par les demandeurs sera rejetée.

**Page 4**

Par ailleurs, et à titre superfétatoire, il ressort des différentes pièces versées aux débats que les droits des différentes parties sur la succession de Mme Bibi GHORAICHI sont contestés, puisque les demandeurs indiquent avoir droit à la moitié de la succession de leur mère en France, alors que M. Mahmoud VAHABZADEH soutient qu'il est l'unique propriétaire de l'appartement situé en France, au vu des dispositions testamentaires de Mme GHORAICHI qui l'institue légataire universel pour ce bien, et puisque les autres héritiers ont bénéficié quant à eux de biens immobiliers en Iran.

Au vu de ces contestations, le juge saisi sur le fondement de l'article 815-11 du code civil, ne peut vérifier que l'avance sollicitée n'excède pas les droits des demandeurs dans le partage à intervenir.

Ainsi, les conditions de l'article 815-11 du Code civil n'étant pas réunies, il n'y a pas lieu de faire droit à la demande d'avance en capital sur leurs droits de M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH.

- Sur la demande subsidiaire fondée sur l'article 815-6 du code civil :

L'article 815-6 du Code civil dispose que le président du tribunal de grande instance peut prescrire ou autoriser toutes les mesures urgentes que requiert l'intérêt commun.

Il entre dans les pouvoirs que le président du tribunal de grande instance tient de l'article 815-6 du code civil d'autoriser un indivisaire à conclure seul un acte de vente d'un bien indivis pourvu qu'une telle mesure soit justifiée par l'urgence et l'intérêt commun.

En l'espèce, les demandeurs sollicitent subsidiairement la vente du bien immobilier, situé 230 rue du Faubourg Saint Honoré, afin de permettre l'attribution des fonds provenant de la vente.

Toutefois, les demandeurs ne justifient ni qu'il y ait urgence à vendre ce bien immobilier, ni que l'intérêt commun de l'indivision soit de vendre ce bien.

En effet, au vu de la situation du bien immobilier dans un quartier recherché de Paris (rue du Faubourg Saint Honoré dans le 8ème arrondissement), et de l'évolution favorable des prix sur la dernière période, aucun élément ne justifie que ce bien immobilier perdrait actuellement de la valeur.

En outre, il ressort de la déclaration de succession versée aux débats, que le passif successoral est très inférieur à l'actif successoral.

M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH ne justifient donc pas de l'urgence à procéder à la vente du bien situé à Paris, rue du Faubourg Saint Honoré.

Ainsi, les conditions cumulatives de l'article 815-6 du Code civil n'étant pas réunies, il y a lieu de rejeter la demande d'autorisation de vente.

- <u>Sur les demandes accessoires</u> :

L'article 492-1 du Code de procédure civile dispose que le juge statuant en la forme des référés exerce les pouvoirs dont dispose la juridiction au fond. L'article 696 dudit Code précise que la partie perdante est condamnée aux dépens, à moins que le juge, par décision motivée, n'en mette la totalité ou une fraction à la charge d'une autre partie.

M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH, qui succombent, doivent supporter la charge des dépens, conformément aux dispositions sus-visées.

L'article 700 du Code de procédure civile dispose que le juge condamne la partie tenue aux dépens ou qui perd son procès à payer : 1° A l'autre partie la somme qu'il détermine, au titre des frais exposés et non compris dans les dépens, 2° et, le cas échéant, à l'avocat du bénéficiaire de l'aide juridictionnelle partielle ou totale une somme au titre des honoraires et frais, non compris dans les dépens, que le bénéficiaire de l'aide aurait exposés s'il n'avait pas eu cette aide. Dans ce cas, il est procédé comme il est dit aux alinéas 3 et 4 de l'article 37 de la loi n° 91-647 du 10 juillet 1991.

Au vu du contexte familial du conflit, et des procédures antérieures, il n'apparaît pas inéquitable de laisser à chacune des parties les frais qu'elles ont engagés au cours de la présente instance. Il n'y a donc pas lieu de faire droit aux demandes au titre de l'article 700 du code de procédure civile.

## PAR CES MOTIFS

Statuant en la forme des référés, après débats en audience publique, par remise au greffe le jour du délibéré, par ordonnance contradictoire susceptible d'appel ,

Vu les dispositions de l'article 815-11 et de l'article 815-6 du code civil,

Rejetons l'exception de nullité tirée de la violation de la convention de la Haye du 15 novembre 1965 ;

Rejetons les demandes de M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH au titre de l'avance en capital sur la succession de Mme Bibi GHORAICHI, en l'absence de fonds disponibles ;

Rejetons les demandes de M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH au titre de l'autorisation de vente de l'immeuble ;

Condamnons M. Mostafa VAHABZADEH, Melle Sarah VAHABZADEH, Melle Sahar VAHABZADEH et M. Mohammad VAHABZADEH aux entiers dépens,

Disons n'y avoir lieu à application des dispositions de l'article 700 du code de procédure civile,

Rejetons toutes les autres demandes des parties,

Rappelons que la présente décision est exécutoire à titre provisoire, conformément aux dispositions de l'article 492-1 du code de procédure civile.

Fait à Paris le **03 mai 2016**

Le Greffier,

Géraldine DRAI

Le Président,

Bérengère DOLBEAU

N° RG : 16/53419

**EXPÉDITION exécutoire dans l'affaire :**

**Demandeurs :** M. Mostafa VAHABZADEH

contre

**Défendeur :** M. Mahmoud VAHABZADEH

**EN CONSÉQUENCE, LA RÉPUBLIQUE FRANÇAISE** mande et ordonne :

A tous les huissiers de justice, sur ce requis, de mettre ladite décision à exécution,

Aux Procureurs Généraux et aux Procureurs de la République près les Tribunaux de Grande Instance d'y tenir la main,

A tous commandants et officiers de la force publique de prêter main-forte lorsqu'ils en seront légalement requis.

En foi de quoi la présente a été signée et délivrée par nous Greffier en Chef soussigné au Greffe du Tribunal de Grande Instance de Paris

p/Le Greffier en Chef

**9 ème page et dernière**

E
X
H
I
B
I
T

D

DEMANDE – REQUEST
AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER
D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE
For Service Abroad of Judicial or Extrajudicial Documents

Convention relative à la signification et à la notification à l'étranger des actes Judiciaires ou
Extrajudiciaires en matière civile ou commerciale, signée à la Haye, le 15 novembre 1965
(Convention on the service abroad of judicial or extrajudicial document in civil or commercial matters, signed
at the Haye, November 15, 1965)

---

: Identité et adresse du requérant:          Adresse de l'autorité destinataire
: (Identity and adress of the applical)      : (Address of receiving authority)
: SCP BUZY-BRAUN - ~~~~ ~~~~ - ~~~~          PROCESS FORWARDING INTERNATIONAL
  Huissiers Associés       CBH75.PARIS      (PFI)
  10 rue Pergolèse      D. BUZY - J. BRAUN  633 Yesler Way
  75016 Paris            Huissiers de Justice associés  SEATLE W98104
  Tel: 01 44 17 99 77  10, rue Pergolèse - 75116 PARIS ETATS UNIS D'AMERIQUE
       T. 03 44 17 99 77 - F. 01 44 17 99 70 - hdv2bzn/5.com

---

Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire
les documents ci-dessous énumérés, en le priant conformément à l'article 5 de la Convention précitée,
d'en faire remettre sans retard un exemplaire au destinataire, à savoir :
(The undersigned applicant has the honour to transmit – in Duplicate – the documents listed below and; in
conformity which article 5 of the above – mentionned Convention, requests: )

(Identité et adresse)   (Identity and address)


Monsieur VAHABZADEH Mahmoud
159 Promenade Way Jupiter 31
33458-3013 FLORIDE
ETATS UNIS


a) selon les formes légales (article 5, alinéa premier, lettre a)

a) in accordance with the following particular method (sub-paragraph (a) of the first paragraph of article 5 of
the Convention)

b) selon la forme particulière suivante (article 5 alinéa premier, lettre b)

b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)

c) le cas échéant, par remise simple (article 5, alinéa 2).

c) by delivrery to the adress, if the accepts it voluntary (second paragraph of article 5)

Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte – et de ses
annexes – avec l'attestation figurant au verso.
(The authority is requested to return or to have returned to the applicant a copy of the documents – and the

annexes – with a certificate as provided on the reverse side.

**Emunération des pièces**
List of documents

Fait à Paris le : $26$ 09 17
Done at          . the

Signature et / ou cachet          Signature and / or Stamp



ELEMENTS ESSENTIELS DE L'ACTE
SUMMARY OF THE DOCUMENT TO BE SERVED

Convention relative à la signification et à la notification à l'étranger des actes judiciaires et
extrajudiciaires en matière civile ou commerciale, signé à la Haye, le 15 Novembre 1965,
(Convention on the service abroad of judicial and extrajudicial document in civil or commercial matters: signed
at the Haye, November 15, 1965)

(article 5, alinéa 4)
(article 5, fourth paragraph)

Nom et adresse de l'autorité requérante:
Name and address of the requesting authority:
SCP CHAPUIS-BUZY-BANO
Huissiers-Associés
10 rue Pergolèse
75016 Paris
Tel: 01.44.17.99.77

Identité des parties :                        Particular of the parties :
Requérant :

Mademoiselle VAHABZADEH Sahar          Monsieur VAHABZADEH Mohammad
                                       né le 9 juin 1990 à TEHERAN (IRAN)
235 NW Anthony Street Apt 2 Pullman     Shahrak Ghods Valneebadeh Iranzamin
WA 99163                               ave Iranian Building, 11th Ft.
ETATS UNIS                             TEHERAN (IRAN)


Madame VAHABZADEH Sara

Shahrak Ghods Iranzamin avec Iranian
Building (11th Fl.
TEHERAN (IRAN)




Défendeur :


                        Monsieur VAHABZADEH Mahmoud
                        né le 29 avril 1954 à MASHAD (IRAN)
                        159 Promenade Way Jupiter 21
                        33458-5013 FLORIDE
                        ETATS UNIS




ACTE JUDICIAIRE ** JUDICIAL DOCUMENT **
Nature et objet de l'acte : (Nature and purpose of the document)
ASSIGNATION DEVANT LE TRIBUNAL DE GRANDE INSTANCE

Nature et objet de l'Instance, le cas échéant, montant du litige .
Nature and purpose of the processing and, where appropriate, the amount in dispute :


Date et lieu de la comparution ** Date & place for entering appearance
TRIBUNAL DE GRANDE INSTANCE DE PARIS


Juridiction qui a rendu la décision ** / Court which has given judgement


Date de la décision  **                   Date of Judgement **


Indication des délais figurant dans l'acte **
Time limits stated in the document ** .


## ACTE EXTRAJUDICIAIRE **   EXTRAJUDICIAL DOCUMENT * +
Nature et objet de l'acte : (Nature and purpose of the document).

Délais figurant dans l'acte (Time and purpose in the document) ** :

* S'il y a lieu, l'identité et adresse de la personne intéressée à la transmission de l'acte.
* If appropriate, identity and address of the person interested in the transmission of the document
** Rayer les mentions inutiles
** Delete if inappropriate

## ATTESTATION – Partie à remplir par l'autorité étrangère
### CERTIFICATE – Devant effectuer la notification

L'autorité soussignée à l'honneur d'attester conformément à l'article 6 de ladite Convention,
The undersigned authority has the honour to certify, in conformity with article 6 of the Convention.


1. Que la demande a été exécutée
1. That the document has been served
—      le (date)
—      the (date)
-      à (localité, rue, numéro) :
—      at (place, street, number)
-      **Dans une des formes suivantes prévues à l'article 5:**
-      in one of the following authorised by the article 5:

a) selon les formes légales (article 5, alinéa premier, lettre a)
a) in accordance with the provision of sub paragraph (a) of the first paragraph of article 5 of the Convention

b) selon la forme particulière suivante :
b) in accordance with the following particular method-

c) par simple remise
c) by delivrery to the address, who accept it voluntary


**Les documents mentionnés dans la demande ont été remis à**

(the document referred to in the request have been delivered to:)
- (Identité et qualité de la personne):
- Identity and description of person):
- **Lien de parenté, de subordination ou autres, avec le destinataire de l'acte**
- Relation ship to the adress (family, business, of other)

2. **Que la demande n'a pas été exécutée, en raison des faits suivants:**
2. That the document has not been served, by reason of the following facts .

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*
(In conformity with the second paragraph of article 12 of the Convention the applicant is requested to pay the expens detailed in the attached statement)

**Annexes**
Annexe
**Pièces renvoyées :**
Documents returned :

**Le cas échéant, les documents justificatifs de l'exécution**
In appropriate case, documents establishing the service :

Fait à                    , le
Done at,                    the

Signature et / ou cachet            **Signature and / or stamp**

CBH75.PARIS
D. BUŻY - J. BRAUN
Huissiers de Justice associés
15, rue Hergoüet - 75116 PARIS
T. 01 44 17 98 77   F. 01 44 17 98 70 - info@cbh75.com

EXPEDITION

## ASSIGNATION
### Devant le Tribunal de Grande Instance de Paris

L'an DEUX MILLE DIX SEPT, et le **Vingt Six SEPTEMBRE**

À la demande de :

- Mademoiselle Sara VAHABZADEH, née le 9 octobre 1981 à Téhéran (IRAN), de nationalité iranienne, étudiante, demeurant Shahrak Ghods - Iranzamin ave Iranian Building 11th FL à TEHERAN (IRAN)

- Mademoiselle Sahar VAHABZADEH, née le 29 mai 1983 à Téhéran (IRAN), de nationalité iranienne, étudiante, demeurant 235 NW Anthony Street Apt 2 Pullman WA 99163 (ETATS UNIS)

- Monsieur Mohammad VAHABZADEH, né le 9 juin 1990 à Téhéran (IRAN), de nationalité iranienne, étudiant, demeurant Shahrak Ghods - Iranzamin ave Iranian Building 11th FL à TEHERAN (IRAN)

Ayant pour Avocat : Maître Mohsen Assadollahi
avocat au Barreau de Paris
7/9 rue Montevideo - 75116 Paris

au Cabinet duquel il est fait élection de domicile et qui se constitue et occupera pour lui sur la présente assignation et ses suites

J'ai,

Maître
Huissier de Justice
Demeurant

Nous, David BUŻY, José BRAUN, Huissiers de Justice Associés membres de la « SCP David BUŻY et José BRAUN », titulair d'un office d'Huissier de Justice à la résidence de Paris, y demeurant 10 rue Perpuläte 75116, l'un d'eux soussigné

Donné assignation

A :

1. Monsieur Mahmoud VAHABZADEH, né le 29 avril 1954 à Mashhad (IRAN), de nationalité américaine, demeurant 159 Promenade Way Jupiter 21, 33458-3013, Floride, Etats-Unis.

2. Monsieur Mostafa VAHABZADEH, né le 31 janvier 1950 à Mashhad (IRAN), de nationalité iranienne, demeurant San Ramon CA 209 Norhill (ETATS UNIS) domicile élu chez Maître Emmanuel Ravanas, Avocat au Barreau de Paris, au 77 boulevard Malesherbes - 75008 Paris

D'AVOIR A COMPARAITRE devant le Tribunal de grande instance de Paris, 4 boulevard du Palais - 75004 PARIS

## TRES IMPORTANT

Il vous est rappelé, conformément aux articles 56, 752 et 755 du Code de Procédure Civile :
Vous êtes tenus de constituer avocat dans un délai de quinze jour augmenté du délai de deux mois pour l'Etranger. A défaut de comparaître par l'intermédiaire d'un avocat constitué, vous vous exposez à ce qu'un jugement soit rendu sur les seuls éléments fournis par le demandeur.

n° 020517
15/5/2017

Objet de la demande :

## 1 - FAITS ET PROCEDURE

Madame Bibi Batoul GHORAICHI, née le 1er octobre 1924 à Mechod en Iran, de nationalité française, demeurant 230 rue du Faubourg Saint Honoré, est décédée le 5 avril 2014 à Paris 8ème.

*Pièce n° 1*

Ainsi que le constate l'acte de notoriété dressé par Maître BUSSON, notaire à Paris, en date du 17 juillet 2014, la défunte laisse pour lui succéder :

- ses deux fils :
  - Monsieur Mostapha VAHABZADEH
  - Monsieur Mahmoud VAHABZADEH

- et ses trois petits-enfants, descendants de Monsieur Reza VAHABZADEH, décédé le 0 janvier 2009 à TEHERAN (IRAN) :

  - Mademoiselle Sara VAHABZADEH
  - Mademoiselle Sahar VAHABZADEH
  - Monsieur Mohammad VAHABZADEH

*Pièce n° 2*

Un partage amiable a été rendu impossible par Monsieur Mahmoud VAHABZADEH.

En effet, aux termes d'un testament olographe en date du 19 décembre 2012 déposé au rang des minutes de Me Véronique DRILHON JOURDAIN, notaire à Paris, la défunte a souhaité que ses biens en France reviennent à son fils Mahmoud VAHABZADEH.

*Pièce n° 3*

A ce titre, la défunte a légué son appartement situé au 230 rue du Faubourg Saint Honoré à Paris 8ème, appartement dont elle avait elle-même hérité de son défunt mari.

*Pièce n° 4*

Un inventaire non contradictoire a été dressé le 15 avril 2014 par la SCP CALUPPE ET CORBEAUX, huissiers de justice à Paris, dans l'appartement parisien de la défunte.

*Pièce n° 5 et 6*

Par ailleurs, le conseil de Monsieur Mahmoud VAHABZADEH a, immédiatement après le décès de Madame Bibi Batoul GHORAICHI a écrit au concierge du 230 rue du Faubourg Saint Honoré à Paris 8ème, lui demandant de ne permettre l'accès de l'appartement à personne d'autre que son client et précisant que ce dernier serait le seul propriétaire de l'appartement.

*Pièce n° 7*

Il ressort de ce document que Monsieur Mahmoud VAHABZADEH se serait constitué, de manière unilatérale, un titre de propriété en faisant établir une attestation immobilière.

Il n'a à aucun moment, comme le requièrent les articles 1004 et 1005 du Code Civil, demandé la délivrance de son legs.

Or, en vertu des disposition de l'article 1004 du Code Civil :

« Lorsqu'au décès du testateur il y a des héritiers auxquels une quotité de ses biens est réservée par la loi, ces héritiers sont saisis de plein droit, par sa mort, de tous les biens de la succession ; et le légataire universel est tenu de leur demander la délivrance des biens compris dans le testament. »

L'article 1005 du Code Civil ajoute :

« Néanmoins, dans les mêmes cas, le légataire universel aura la jouissance des biens compris dans le testament, à compter du jour du décès, si la demande en délivrance a été faite dans l'année, depuis cette époque ; sinon, cette jouissance ne commencera que du jour de la demande formée en justice, ou du jour que la délivrance aurait été volontairement consentie. »

Monsieur Mahmoud VAHABZADEH s'est empressé de se mettre en possession des biens de la succession sans jamais évoquer la question des héritiers réservataires.

Il apparaît dès lors nécessaire de lui rappeler qu'il est tenu de respecter les règles fixées par le Code Civil, ainsi que les droits de ses co-héritiers.

Monsieur Mahmoud VAHABZADEH ne peut continuer de considérer que tous les biens situés en France lui reviennent et lui appartiennent.

Monsieur Mahmoud VAHABZADEH bloque depuis plus de deux ans le règlement de la succession de Madame Bibi Batoul GHORAICHI.

Les Demandeurs ont par l'intermédiaire de leur conseil tenté à maintes reprises de faire avancer le règlement de la succession et de formuler des propositions, en vain..

*Pièces n° 10 à 15*

Le 9 octobre 2014, une réunion par le notaire en charge de la succession a été organisée pour que soit évoqué la consistance de la succession de Madame Bibi Batoul GHORAICHI en Iran et en France.

*Pièce n° 8*

Or, bien que dûment informé, Monsieur Mahmoud VAHABZADEH n'y a ni assisté, ni s'est fait représenter.

A de nombreuses reprises , les requérants ont rappelé au notaire en charge de la succession ainsi qu'à Monsieur Mahmoud VAHABZADEH les différents points de désaccord et proposant des issues pour faire avancer le partage ;

De surcroit, les demandeurs n'ont jamais été mis en mesures d'assister ni de se faire représenter lors des différents inventaires.

Monsieur Mahmoud VAHABZADEH a tout simplement agit au mépris des droits des autres ayants-droits.

C'est dans ces condition, ce afin d'assurer la sauvegarde des objets et meubles de valeur se trouvant dans les lieux, que les demandeurs ont sollicité de Monsieur le Président l'autorisation de faire apposer des scellés sur l'appartement du 230 rue du Faubourg Saint Honoré à Paris 75008

Par ordonnance en date du 30 janvier 2015 des scellés ont été ordonnées.

Par ordonnance de référé en date du 20 mars 2015 la levée des scellé a été ordonnée

Le 8 décembre 2015, la SCP GROSSE DUMONT BUSSON, notaires associés à Paris, a déposé la déclaration de succession de Madame Bibi Batoul GHORAICHI.

*Pièces n° 16 et 17*

La masse partageable se compose de la manière suivante :

- la somme d'argent de 9.800 €,
- des bijoux, objets d'art et autres estimés à 23.170 €,
- un compte chèque auprès de la BNP PARIBAS avec un solde de 20.096,68 €,
- un livret développement durable avec un solde de 5.439,57 €,
- un compte d'instruments financiers avec un solde de 2.898 €,
- un bien immobilier sis 230 rue du Faubourg Saint Honoré 75008 PARIS évalué à 750.000 €,

Soit un actif brut de succession de 811.404,25 €, le passif étant évalué à 2.424,38 € et les droits à 59.093 € bruts.

Depuis le décès de leur grand-mère, soit depuis plus de deux ans, aucun accord n'a pu intervenir entre les parties sur le règlement de la succession, leur oncle, Monsieur Mahmoud VAHABZADEH, a tout simplement pris possession de l'intégralité de la succession.

C'est ainsi que les demandeurs ont été contraint de former devant le Président du Tribunal de Céans saisi en la forme des référés une action en demande d'avance en capital sur leur droits d'indivisaires, laquelle s'est soldée par une ordonnance en la forme des référés du 3 mai 2016 qui a notamment rejeté leurs demandes en l'absence de fonds disponible.

Compte tenu des procédures précitées et de l'attitude de Monsieur Mahmoud VAHABZADEH, les demandeurs n'ont d'autre choix que de saisir le Tribunal de Céans afin qu'il ordonne :

L'ouverture des opérations de compte liquidation partage de la succession de Madame Bibi Batoul GHORAICHI.

F- la licitation de l'appartement sis 230 rue du Faubourg Saint Honoré - 75008 Paris.

## II - DISCUSSION

## A - OUVERTURE DES OPÉRATIONS DE COMPTE LIQUIDATION PARTAGE

Madame Bibi Batoul GHORAICHI a légué à son fils, Mahmoud VAHABZADEH, son appartement situé au 230 rue du Faubourg Saint Honoré - 75008 Paris, lequel représente la principale valeur de la masse successorale.

Conformément aux dispositions de l'article 913 du Code Civil ainsi que la déclaration de succession en date du 8 décembre 2015, les Demandeurs, en leur qualité d'héritiers réservataires, doivent recueillir ensemble un quart de la succession de Madame Bibi Batoul GHORAICHI.

Monsieur Mahmoud VAHABZADEH prétend que *« la répartition de la succession en France ne tient pas compte des actifs situés en Iran lesquels doivent être pris en compte dans le cadre de la succession française. »*

Or, Monsieur Mahmoud VAHABZADEH n'ignore pas que selon la législation iranienne, le rapport successoral n'existe pas en Iran, tout comme le mécanisme de la représentation successorale.

*Pièce n° 9*

Par voie de conséquence, les Demandeurs, les petits-enfants de la défunte, ne sont pas considérés comme héritiers dans la succession iranienne de Madame Bibi Batoul GHORAICHI en Iran.

Le Tribunal ne manquera pas de constater que la succession de la défunte en Iran, ne concerne pas les Demandeurs.

Il est incontestable que les Demandeurs doivent être rempli de leurs droits.

Toutes les diligences en vue de parvenir à un partage amiable ont été accomplies, mais se sont révélées infructueuses.

*Pièce n° 10 à 15*

Compte tenu de ce qui précède les Demandeurs sont dès lors bien fondés en leurs demande et il y aura lieu d'ordonner l'ouverture des opérations de compte liquidations partage de la succession de Madame Bibi Batoul GHORAICHI.

## B - LICITATION DE L'APPARTEMENT DU 230, rue du Faubourg Saint Honoré - 75008 Paris

En vertu de l'article 1377 du Code de procédure Civile :

*« Le tribunal ordonne, dans les conditions qu'il détermine, la vente par adjudication des biens qui ne peuvent être facilement partagés ou attribués*

*« La vente est faite, pour les immeubles, selon les règles prévues aux articles 1271 à 1281 et, pour les meubles, dans les formes prévues aux articles 110 à 114 et 116 du décret n° 92 755 du 31 juillet 1992 »*

En l'espèce, il est incontestable que

- depuis au moins le 15 avril 2014, Monsieur Mahmoud VAHABZADEH a pris possession de l'appartement situé au 230, rue du Faubourg Saint Honoré - 75008 Paris.

- Monsieur Mahmoud VAHABZADEH s'est arrogé le titre de propriété dudit bien immobilier;

- Monsieur Mahmoud VAHABZADEH s'oppose depuis plus de deux ans à tout versement au profit des Demandeurs au titre du règlement de ladite succession ;

  ledit bien immobilier constitue la principale valeur de la succession de Madame Bibi Batoul GHORAICHI, dès qu'en 2014, il a été évalué à 750.000 € pour un actif brut de succession de 811.404,25 €, le passif étant évalué à 2.424,38 euros et les droits à 59.095 euros bruts ;

- la succession iranienne de Madame Bibi Batoul GHORAICHI ne concerne pas les Demandeurs ;

Arguant d'une prétendue compensation entre les actifs sitnes en France et en Iran, Monsieur Mahmoud VAHABZADEH n'a fait jusqu'à présent aucun paiement en valeur de l'indemnité de réduction pourtant due aux requérants, héritiers réservataires.

La principale valeur de la succession de Madame Bibi Batoul GHORAICHI étant le bien immobilier sis 230 rue du Faubourg Saint Honoré à Paris 75008 et les requérants devant être remplis de leurs droits, il y a lieu d'ordonner la vente par adjudication de ce bien qui ne peut de toute évidence, être facilement partagé ou attribué.

Comme tenu de l'obstruction de Monsieur Mahmoud VAHABZADEH à remettre aux requérants la part de succession qui leur revient au titre de la succession en France de Madame Bibi Batoul GHORAICHI, cette vente permettra de concourir au bon déroulé des opérations de compte liquidation partage.

Enfin, Monsieur Mahmoud VAHABZADEH sera condamné à payer aux requérants la somme de 6.000 € sur fondement de l'article 700 du code de procédure Civil, ainsi qu'aux entiers dépens.

**PAR CES MOTIFS**

Vu les articles 1361 et suivants et 1377 du Code civil ;
Vu l'article 815 Code civil
Vu les articles 825 et suivants du Code civil ;
Vu les articles 840 et suivants du Code civil

Il est demandé au Tribunal de Grande Instance de :

**RECEVOIR** Monsieur Mohammad VAHABZADEH et Mesdemoiselles Sara et Sahar VAHABZADEH en leur demande et les déclarer bien fondés :

**CONSTATER** que Monsieur Mohammad VAHABZADEH et Mesdemoiselles Sara et Sahar VAHABZADEH ont accompli toutes les diligences en vue d'aboutir à un accord amiable de partage que cette volonté de résolution amiable n'a pu être réalisée en raison de l'attitude Monsieur Mahmoud VAHABZADEH ;

**CONSTATER** que la succession de Madame Bibi Batoul GHORAICHI en Iran, ne concerne pas Monsieur Mohammad VAHABZADEH et Mesdemoiselles Sara et Sahar VAHABZADEH

**CONSTATER** qu'un partage amiable n'a pas été possible

**EN CONSÉQUENCE,**

**DECLARER** ouvertes les opérations de compte liquidation partage de la succession de Madame Bibi Batoul GHORAICHI

**ORDONNER** le partage des biens provenant de la succession de Madame Bibi Batoul GHORAICHI;

**DESIGNER** tel notaire qu'il plaira au Tribunal pour procéder aux opérations de partage

**COMMETTRE** un juge afin de surveiller les opérations de partage;

**DIRE** que le notaire et juge désignés auront pour mission d'établir le partage complémentaire de la succession et agiront dans les conditions de article 1365 et suivant du Code de procédure civile ;

**ORDONNER** la licitation de l'appartement sis 230, rue du Faubourg Saint Honoré – 75008 Paris

**DIRE** que sur la simple vue du jugement à intervenir, il pourra être procédé à toutes les publicités légales pour sa mise en application, notamment les publicités relatives aux immeubles, dans les Conservations des Hypothèques compétentes ;

**PRONONCER** l'exécution provisoire du jugement à intervenir

**CONDAMNER** Monsieur Mahmoud VAHABZADEH à payer aux demandeurs la somme de 6.000 € sur le fondement de l'article 700 du code de procédure civile :

**CONDAMNER** Monsieur Mahmoud VAHABZADEH aux entiers dépens de l'instance ;

Sous toutes réserves

## ANNEXE DES ÉLÉMENTS NÉCESSAIRES À LA PUBLICITÉ FONCIÈRE

### IDENTITÉ DES PARTIES

### DEMANDEURS

1. **Mademoiselle Sara VAHABZADEH**, née le 9 octobre 1981 à Téhéran (IRAN), de nationalité iranienne, étudiante, demeurant Shahrak Ghods Vahabzadeh Iranzamin ave Iranian Building 11th FL à TEHERAN (IRAN)

2. **Mademoiselle Sahar VAHABZADEH**, née le 29 mai 1983 à Téhéran (IRAN), de nationalité iranienne, étudiante, demeurant 235 NW Anthony Street Apt 2 Pullman WA 99163 (ETATS UNIS)

3. **Monsieur Mohammad VAHABZADEH**, né le 9 juin 1990 à Téhéran (IRAN), de nationalité iranienne, étudiant, demeurant Shahrak Ghods Vahabzadeh Iranzamin ave Iranian Building 11th FL à TEHERAN (IRAN)

### DEFENDEURS

1. **Monsieur Mahmoud VAHABZADEH**, né le 29 avril 1954 à Mashad (IRAN), de nationalité américaine, Brand Manager, demeurant 159 Promenade Way Jupiter 2C 33458-3011, Floride, Etats-Unis

2. **Monsieur Mostafa VAHABZADEH** né le 31 janvier 1950 à Mashad (IRAN), de nationalité iranienne, sans profession, demeurant San Ramon CA 209 Norhill (ETATS UNIS)

### DÉSIGNATION DU BIEN IMMOBILIER

Immeuble sis à 230 rue du Faubourg Saint Honoré à Paris 75008 (lots 184, 239 et 312)

Cadastré :

| Section | N° | Lieudit | Surface |
|---------|-----|---------------------------------|------------------|
| BC | 36 | 230 rue du Faubourg Saint Honoré | 00ha 26 a 05 ca |

### EFFET RELATIF DE L'ACQUISITION DU BIEN IMMOBILIER

Attestation immobilière après décès en date du 22.10.2014 déposée le 19.11.2014 reçue par la SCP BUSSON Dominique Notaire à PARIS, sous la référence 2014 P 3859

02·S|7
15|5|2017

## PIÈCES JUSTIFICATIVES :

1. copie d'acte de décès en date du 05.04.2014

2. Acte de notoriété dévolution successorale en date du 17.07.2014

3. Testament olographe de la Défunte en date du 19.12.2012

4. Attestation immobilière en date du 24.11.2005

5. Procès-verbal de constat en date du 15.04.2014

6. Procès-verbal de constat en date du 25.04.2014

7. Lettre de Me WEISSBERG en date du 03.09.14

8. Courriel de Me RAVANAS en date du 15.10.14

9. Courrier du notaire en date du 25.07.2014 et réponse d'un avocat iranien

10. échange des Courriels en date du 07.10.2014

11. Courriel de Me RAVANAS en date du 14.10.2014 au notaire et réponses du notaire et de Me WEISSBERG le même jour

12. Courriel de Me RAVANAS en date du 15.10.2014

13. Courriel de Me RAVANAS en date du 06.03.2015

14. Courrier officiel de Me RAVANAS en date du 20.03.15

15. Courrier officiel de Me RAVANAS en date du 20.01.2016

16. Déclaration de succession de Madame Bibi Batoul GHORAICHI

17. Courrier de la SCP GROSSE DUMONT BUSSON, notaires associés, en date du 09.12.2015



**PARIS**
**BRAUN**

... the undersigned, sworn translator for French and English for the Court of Appeal, Paris, declares that this ... a translation of a document corps submitted to French herewith attached, medical or ... number ... ... issued in Paris from on the Palateau of Aires, in the year two thousand and seventeen.

Huissier de Justice associé
10, rue Jury Wan - 751 ... - PARIS

**SUMMONS**

to the "Tribunal de Grande Instance" [court of first instance] in PARIS

Date:      THE TWO THOUSAND AND SEVENTEEN *AND*
           THE 26 OF SEPTEMBER

The Claimants:

-Miss Sara VAHABZADEH, born 9 October 1981 in Tehran (IRAN), of Iranian nationality, student, residing at Shahrak Ghods, Iranzamin ave Iranian Building 11° FL, TEHRAN (IRAN)

-Miss Sakar VAHABZADEH, born 29 May 1983 in Tehran (IRAN), of Iranian nationality, student, residing at 235 NW Anthony Street Apt 2 Pullman WA 99163 (UNITED STATES)

-Mr Mohammad VAHABZADEH, born 9 June 1990 in Tehran (IRAN), of Iranian nationality, student, residing at Shahrak Ghods, Iranzamin ave Iranian Building 11° FL, TEHRAN (IRAN)

whose legal counsel is provided by:      Maître Mohsen Assadollahi
                                          Barrister called to the Paris bar
                                          7/9 rue Montevideo, 75116 Paris

electing domicile at his offices, said barrister having been appointed for this summons and its consequences,

Nous, David BUZY, José BRAUN, Huissiers de Justice Associés membres de la ... SCP David BUZY et José BRAUN s, titulaire d'un office d'Huissier de Justice à la résidence de Paris, y demeurant 10 rue Pergolèse 75116, l'en d'eux soussigné

I,

           Maître
           Court bailiff
           In residence:

**SERVE SUMMONS TO:**

1. Mr Mahmoud VAHABZADEH, born 29 April 1954 in Mashhad (IRAN), of US nationality, residing at 159 Promenade Way Jupiter 21, 33458-3013, Florida, United States,

2. Mr Mostafa VAHABZADEH, born 31 January 1950 in Mashhad (IRAN), of Iranian nationality, residing in San Ramon CA at 209 Norhill (UNITED STATES), having elected domicile c/o Maître Emmanuel Ravanas, barrister called to the Paris bar, at 77 boulevard Malesherbes, 75008 Paris,

**TO ATTEND THE HEARING** at the "Tribunal de Grande Instance" in Paris at 4 boulevard du Palais, 75004 Paris.

**VERY IMPORTANT**

You are informed that, pursuant to articles 56, 752 and 755 of the French Code of Civil Procedure:
You are required to appoint an attorney within a period of fifteen days, increased by two months if you live abroad. If you do not attend by means of an appointed intermediary, a ruling may be made against you based solely on the information provided by the claimant.

Andrew Piasecki, the undersigned, sworn translator for French and English for the Court of Appeal, h. declares that this is an accurate translation of a document copy connected to French, herewith attached, marked in its own number 0105/17 issued in Toulon (From the fifteenth of May), in the year two thousand and seventeen.

## The purpose of the claim:

## I – FACTS AND PROCEEDINGS

Mrs Bibi Batoul GHORAICHI, born 1 October 1924 in Mashhad, Iran, of French nationality, residing at 230 rue du Faubourg Saint Honoré, died on 5 April 2014, in Paris (8th arrondissement).

*Document no. 1*

As stated in the notarial deed drawn up by Maître BUSSON, notary in Paris, dated 17 July 2014 the deceased person left as her heirs:

- her two sons:
  - Mr Mostapha VAHABZADEH
  - Mr Mahmoud VAHABZADEH

- and her three grandchildren, descendants of Mr Reza VAHABZADEH, who died on 9 January 2009 in TEHRAN (IRAN):

  - Miss Sara VAHABZADEH
  - Miss Salar VAHABZADEH
  - Mr Mohammad VAHABZADEH

*Document no. 2*

An amicable settlement for the sharing of the estate has been made impossible by Mr Mahmoud VAHABZADEH.

By the terms of a holograph will dated 19 December 2012, filed in the records of Maître Véronique DRILHON JOURDAIN, notary in Paris, the deceased person wanted her assets in France to be inherited by her son Mahmoud VAHABZADEH.

*Document no. 3*

In accordance with this, the deceased person bequeathed to him her apartment located at 230 rue du Faubourg Saint Honoré, Paris (8th arrondissement), said apartment having been passed to her by her deceased husband.

*Document no. 4*

An inventory, without the presence of all parties, was drawn up in the Paris apartment of the deceased person on 15 April 2014, by SCP CALIPPE ET CORBEAUX, court bailiffs in Paris.

*Documents nos. 5 and 6*

Furthermore, immediately following the death of Mrs Bibi Batoul GHORAICHI, the legal counsel of Mr Mahmoud VAHABZADEH wrote to the caretaker at 230 rue du Faubourg Saint Honoré, Paris (8th arrondissement), requesting that no access be given to the apartment apart from the client, specifying that said client was the sole owner of the apartment.

*Document no. 7*

This document shows that Mr Mahmoud VAHABZADEH unilaterally created a title deed by producing a real estate certificate.

At no point did he request the issuance of his legacy, as is required by articles 1004 and 1005 of the French Civil Code.

Pursuant to the provisions of article 1004 of the French Civil Code:



Andrew Pasechi, the undersigned, sworn translator for French and English for the Court of Appeal... that the full and accurate translation of a document copy submitted in French herewith attached, marked the narrow number 1046...
Issued in Paris, posted on the fifteenth of May, in the year two thousand and seventeen.

*"When at the death of a testator there are heirs to whom a portion of his assets is reserved by legislation, those heirs are seized as a matter of law, by the death, of all the assets in the succession; and a universal legatee must demand from them the delivery of the assets included in the testament".*

Article 1005 of the French Civil Code further states that

*"Nevertheless, in the same cases, a universal legatee has the enjoyment of the property covered by the testament from the day of the death, if a demand for delivery was made within one year after that time; otherwise, that enjoyment commences only from the day of judicial demand, or from the day when delivery was voluntarily consented to".*

Mr Mahmoud VAHABZADEH rapidly took possession of the assets from the estate without any consideration of the rightful heirs.

It therefore appears necessary to bring it to his attention that he is required to abide by the regulations of the French Civil Code, and to respect the rights of his co-heirs.

Mr Mahmoud VAHABZADEH cannot continue to consider that all the assets located in France have been passed to him and belong to him.

For more than two years, Mr Mahmoud VAHABZADEH has obstructed the estate of Mrs Bibi Batoul GHORAICHI.

By means of their legal counsel, the claimants have attempted on many occasions to have the matter of the estate settled and to put forward proposals for its settlement, without success.

**Documents nos. 10 to 15**

On 9 October 2014, a meeting was organised by the notary responsible for the estate in order to establish the details of the estate of Mrs Bibi Batoul GHORAICHI in Iran and France.

**Document no. 8**

Although he was duly informed of this, Mr Mahmoud VAHABZADEH did not take part, nor was he represented.

On numerous occasions, the claimants made known to the notary responsible for the estate, as well as Mr Mahmoud VAHABZADEH, the various matters about which there was disagreement and proposed ways to make progress with the division.

Furthermore, the claimants were never given the opportunity to attend, or be represented, at the time when various inventories were made.

Quite simply, Mr Mahmoud VAHABZADEH acted in violation of the rights of the other beneficiaries.

These are the circumstances whereby the claimants petitioned the president of the court to give them authorisation to seal the apartment at 230 rue du Faubourg Saint Honoré, Paris 75008, in order to protect the items and movably property of value located there.

By court order dated 30 January 2015, permission was given to seal the apartment.

By emergency court order dated 20 March 2015, removal of the seals was ordered.



I the undersigned, sworn translator for French and English for the Court of Appeal, Paris, declare that this is an accurate translation of a document copy submitted in French, herewith attached, marked or numbered no. 025517
Issued in Texas (65) on the fifteenth of May in the year two thousand and seventeen

On 8 December 2015, SCP GROSSE DUMONT BUSSON, notary partners in Paris, filed the estate declaration for Mrs Bibi Batoul GHORAICHI.    *Documents nos. 16 and 17*

The divisible assets are as follows:

- a sum of 9,800 Euros,
- jewellery, objects of art and other items with an estimated value of 23,170 Euros,
- an account with BNP PARIBAS with a balance of 20,096.68 Euros,
- a savings account with a balance of 5,439.57 Euros,
- a financial instruments account with a balance of 2,898 Euros,
- real estate located at 230 rue du Faubourg Saint Honoré 75008 Paris valued at 750,000 Euros,

amounting to gross assets for this estate of 811,404.25 Euros, with liabilities evaluated at 2,424.38 Euros and gross dues of 59,093 Euros.

Since the death of their grandmother, more than two years ago, it has not been possible for the parties to agree about the settlement of this estate. Mr Mahmoud VAHABZADEH has simply taken possession of the entire estate.

Thus, the claimants were compelled to refer this matter to the president of this court for an emergency ruling giving them an advance of capital for their rights as co-owners, which resulted in an emergency court order dated 3 May 2016, which dismissed their claims in the absence of available funds.

In consideration of the above proceedings, and the attitude of Mr Mahmoud VAHABZADEH, the claimants have no alternative but to refer the matter to this court so that the following may be ordered:

- the commencement of operations required for the liquidation and division of the estate of Mrs Bibi Batoul GHORAICHI,
- the auction of the apartment located at 230 rue du Faubourg Saint Honoré, 75008 Paris.

## II – DISCUSSION

## A - THE COMMENCEMENT OF OPERATIONS REQUIRED FOR THE LIQUIDATION AND DIVISION OF THE ESTATE

Mrs Bibi Batoul GHORAICHI bequeathed to her son, Mahmoud VAHABZADEH, her apartment located at 230 rue du Faubourg Saint Honoré, 75008 Paris, which is the principal item of the overall estate.

Pursuant to the provisions of Article 913 of the French Civil Code, as well as the declaration for the estate dated 8 December 2015, the Claimants, in their capacity as co-heirs, must receive a quarter of the estate of Mrs Bibi Batoul GHORAICHI.

Mr Mahmoud VAHABZADEH claims that *"the division of the estate in France does not take into account assets located in Iran, which must be taken into account in the context of the French estate"*.

Mr Mahmoud VAHABZADEH will know that, in accordance with Iranian legislation, the estate relationship does not exist in Iran and the arrangements for estate representation are not the same

*Document no. 9*

Consequently, the Claimants, being the grandchildren of the deceased person, are not considered to be heirs in the context of the Iranian estate in Iran relating to Mrs Bibi Batoul GHORAICHI

Andrew Piasecki, the undersigned, sworn translator for French and English for the Court of Appeal Paris, declares that this is an accurate translation of a document copy, originating in French, herewith attached, marked no sometime number [?]. Issued in Toulouse (65) on the fifteenth of May, in the year two thousand and seventeen

The court should state that the estate in Iran of the deceased person does not concern the Claimants.

It cannot be disputed that the rights of the Claimants must be upheld.

Everything has been done, without success, to arrive at an amicable agreement for the division

*Documents nos. 10 to 15*

In consideration of the above, the Claimants are therefore justified in terms of their claims and it is appropriate to order the commencement of operations required for the liquidation and division of the estate of Mrs Bibi Batoul GHORAICHI.

## B – AUCTION OF THE APARTMENT AT 230 rue du Faubourg Saint Honoré, 75008 Paris

Pursuant to Article 1377 of the French Code of Civil Procedure.

*"A court orders, as it sees fit, a sale by auction of assets that cannot easily be shared or allocated.*

*The sale of immovable items shall take place in accordance with the regulations stipulated by Articles 1271 to 1281 and, in the case of movable items, as stipulated by Articles 110 to 112 and 116 of decree nre. 92-755 of 31 July 1992."*

In this particular case it is indisputable that:

> since at least 15 April 2014, Mr Mahmoud VAHABZADEH has taken over possession of the apartment located at 230 rue du Faubourg Saint Honoré, 75008 Paris;
> Mr Mahmoud VAHABZADEH has granted himself the property title of the said immovable asset;
> for more than two years, Mr Mahmoud VAHABZADEH has refused to make any payment to the Claimants in the context of the settlement of the said estate;
> the said immovable asset constitutes the main item of value in terms of the estate of Mrs Bibi Batoul GHORAICHI, since it was valued at 750,000 Euros in 2014, with a gross asset estate value of 811,404.25 Euros, the liabilities being valued at 7,474.38 Euros and the gross dues at 59,093 Euros;
> - the Iranian estate of Mrs Bibi Batoul GHORAIC III does not concern the Claimants.

Mr Mahmoud VAHABZADEH claims that there should be indemnification for assets located in France and Iran, but until this time has not made any payment by way of a reduction indemnification due to the claimants who are co-heirs.

The main value of the estate of Mrs Bibi Batoul GHORAICHI is the real estate located at 230 rue du Faubourg Saint Honoré, 75008 Paris and the rights of the Claimants must be upheld. Therefore, it is appropriate to order the sale by auction of this asset which, on all evidence, cannot easily be shared or allocated.

Taking into account Mr Mahmoud VAHABZADEH's refusal to forward to the claimants the share of the estate of Mrs Bibi Batoul GHORAICHI that is due to them, this sale will enable the operations for liquidation and division to take place.

Lastly, Mr Mahmoud VAHABZADEH is to be required to pay the claimants the sum of 6,000 Euros pursuant to Article 700 of the French Code of Civil Procedure, as well as all costs.

Andrew Plimmer, the undersigned, sworn translator for French and English to the Courts, do hereby attest, declare that this is an accurate translation of a document page submitted in French, herewith attached, marked or otherwise number (290-1).

Dated in Geneva Switzerland, the fifteenth of May, in the year two thousand and seventeen.

## ON THESE GROUNDS

Having regard to Articles 1361 et seq. and 1377 of the French Civil Code;
Having regard to Article 815 of the French Civil Code;
Having regard to Articles 825 et seq. of the French Civil Code;
Having regard to Articles 840 et seq. of the French Civil Code;

The "Tribunal de Grande Instance" is requested to:

**RULE AS ADMISSIBLE** the claim made by Mr Mohammad VAHABZADEH, Miss Sara VAHABZADEH and Miss Sahar VAHABZADEH, and declare that is justified;

**DECLARE** that Mr Mohammad VAHABZADEH, Miss Sara VAHABZADEH and Miss Sahar VAHABZADEH have undertaken all requirements to bring about an amicable agreement for division, and their desire for an amicable settlement has not been fulfilled as a result of the attitude of Mr Mahmoud VAHABZADEH;

**DECLARE** that the estate in Iran from Mrs Bibi Batoul GHORAICHI does not concern Mr Mohammad VAHABZADEH, Miss Sara VAHABZADEH and Miss Sahar VAHABZADEH;

**DECLARE** that an amicable division has not been possible;

## CONSEQUENTLY,

**DECLARE** that operations for the liquidation and division of the estate of Mrs Bibi Batoul GHORAICHI should commence;

**ORDER** the division of assets relating to the estate of Mrs Bibi Batoul GHORAICHI;

**APPOINT** such notary, as it should please the court, to carry out the division transactions;

**NOMINATE** a judge to monitor the division transactions;

**DECLARE** that the appointed notary and judge shall be in charge of the division of the estate and shall act in accordance with the terms of Article 1365 et seq. of the French Code of Civil Procedure;

**ORDER** the auction of the apartment located at 230 rue du Faubourg Saint Honoré, 75008 Paris;

**DECLARE** that with regard to ruling to be made, all legal announcements may be made in relation to the application thereof, in particular announcements relating to immovable property in the relevant mortgage registries;

**PRONOUNCE** the provisional enforcement of the ruling to be made.

**REQUIRE** Mr Mahmoud VAHABZADEH to pay the claimants the sum of 6,000 Euros pursuant to Article 700 Of the French Code of Civil Procedure;

Andrew Wilson, the undersigned, sworn translator for French and English for the Court of Appeal, Paris, declares that the is an accurate translation of a document copy submitted in French herewith attached, marked or our own number (2) to a issued in Tours (37) on the thirteenth of May in the year two thousand and seventeen.

REQUIRE Mr Mahmoud VAHABZADEH to pay all costs for the hearing.

Subject to all reservations

## APPENDIX WITH INFORMATION REQUIRED FOR PUBLICITY RELATING TO REAL ESTATE TRANSACTIONS

### IDENTITY OF THE PARTIES

### THE CLAIMANTS

1. Miss Sara VAHABZADEH, born 9 October 1981 in Tehran (IRAN), of Iranian nationality, student, residing at Shahrak Ghods Vahazbadeh Iranzamin ave Iranian Building 11th FL., TEHRAN (IRAN)

2. Miss Sahar VAHABZADEH, born 29 May 1983 in Tehran (IRAN), of Iranian nationality, student, residing at 235 NW Anthony Street Apt 2 Pullman WA 99163 (UNITED STATES)

3. Mr Mohammad VAHABZADEH, born 9 June 1990 in Tehran (IRAN), of Iranian nationality, student, residing at Shahrak Ghods Vahazbadeh Iranzamin ave Iranian Building 11th FL., TEHRAN (IRAN)

### THE DEFENDANTS

1. Mr Mahmoud VAHABZADEH, born 29 April 1954 in Mashad (IRAN), of US nationality, Brand Manager, residing at 159 Promenade Way Jupiter 21, 33458-3013, Florida, United States

2. Mr Mostafa VAHABZADEH, born 11 January 1950 in Mashhad (IRAN), of Iranian nationality, without profession, residing in San Ramon CA at 209 Norhill (UNITED STATES)

### DETAILS OF REAL ESTATE

Property located at 230 rue du Faubourg Saint Honoré, Paris 75008 (lots 184, 239 and 332)

Recorded on the cadastral plan as:

| Section | No. | Location | Area |
|---------|-----|----------|------|
| BC | 36 | 230 rue du Faubourg Saint Honoré | 2605m² |

### PRIVITY OF CONTRACT FOR THE PURCHASE OF REAL ESTATE

Real estate attestation after death dated 22.10.2014 filed on 19.11.2014 drawn up by SCP Dominique BUSSON, notary in PARIS, with reference 2014 P 3859



Andrew PLUACKE, the sworn and sworn translator for French and English for the Court of Appeal, has declared that I can accurate translation of a document copy submitted in French herewith attached, marked as serial number 039517, issued in Paris on the for the fifteenth of May in the year two thousand and nineteen

## DOCUMENTARY EVIDENCE:

1. Copy of death certificate dated 03.04.2014
2. Notarial deed for estate dated 17.07.2014
3. Holographic will of deceased person dated 19.12.2012
4. Real estate attestation dated 24.11.2005
5. Certified report dated 15.04.2014
6. Certified report dated 23.04.2014
7. Letter from Maître WEISSBERG dated 03.09.2014
8. Email from Maître RAVENAS dated 15.10.2014
9. Letter from notary dated 28.07.2014 and reply from Iranian attorney
10. Email exchanges dated 07.10.2014
11. Email from Maître RAVANAS dated 14.10.2014 to notary and replies from notary and Maître WEISSBERG on same date
12. Email from Maître RAVENAS dated 13.10.2014
13. Email from Maître RAVENAS dated 06.03.2015
14. Official letter from Maître RAVENAS dated 20.03.2015
15. Official letter from Maître RAVENAS dated 20.01.2016
16. Declaration for estate of Mrs Bibi Batoul GHORAICHI
17. Letter from SCP GROSSE DUMONT BUSSON, notary partners, dated 08.12.2011



EXHIBIT E

*A Mesdames et Messieurs les*
*Président et Juges composant la 2ème*
*Chambre 2ème Section du Tribunal de*
*Grande Instance de Paris*

**RG n°17/13211**
**Audience du 19 janvier 2018 à 13h00**
**Signifiées le 18 janvier 2018**

## CONCLUSIONS EN REPONSE

**POUR :**

**Monsieur Mostafa VAHABZADEH**, né le 31 janvier 1950 à Mashad (IRAN), de nationalité iranienne, sans profession, demeurant San Ramon CA 209 Norhill (ETATS UNIS)

*Défendeur*

Ayant pour avocat :
**SELURL ERAVANAS-AVOCAT**
**Représentée par Maître Emmanuel Ravanas**
Avocat au Barreau de Paris
77 boulevard Malesherbes - 75008 Paris
Tel : 01 85 09 82 70 - Fax : 01 85 09 82 78
Toque : **D 1318**

**CONTRE :**

**1) Mademoiselle Sara VAHABZADEH**, née le 9 octobre 1981 à Téhéran (IRAN), de nationalité iranienne, étudiante, demeurant Shahrak  Ghods Vahazbadeh Iranzamin ave Iranian Building 11th FL à TEHERAN (IRAN)

**2) Mademoiselle Sahar VAHABZADEH**, née le 29 mai 1983 à Téhéran (IRAN), de nationalité iranienne, étudiante, demeurant 235 NW Anthony Street Apt 2 Pullman WA 99163 (ETATS UNIS)

**3) Monsieur Mohammad VAHABZADEH**, né le 9 juin 1990 à Téhéran (IRAN), de nationalité iranienne, étudiant, demeurant Shahrak  Ghods Vahazbadeh  Iranzamin ave Iranian Building 11th FL à TEHERAN (IRAN)

*Demandeurs*

Ayant tous les trois pour avocat :
**Maître Mohsen ASSADOLLAHI**
Avocat au barreau de Paris
7/9 rue Montevideo – 75116 Paris

**Monsieur Mahmoud VAHABZADEH**, né le 29 avril 1954 à Mashad (IRAN), de nationalité américaine, Brand Manager, demeurant 159 Promenade Way Jupiter 21, 33458-3013, Floride, Etats-Unis

*Défendeur*

Ayant pour avocat :
**La SELARL WEISSBERG**
**Représentée par Maître Kenneth WEISSBERG**
Avocat au barreau de Paris
81 rue de l'Université – 75007 Paris
Toque : P046

PLAISE AU TRIBUNAL

## I. RAPPEL DES FAITS

**Madame Bibi Batoul GHORAICHI**, née le 1er octobre 1924 à Meched en Iran, de nationalité française, demeurant 230 rue du Faubourg Saint Honoré 75008 Paris, est décédée le 5 avril 2014 à Paris 8ème.

Ainsi que le constate l'acte de notoriété dressé par Maître BUSSON, notaire à Paris, en date du 17 juillet 2014 (**Pièce n°1**), Madame Bibi Batoul GHORAICHI laisse pour lui succéder :

- ses deux fils :

  o Monsieur Mostapha VAHABZADEH,
  o et Monsieur Mahmoud VAHABZADEH.

- et ses trois petits-enfants, descendants de Monsieur Reza VAHABZADEH, décédé le 9 janvier 2009 à TEHERAN (IRAN) :

  o Mademoiselle Sara VAHABZADEH,
  o Mademoiselle Sahar VAHABZADEH,
  o et Monsieur Mohammad VAHABZADEH.

Aux termes d'un testament olographe rédigé le 19 décembre 2012 déposé au rang des minutes de Me Véronique DRILHON JOURDAIN, notaire à Paris, Madame Bibi Batoul GHORAICHI a souhaité que ses biens en France reviennent à son fils Mahmoud VAHABZADEH (**Pièce n°2**).

A ce titre, Madame Bibi Batoul GHORAICHI a notamment légué son appartement situé au 230 rue du Faubourg Saint Honoré à Paris 8ème, appartement dont elle a elle-même hérité de son défunt mari (**Pièce n°3**).

Un inventaire a été dressé le 15 avril 2014 par la SCP CALIPPE ET CORBEAUX, huissiers de justice à Paris, dans l'appartement parisien de la défunte.

Outre le fait que celui-ci n'a pas été réalisé de manière contradictoire, il ne donne aucune valeur des biens inventoriés (**Pièce n°4**).

Par ailleurs, le conseil de Monsieur Mahmoud VAHABZADEH a, immédiatement après la mort de sa mère, écrit au concierge du 230 rue du Faubourg Saint Honoré à Paris 8ème, lui demandant de ne permettre l'accès de l'appartement à personne d'autre que son client et précisant que ce dernier serait le seul propriétaire de l'appartement (**Pièce n°5**).

Monsieur Mahmoud VAHABZADEH s'est en effet constitué, de manière unilatérale, un titre de propriété en faisant établir une attestation immobilière sans faire avertir les autres héritiers.

Il n'a à aucun moment, comme le requièrent pourtant les articles 1004 et 1005 du Code Civil, demandé la délivrance de son legs.

Son conseil, interrogé à ce sujet, n'a d'ailleurs jamais répondu (**Pièce n°10**).

Pourtant, l'article 1004 du Code Civil dispose que : « *Lorsqu'au décès du testateur il y a des héritiers auxquels une quotité de ses biens est réservée par la loi, ces héritiers sont saisis de plein droit, par sa mort, de tous les biens de la succession ; et le légataire universel est tenu de leur demander la délivrance des biens compris dans le testament.* »

L'article 1005 du Code Civil ajoute : « *Néanmoins, dans les mêmes cas, le légataire universel aura la jouissance des biens compris dans le testament, à compter du jour du décès, si la demande en délivrance a été faite dans l'année, depuis cette époque ; sinon, cette jouissance ne commencera que du jour de la demande formée en justice, ou du jour que la délivrance aurait été volontairement consentie.* »

**Monsieur Mahmoud VAHABZADEH s'est empressé de se mettre en possession des biens de la succession sans jamais évoquer la question centrale de la réserve des héritiers réservataires.**

Mais encore, il apparaît que Monsieur Mahmoud VAHABZADEH a prélevé une somme d'un montant de 50.000 dollars sur un compte bancaire en Suisse qui aurait appartenu à sa mère.

3    M. Mahmoud VAHABZADEH est tenu de respecter les règles fixées par le Code civil français, ainsi que les droits des co-héritiers.

Il se réfugie derrière les difficultés liées à la langue et à la différence de système juridique entre la France et l'Iran, avec des problématiques d'ordre public international, alors que ce dernier jouit de tous les biens de la succession, sans avoir jamais pris parti sur la réduction en nature ou en valeur ni avoir formulé de proposition relative au règlement de la succession.

Il ne peut de la même manière continuer de considérer que tous les biens situés en France lui reviennent et lui appartiennent (!), soutenant que M. Mostafa VAHABZADEH aurait reçu des biens en Iran du vivant de Madame Bibi Batoul GHORAICHI, ce qu'il ne justifie aucunement et ce que le concluant conteste.

A cet égard, il convient par ailleurs de préciser deux points importants du droit successoral iranien :

### 1/ En Iran le rapport successoral n'existe pas. (Pièce n°7)

Ainsi, interrogé sur cette question par le notaire en charge de la succession, le Docteur Rabia ESKINI, professeur de droit et avocat au Barreau de Téhéran, a répondu de la manière suivante :

*« 5/ Les biens donnés en Iran donnent-ils lieu à rapport à la succession de la défunte ?*

*En Iran, il n'existe pas de rapport successoral tel qu'il est pratiqué en France. Au cas où le défunt aurait légué de son vivant plus d'un tiers de son patrimoine, les héritiers auront le droit de demander l'annulation du testament devant la juridiction compétente. »*

Aussi, quand bien même M. Mostafa VAHABZADEH aurait reçu des biens de sa mère en Iran (ce qui est contesté), il n'y aurait pas lieu à rapport successoral.

Monsieur Mahmoud VAHABZADEH a été destinataire de cette note et est donc informé de son contenu.

**Il feint pourtant d'ignorer cet état du droit en Iran et bloque depuis plus de deux ans le règlement de la succession de Madame Bibi Batoul GHORAICHI.**

### 2/ En Iran le mécanisme de la représentation successorale n'existe pas. (Pièce n°7)

Ainsi, interrogé sur cette question par le notaire en charge de la succession, le Docteur Rabia ESKINI, professeur de droit et avocat au Barreau de Téhéran, a répondu de la manière suivante :

*1/ Les petits enfants (enfants du fils prédécédé) sont-ils héritiers dans la succession iranienne ?*

*La réponse est négative car pour qu'un héritier puisse avoir la qualité d'héritier, il doit être vivant au moment du décès.*

### - SUR LES DILIGENCES AMIABLES ACCOMPLIES POUR PARVENIR AU PARTAGE

M. Mostafa VAHABZADEH a, par l'intermédiaire de son conseil, qui était également conseil à l'époque de Melles Sara et Sahar VAHABZADEH et de M. Mohammad VAHABZADEH, tenté à maintes reprises de faire avancer le règlement de la succession et de formuler des propositions, en vain (**Pièces n°8 - 13**).

Ainsi, son conseil a écrit à plusieurs reprises au notaire en charge de la succession ou au conseil de Monsieur Mahmoud VAHABZADEH les 7, 14 et 15 octobre 2014, les 6 et 20 mars 2015 et le 20 janvier 2016 :

- 7 octobre 2014 : courriel au notaire en charge de la succession lui faisant part des différents points de divergence entre les parties et demandant la communication

de pièces de la part de Monsieur Mahmoud VAHABZADEH en perspective de la réunion du 9 octobre 2014 (**Pièce n°8**) ;

Une réunion a ainsi été organisée le 9 octobre 2014 pour que soit évoquée la consistance de la succession de Madame Bibi Batoul GHORAICHI en Iran et en France (**Pièce n°6**).

Si Monsieur Mostafa VAHABZADEH a fait le déplacement depuis les Etats-Unis, Monsieur Mahmoud VAHABZADEH n'a quant à lui pas daigné se déplacer, ni se faire représenter par son Conseil.

Pourtant, les différents points de désaccord portant, tant sur la consistance du mobilier garnissant le domicile parisien de la défunte que sur la consistance des biens mobiliers iraniens (lesquels intègrent le règlement de la succession en France) font obstacle au règlement de la succession de Madame Bibi Batoul GHORAICHI.

- <u>14 octobre 2014</u> : courriel au notaire en charge de la succession proposant la vente de l'appartement sis 230 rue du Faubourg Saint Honoré 75008 PARIS pour règlement notamment d'une provision à l'administration fiscale (**Pièce n°9**) ;

- <u>15 octobre 2014</u> : courriel au notaire en charge de la succession afin de rappeler les différents points de désaccord et proposant des issues pour faire avancer le partage (**Pièce n°10**) ;

- <u>6 mars 2015</u> : courriel au notaire en charge de la succession rappelant une nouvelle fois la situation et proposant des solutions (**Pièce n°11**) ;

- <u>20 mars 2015</u> : courrier officiel au conseil de Monsieur Mahmoud VAHABZADEH lui rappelant l'état du droit et demandant la production d'éléments démontrant ses allégations (**Pièce n°12**) ;

- <u>20 janvier 2016</u> courrier officiel au conseil de Monsieur Mahmoud VAHABZADEH lui rappelant la vocation à recueillir ensemble la moitié des biens composant la succession de leur mère et grand-mère en France et lui demandant les intentions de son client quant au partage par moitié de la succession (**Pièce n°13**) ;

6    S'agissant des inventaires, M. Mostafa VAHABZADEH n'a jamais été mis en mesure d'y participer :

- il n'y a pas eu d'envoi de procuration afin qu'il puisse être représenté,
- les dates ont été fixées sans concertation et de manière unilatérale,
- il n'a jamais été informé dans les temps des différentes mesures prises par Monsieur Mahmoud VAHABZADEH.

Il n'y a dès lors eu <u>aucun caractère contradictoire à ces inventaires</u>.

C'est dans ce contexte et afin d'assurer la sauvegarde des objets et meubles de valeur se trouvant dans les lieux, que M. Mostafa VAHABZADEH et Melles Sara et Sahar VAHABZADEH et Monsieur Mohammad VAHABZADEH ont sollicité de Monsieur le Président l'autorisation de faire apposer des scellés sur l'appartement du 230 rue du Faubourg Saint Honoré à Paris 75008, ce qu'ils ont obtenu par ordonnance du 30 janvier 2015.

Leur démarche, qui s'est soldée par la levée des scellés par ordonnance de référé du 20 mars 2015 était fondée et nécessaire pour la protection de leurs droits. **(Pièce n°16)**.

7    N'ayant pu trouver d'issue amiable, le conseil de M. Mostafa VAHABZADEH a de nouveau sollicité en date du 20 janvier 2016, la recherche d'une solution **(Pièce n°13)**.

Il a écrit en ces termes au conseil de M. Mahmoud VAHABZADEH :

« *La déclaration de succession de Madame Bibi Batoul GHORAICHI signée par tous les héritiers a été déposée par la SCP GROSSE DUMONT BUSSON, notaires associés à Paris, le 8 décembre 2015.*

*Au titre de cette déclaration de succession, l'actif brut successoral atteint un montant de 811.404,25 euros.*

*Mes clients ont vocation à recueillir ensemble la moitié des biens composant la succession de leur mère et grand-mère situés en France.*

*A ce jour, votre client jouit de l'appartement sis 230 rue du Faubourg Saint Honoré 75008 PARIS sans paiement d'une quelconque indemnité.*

***Je vous remercie de bien vouloir m'indiquer sous huitaine les intentions de votre client quant au partage par moitié de la succession de Madame Bibi Batoul GHORAICHI et notamment si la partage se fera en nature ou en valeur.***

*A défaut de réponse de votre part, mes clients m'ont demandé de poursuivre leur action sur le plan judiciaire. (…)»*

A cette lettre, le conseil de Monsieur Mahmoud VAHABZADEH a répondu par courrier en date du 25 janvier 2016 **(Pièce n°17)** :

« (…) *La déclaration de succession signée par l'ensemble des héritiers et déposée par la SCP GROSSE DUMONT BUSSON le 8 décembre 2015 indique un **actif net de succession de 808 979,97 euros**, masse partageable de laquelle il convient de déduire les **droits de succession dus par chaque héritier, à savoir 18 644 euros** pour Monsieur Mostafa*

*VAHABZADEH, et 5.011 euros pour chacun des petits-enfants de Madame Bibi Batoul GHORAICHI.*

*Les droits de vos clients dans la succession en France sont donc répartis comme suit :*

- *Mostapha VAHABZADEH = 183.601 euros,*
- *Sahar SAHELINIA = 62.404 euros,*
- *Sara VAHABZADEH = 62.404 euros,*
- *Mohammad VAHABZADEH = 62.404 euros.*

*Néanmoins, cette répartition ne tient pas compte des actifs situés en Iran lesquels doivent être pris en compte dans le cadre de la succession française.*

*Compte tenu de la dissimulation de ces actifs par vos clients, lesquels s'acharnent toujours à prétendre qu'il n'y a rien en Iran et qu'ils n'y ont rien reçu, mes clients sont contraints de procéder à des recherches, qui sont toujours en cours, pour déterminer précisément l'étendue du patrimoine mobilier et immobilier en Iran.*
*(…)*

*Si vos clients prétendent réclamer en France leur part sans tenir compte et rapporter ce qu'ils ont reçu en Iran, mon client agira en Iran pour y obtenir sa part et voir les donations consenties par sa mère à son frère et ses neveux réduites.*

*C'est pourquoi je vous invite à alerter vos clients sur les conséquences pour eux d'une procédure qu'ils engageraient en France au mépris des dernières volontés de la défunte Madame GHORAICHI (…) »* **(Pièce n°17).**

Compte tenu des termes du courrier du Conseil de Monsieur Mahmoud VAHABZADEH, il est constant :

- qu'il estime que les droits de M. Mostafa VAHABZADEH et Mesdames Sahar VAHABZADEH, Sara VAHABZADEH et M. Mohammad VAHABZADEH dans la succession de Madame Bibi Batoul GHORAICHI en France représentent la somme de **370.813 euros** après impôt (pour eux quatre) ;

- qu'il s'obstine à penser que ses co-héritiers ont reçu de la part de leur mère et grand-mère des biens en Iran - ce qui est inexact - dont il doit être tenu compte (et ce, alors que, comme indiqué supra, la règle du rapport n'existe pas en Iran et qu'au surplus les deux successions sont autonomes l'une de l'autre) ;

Monsieur Mahmoud VAHABZADEH indique être prêt à intenter une action en réduction en Iran à ce titre, ce à quoi M. Mostafa VAHABZADEH n'est pas opposé, dès lors, encore une fois, qu'il n'a rien reçu de sa mère et grand-mère en Iran.

S'agissant de l'affirmation selon laquelle le concluant et les demandeurs à la présente instance agiraient au mépris des dernières volontés de la défunte, il est souligné que

Madame Bibi Batoul GHORAICHI ne fait nullement allusion dans son testament à d'éventuelles donations à ces derniers d'actifs se trouvant en Iran.

**Force est donc de constater qu'aucun accord ne peut dans ces conditions intervenir entre les parties.**

- **SUR LE DESCRIPTIF SOMMAIRE DU PATRIMOINE A PARTAGER DANS LE CADRE DU PARTAGE**

8    La déclaration de succession de Madame Bibi Batoul GHORAICHI a été déposée par la SCP GROSSE DUMONT BUSSON, notaires associés à Paris, et reçu par les services fiscaux le 10 décembre 2015 (**Pièces n°14 et 15**).

Figurent notamment à l'actif de la succession :

- une somme d'argent de 9.800 euros,
- des bijoux, objets d'art et autres estimés à 23.170 euros,
- un compte chèque ouvert auprès de la BNP PARIBAS avec un solde de 20.096,68 euros,
- un livret développement durable avec un solde de 5.439,57 euros,
- un compte d'instruments financiers avec un solde de 2.898 euros,
- un bien immobilier sis 230 rue du Faubourg Saint Honoré 75008 PARIS évalué à 750.000 euros.

Soit un actif brut de succession de **811.404,25 euros**, le passif étant évalué à 2.424,38 euros et les droits à 59.093 euros bruts.

Par ailleurs, Monsieur Mahmoud VAHABZADEH est en mesure – et ne s'en prive pas- de bloquer le règlement de la succession aussi longtemps qu'il le souhaitera dès lors qu'il dispose du seul bien immobilier de la succession, lequel représente la principale valeur de la succession.

Dans ce contexte, les demandeurs à la présente instance et M. Mostafa VAHBZADEH ont formé devant le Président du Tribunal de Céans saisi en la forme des référés une action en demande d'avance en capital sur leurs droits d'indivisaires, laquelle s'est soldée par une ordonnance en la forme des référés du 3 mai 2016 qui a notamment rejeté leurs demandes en l'absence de fonds disponibles dans la succession. (**Pièce n°18**).

Il a également rejeté leur demande subsidiaire de vente du bien immobilier.

9    Par acte en date des 2 juin et 26 septembre 2017, Mme Sara VAHABZADEH, Mlle Sahar VAHABZADEH et M. Mohammad VAHABZADEH ont assigné M. Mahmoud VAHABZADEH et M. Mostafa VAHABZADEH aux fins de solliciter l'ouverture des opérations de compte liquidation partage de la succession et ordonner la licitation de l'appartement du 230, rue du Faubourg Saint-Honoré 75008 Paris.

C'est en l'état que se présente la procédure devant le tribunal de céans.

## II - DISCUSSION

## A – SUR LA DEMANDE D'OUVERTURE DES OPERATIONS DE COMPTE LIQUIDATION PARTAGE

Madame Bibi Batoul GHORAICHI étant décédée en France à son domicile du 230, rue du Faubourg Saint–Honoré 75008 Paris le 5 avril 2014, le règlement de sa succession en France doit être soumis au droit français.

Madame Bibi Batoul GHORAICHI a légué son appartement situé au 230 rue du Faubourg Saint Honoré à Paris 8ème, lequel représente la principale valeur de la masse successorale, à son fils, Monsieur Mahmoud VAHABZADEH.

Toutefois, **M. Mostafa VAHABZADEH en sa qualité d'héritier réservataire, a, en vertu de l'article 913 du Code Civil[1], vocation à recueillir le quart de la succession de Madame Bibi Batoul GHORAICHI, telle que déclarée à la déclaration de succession du 8 décembre 2015.**

Ainsi, **Monsieur Mostafa VAHABZADEH**, en sa qualité de fils de la défunte, est habile à se porter héritier de Madame Bibi Batoul GHORAICHI pour **1/4 en pleine propriété** des biens de la succession de la défunte situés en France et en Suisse.

Monsieur Mahmoud VAHABZADEH à qui la défunte a légué ses biens en France a pour sa part vocation à recueillir la quotité disponible en plus de sa réserve héréditaire d'un quart soit la moitié en pleine propriété des biens de la succession situés en France et en Suisse.

M. Mostafa VAHABZADEH doit être rempli de ses droits et Monsieur Mahmoud VAHABZADEH ne saurait continuer d'arguer qu'il est saisi de plein droit de tous les biens meubles et immeubles de la défunte situés en France, sans préciser qu'il est à l'instant du décès, **débiteur d'une indemnité de réduction à l'égard notamment du concluant**.

S'agissant de la succession iranienne de Madame Bibi Batoul GHORAICHI, comme indiqué supra, en Iran le rapport successoral n'existe pas, tout comme le mécanisme de la représentation successorale. (**Pièce n°7**)

Il résulte de la consultation établie par le Docteur Rabia ESKINI que :

- les petits-enfants de Madame Bibi Batoul GHORAICHI ne sont pas héritiers dans la succession iranienne ;
- le rapport successoral n'existe pas en Iran.

---

[1] Article 913 du Code Civil : « *Les libéralités, soit par actes entre vifs, soit par testament, ne pourront excéder la moitié des biens du disposant, s'il ne laisse à son décès qu'un enfant ; le tiers, s'il laisse deux enfants : le quart, s'il en laisse trois ou un plus grand nombre.* (…) »

**Il y a donc lieu, en tout état de cause, de faire abstraction de la succession iranienne dans la présente affaire qui devra être réglée en Iran selon la loi iranienne.**

Compte tenu de ce qui précède, Messieurs Mostapha VAHABZADEH s'associe à la demande d'ouverture des opérations de compte liquidation partage de la succession de Madame Bibi Batoul GHORAICHI formulée par Melles Sara et Sahar VAHABZADEH et M. Mohammad VAHABZADEH pour les biens de la défunte situés en France et en Suisse.

Cette demande devra s'accompagner du paiement de l'indemnité de réduction en valeur due à M. Mostafa VAHABZADEH.

## B – SUR LE PAIEMENT DE L'INDEMNITE DE REDUCTION DUE A MONSIEUR MOSTAFA VAHABZADEH

L'article 920 du Code civil dispose que *« les libéralités, directes ou indirectes, qui portent atteinte à la réserve d'un ou plusieurs héritiers, sont réductibles à la quotité disponible lors de l'ouverture de la succession.*

Suivant l'article 924 du Code civil dans sa rédaction issue de la loi n°2006-728 du 23 juin 2006, cette réduction doit se faire en valeur : *« lorsque la libéralité excède la quotité disponible, le gratifié, successible ou non successible, doit indemniser les héritiers réservataires à concurrence de la portion excessive de la libéralité, quel que soit cet excédent ».*

Il est incontestable que Monsieur Mahmoud VAHABZADEH, du fait de sa qualité de légataire universel, est devenu propriétaire de l'intégralité des biens en France et en Suisse dépendant de la succession de la défunte à charge pour lui de verser l'indemnité de réduction due aux héritiers réservataires et égale à la moitié de la valeur de la succession soit le quart de la succession pour Monsieur Mostapha VAHABZADEH.

Monsieur Mahmoud VAHABZADEH n'a fait aucune offre de paiement de cette indemnité de réduction aux héritiers réservataires arguant d'une fallacieuse compensation entre les actifs situés en France et en Iran.

Or comme indiqué supra, le principe posé par la loi du 23 juin 2006 est l'indemnisation en valeur de l'indemnité de réduction due aux héritiers réservataires.

L'article 924-2 du Code civil dispose par ailleurs que *« le montant de l'indemnité de réduction se calcule d'après la valeur des biens donnés ou légués à l'époque du partage ou de leur aliénation par le gratifié et en fonction de leur état au jour où la libéralité a pris effet ».*

En l'espèce, le bien immobilier sis 230 rue du Faubourg Saint Honoré à Paris 75008 qui constitue la principale valeur de la succession de Madame Bibi Batoul GHORAICHI, a été évalué à 750.000 euros dans la déclaration de succession du 5 avril 2014 (**Pièce n°14**).

Il est par ailleurs rappelé que l'actif brut de succession a été évalué à 811.404,25 euros, le passif étant évalué à 2.424,38 euros soit un actif net de succession de 808.979,87 euros.

Compte tenu de ce qui précède, au regard des biens situés en France et en Suisse :

- la réserve héréditaire s'établit en valeur décès à la somme de 606.735 euros (3/4 de l'actif net à partager entre les héritiers réservataires) ;

- la quotité disponible s'établit en valeur décès à la somme de 202.245 euros (dévolue à M. VAHABZADEH).

L'article 829 du Code civil dispose :

*« En vue de la répartition, les biens sont estimés à leur valeur à la date de la jouissance divise telle qu'elle est fixée par l'acte de partage, en tenant compte, s'il y a lieu, des charges les grevant.*

*Cette date est la plus proche possible du partage ».*

M. Mahmoud VAHABZADEH a donc vocation à recueillir sa réserve héréditaire et la quotité disponible soit la moitié de la succession équivalente à la somme à parfaire au jour du partage de 404.490 euros

M. Mostafa VAHABZADEH a pour sa part vocation à recueillir sa part de réserve héréditaire soit le quart de la succession équivalente à la somme à parfaire au jour du partage de 202.645 euros.

M. Mahmoud VAHABZADEH étant devenu, par l'effet de sa qualité de légataire universel, propriétaire des biens français et suisse de la succession de la défunte, il est redevable d'une indemnité de réduction d'un montant de 202.645 euros en valeur décès à parfaire au jour du partage due à M. Mostafa VAHABZADEH et correspondant aux droits de ce dernier.

Il est donc demandé au tribunal de condamner M. Mahmoud VAHABZADEH au paiement d'une somme à parfaire au jour du partage de 202.645 euros correspondant à l'indemnité de réduction due à M. Mostafa VAHABZADEH dans le cadre du règlement des opérations de compte liquidation partage de la succession de Mme Bibi Batoul GHORAICHI.

\*

Enfin, Monsieur Mahmoud VAHABZADEH étant à l'origine du blocage du règlement de la succession de Mme Bibi Batoul GHORAICHI depuis 2014 et n'ayant apporté aucune réponse tangible aux nombreuses propositions de règlement amiable qui lui ont été communiquées, il sera condamné à payer au concluant une somme de 10.000 euros au titre de son préjudice moral.

Il sera également condamné au paiement d'une somme de 5.000 € sur le fondement de l'article 700 du code de procédure civile ainsi qu'aux entiers dépens de l'instance.

L'ancienneté de ce dossier, Mme Bibi Batoul GHORAICHI étant décédée le 5 avril 2014, et le blocage abusif de son règlement par M. Mahmoud VAHABZADEH justifie que l'exécution provisoire soit ordonnée.

## PAR CES MOTIFS

*Vu les articles 1360 et suivants et 1377 du code de procédure civile,*
*Vu les articles 825 et suivants, 840 et suivants et 913, 920, 921, 922, 923, 924 et 924-2 du*
*Code Civil,*
*Vu les pièces versées aux débats,*

Il est demandé au Tribunal de Grande Instance de :

**RECEVOIR** Monsieur Mostafa VAHABZADEH en toutes ses demandes, fins et conclusions ; les **DECLARER** bien fondées ;

**CONSTATER** que Monsieur Mostafa VAHABZADEH a accompli toutes diligences en vue d'aboutir à un accord de partage amiable mais que cette volonté de résolution amiable n'a pu être réalisée en raison de l'attitude de Monsieur Mahmoud VAHABZADEH ;

**DÉCLARER** ouvertes les opérations de compte liquidation-partage de la succession de Madame Bibi Batoul GHORAICHI pour les biens situés en France et en Suisse;

**DIRE ET JUGER** que compte tenu des spécificités de la loi iranienne, la succession iranienne de Madame Bibi Batoul GHORAICHI visant ses biens en Iran sera réglée en Iran selon la loi iranienne ;

**DIRE et JUGER** qu'en sa qualité d'héritier réservataire Monsieur Mostafa VAHABZADEH à droit en valeur au quart de la succession de Madame Bibi Batoul GHORAICHI soit en valeur décès la somme de 202.645 euros, somme à parfaire au jour du partage ;

**CONDAMNER** Monsieur Mahmoud VAHABZADEH à payer à Monsieur Mostafa VAHABZADEH une indemnité de réduction d'un montant de 202.645 euros en valeur décès somme à parfaire au jour du partage;

**DESIGNER** tel notaire qu'il plaira au Tribunal à l'exception de tout notaire susceptible de se trouver en conflit d'intérêts avec les demandeurs ou les défendeurs aux fins d'évaluer l'indemnité de réduction en valeur partage due à M. Mostafa VAHABZADEH et établir l'acte matérialisant le paiement de l'indemnité de réduction et la quittance;

**COMMETTRE** tel juge qu'il plaira au Tribunal à l'effet de surveiller ces opérations ;

**DIRE** que le notaire pourra notamment s'adjoindre tout expert en vue de procéder à l'évaluation du bien immobilier du 230 rue du Faubourg Saint-Honoré 75008 Paris au jour du partage, les frais afférents à l'intervention de cet expert étant employés en frais privilégiés de partage ;

En tout état de cause,

**DIRE** que sur la simple vue du jugement à intervenir, il pourra être procédé à toutes les publicités légales pour sa mise en application, notamment les publicités relatives aux immeubles, dans les Services de Publicité Foncière compétents ;

**PRONONCER** l'exécution provisoire du jugement à intervenir ;

**DEBOUTER** Monsieur Mahmoud VAHABZADEH de toutes ses demandes, fins et conclusions ;

**CONDAMNER** Monsieur Mahmoud VAHABZADEH à payer à Monsieur Mostafa VAHABZADEH une somme de 10.000 euros en indemnisation de son préjudice moral ;

**CONDAMNER** Monsieur Mahmoud VAHABZADEH à payer à Monsieur Mostafa VAHABZADEH la somme de 5.000 € sur le fondement de l'article 700 du code de procédure civile ;

**CONDAMNER** Monsieur Mahmoud VAHABZADEH aux entiers dépens de l'instance ;

**SOUS TOUTES RESERVES**

15

## PIÈCES COMMUNIQUEES

**Pièce n°1** : Acte de notoriété

**Pièce n°2** : Testament

**Pièce n°3** : Attestation immobilière

**Pièce n°4** : Procès-verbal de constat

**Pièce n°5** : Lettre de Me WEISSBERG en date du 03.09.14

**Pièce n°6** : Courriel de Me RAVANAS en date du 15.10.14

**Pièce n°7** : Courrier du notaire en date du 28.07.2014 et réponse d'un avocat iranien

**Pièce n°8** : Courriel de Me RAVANAS en date du 07.10.2014 au notaire et réponse du notaire le même jour

**Pièce n°9** : Courriel de Me RAVANAS en date du 14.10.2014 au notaire et réponses du notaire et de Me WEISSBERG le même jour

**Pièce n°10** : Courriel de Me RAVANAS en date du 15.10.2014

**Pièce n°11** : Courriel de Me RAVANAS en date du 06.03.2015

**Pièce n°12** : Courrier officiel de Me RAVANAS en date du 20.03.15

**Pièce n°13** : Courrier officiel de Me RAVANAS en date du 20.01.2016

**Pièce n°14** : Déclaration de succession de Madame Bibi Batoul GHORAICHI

**Pièce n°15** : Courrier de la SCP GROSSE DUMONT BUSSON, notaires associés, en date du 08.12.2015

**Pièce n°16** : Ordonnance de référé du Président du TGI de Paris en date du 20.03.2015 (scellés)

**Pièce n°17** : Courrier officiel de Me WEISSBERG en date du 25.01.2016

**Pièce n°18** : Ordonnance en la forme des référés du Président du TGI de Paris en date du 03.05.2016

EXHIBIT

F

وجوهیکه طبق مقررات برای تنظیم این
سند دریافت شده بشرح زیر است

برگ معاملات یک برگی

۲۰۰ ریال

نوع سند سند صلح

جمع کل ......... ریال

دفتر اسناد رسمی شماره ۱۹۹    حوزه ثبت هرات



STATE OF CALIFORNIA

COUNTY OF LOS ANGELES    } SS

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Farsi to English of the file listed below

**Contract of Optional Settlement**

Tiffany Obembe
Project Manager
LA Translation, Inc

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 21st day of July, 2014, by Tiffany Obembe, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.



IN WOO PARK
COMM. # 2048966
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Nov. 13, 2017

In Woo Park

2975 Wilshire Blvd. #640, Los Angeles CA 90010 Tel: 866.327.1004  Fax: 213.385.7784  info@latranslation.com

Ghoraichi Office of Agriculture (Mashhad)

## Contract of Optional Settlement

Date of Reg.: April 08, 2004

*Settling Party*: Ms. Bibi Batoul Ghoraichi, daughter of Mirza Ahmad, ID Card No. 26428, residing in Unit 2, Bloc B, Sadi Bldg., Hormozan St., Shahrak-e-Ghods, Tehran

*Settled Party*: Mr. Mostafa Vahabzadeh, son of Davood, holder of ID Card No. 980, issued as Mashhad, current resident of the US

*Object of Settlement*: All the movable property and personal belongings in all aspects and any kinds that has been used in the residential apartment, located at Unit 2, Bloc B, Sa'di Bldg., Hormozan St., Shahrak-e-Ghods, Tehran where the mentioned apartment is transferred to the settled part under the optional settlement contract No. 141435, dated April 05, 2004, issued at Tehran Notary Public Office No. 199.

*Amount of Settlement*: The sum of One Thousand Rials in cash together with one ounce of sugar candy as the gift which is paid in cash to the settling party by the settled party and she admitted its receipt.

*Provisions:*

1. The object of settlement will be in his occupation and will remain valid until his death and all the benefits thereof will be for him. Obviously, the settled party has no rights to make any changes in type of usage of the object of settlement during the lifetime of the settling party.
2. The settling party may unanimously cancel and void this optional contract of settlement and return the same amount of settlement. In case of inaccessibility to the settled party for any reasons such as his stay outside the country, the case of cancellation should be informed in signature to Mr. Abolghasem Kosar, the trustee by both parties, and by conferring the object of settlement to be delivered to the settled party by his request. Non-presence or confirmation of the settled party cannot prevent the cancellation or nullification of the contract. Under any circumstances and upon cancellation of the contract as herein mentioned, the object of settlement will go under the canonical and legal ownership as it was before and the mentioned person will be entitled to receive and spend the relating amount by setting the official title deed or ordinary bill of sale and by transferring to any persons he deems best.

This contact is made in three uniformed written copies and all bear the same validity. The first copy is handed over to the settling party, the second copy is handed over to the settled party and the third copy will be handed over to the trustee accepted by both parties. Registered on this day of April 08, 2004.

Party of Settling: Bibi Batoul Ghoraichi

Party of Settled: Mostafa Vahabzadeh

Accepted Trustee: Abolghasem Kosar

Case 4:20-mc-80116-DMR  Document 1-2  Filed 07/13/20  Page 103 of 166

دفتر کشاورزی قرشی - اسلامی ۱۳۶۰/۱۲/۲۱

تلفن: {مشهد ۸۴۹۵۵۰
اسلام ۳۳۵۳

اما در عزیز و گرامی سرکار خانم جی جی بتول قرشی

با سلام و قدردانی از زحمت های همیشگی و کلیه با ارزشتهذینهای جنابی

استعداداریم اکنون که محبت فرمود و توجه به سرا و بیع سلامی خود اف را

نباید شود و منتقل کرده و ایراد جازه مزادی بیویای کلمای نقدی ما حیا تذ برای

کری هزینه زندگی به شده سفر مایید از اول مهر ماه سال مالگرد از روبرو و شیئاریه

مزید و واگذاری را تضیح کشت و منافع آنها ابرا شت خودو و جبران

کری هزینه زندگی خود را نمایم ضمضیا در قبال این بندرگرامی ستاهیکیه

ملک د و کری ما مطالبه نخواهم نمود با مرمونی پایبرزنتی

رضا کشاورزی قرشی

۲۱ ۱۲ ۸۱

آقای ابوالقاسم زنر ماه جب به افضارا اطله جهی شد

وکالتا به سهمی در دفرخانه شماره که خد

یک وا له درلزدنام اقدام فرمیه موافقت دارم

از مزبرازفا متسم تا از مزرلم

پر بردارا کناند

برادر و سرور گرامی جناب بای ابوالقا سم کوشر
با سلام
حضن ترجیح ممبو افضت مارد م سرکا خانم جی جی بتول قرشر
درطوا ست تقدیمی اسفندما ه ۸۰ خواهشتذ است
اتخاذ نبا لیند تا محوایرد و هزینه های جاهه شماره پنج سلامی
خواف کند سند انتقال آن در ا و هذرسال قبل نبا م
تنظیم شده داست ا سه از ا ول مهرماه سال ۸۱ عابس و
ستغدو کرد حا بجاری شماره ۵۴۷۵۲۸۶۲ بانک
ست ایرا با رلشمال تهران کد ۳۲۷ جهت دواریز
معرفی منمیل
درقا نمته حضن اتگر مجدرا ز برا حم ا درم سرکا خانم جی جی
که لاکنون لیبا یب و فا نواده ام را با کمک های متعذ دفتی
سمردها نیت قرا ر داده اند بریتو سیدلی عهد نما یم با ود واسثعا
شماره پنج سلامی در آ مینه هیچیک رات تعاضا و و توقع ملک پیکری
اتیان ندار شته باشم/
رضا کشاورزی قرشی
۸۱/۱/۷

P 46
PIÈCE Nº
15
SELARL WEISSBERG



STATE OF CALIFORNIA
⎫
⎬ SS
COUNTY OF LOS ANGELES
⎭

### CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Farsi to English of the file listed below

**Handwritten Letter – Titled In the Name of God  Ghoraichi Agricultural Bureau 12.3.2002**



Tiffany Obembe
Project Manager
LA Translation, Inc

LA TRANSLATION AND
INTERPRETATION
2975 WILSHIRE BLVD SUITE 640
LOS ANGELES, CA 90010

---

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 27th day of June, 2014,
by Tiffany Obembe, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

IN WOO PARK
COMM. # 2048965
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Nov. 15, 2017

In Woo Park



| | |
|---|---|
| **In the Name of God  Ghoraichi Agricultural Bureau**<br>12.3.2002<br>**Telephone: Mashad 8549550**<br>         **Salameh: 3353**<br>Hello to my dear and respected mother, Mrs. Bibi Batoul Ghoraichi. I hereby thank you for all your affections and help for me. It has been so kind of you to give me the ownership of the Salami well no. 5, now I kindly ask you to let me cultivate in the farm from the beginning of 23.9.2002. This means that I don't get financial assistances from you anymore and instead I personally spend the profits from my cultivation on my life. After this huge kindness of you towards me, I will never ask any other help from you.<br>With Regards,<br>Reza Vahabzadeh<br>(signed)<br>11.3.2005 | Mr. Abolghasem Kosar, with regard to the power of attorney that I gave to you in the Public notary no. 52 of Mashad, I allow that Reza start to cultivate in the farm under your direct control.<br>Bibi Batoul Ghoraichi (signed)<br>Dear Mr. Abol Ghasem Kosar,<br>Hello,<br>Regarding to my mothers' agreement, Mrs. Bibi Batoul Ghoraichi, with my request dated February 2002, I ask you to kindly take the required measures that all the profits of the Salami well no. 5 from 23 September 2002 be sent to my current account no. 56752862 Tejart Bank code 327, Amir Abad Shomali Branch. As you know the deed of the mentioned well was passed to me at the end of last year. Finally, I acknowledge my mother for all her efforts the person who has always helped me and my family. I hereby confirm that after getting this well I will not have any expectation from her anymore.<br>Reza Vahabzadeh<br>(signed)<br>29.10.2002 |

جمهوری اسلامی ایران

وزارت امور اقتصادی ودارایی

گواهینامه واریز مالیات برارث

اداره کل امور مالیاتی ....... اداره امور مالیاتی ....... واحد مالیاتی .......

نشانی و تلفن .......

شماره .......

تاریخ ....... ۸۹/ .......

شماره پرونده ....... ۸۹۰۲/ .......

نام ....... نام خـانـوادگـی ....... شماره شناسنامه ....... ملی ....... صادره از .......

نماینده وارث ....... بخش ....... نسبت خانوادگی .......

موصی له .......

شماره شناسنامه لملی ....... صادره از ....... بخش ....... که در تاریخ روز ....... ماه ....... سال ......

مالیات متعلق را کلا پرداخت نموده است

مشمول مالیات نبوده است

ماده ۳۴ قانون مالیاتهای مستقیم مصوب ۶۶/۱۲/۳ واصلاحیه های بعدی آن گواهی مینماید که هرگونه ثبت

ونقل وانتقال اموال منقول وغیرمنقول وحقوق مالی زیر از نظر مالیات برارث بلامانع است.

| ردیف | شرح ماترک |
|---|---|
| ۱ | ... |
| ۲ | ... |
| ۳ | ۸۵۵ سهم گیراز ریال آرام شرکت سرمایه گذاری صنعت نفت (سهام عام) بانضمام سود متعلقه به مبلغ ....... ۱۲۰۵۴ ریال |
| ۴ | موجودی ....... ۷۸۰۰۰ به مبلغ ۸۷۳۱۵۱ ریال نزد بانک ....... مجید عباس پورفرد |
| ۵ | ....... ۸۸۰۹۸ ....... ۷۵۱۵۴۱ |
| ۶ | ....... ۱۲۱۴۲۸۰۷۹ ....... |
| ۷ | ....... ۸۸ ....... |

این گواهی بنا به در خواست ....... مورخ ....... صادر

وتحویل ایشان شده است

کارشناس ارشد مالیاتی

رئیس گروه مالیاتی

نام ونام خانوادگی

مهر وامضاء



In the Name of God
Islamic Republic of Iran
Ministry of Economic Affairs and Finance
Certificate of Settlement of Inheritance Tax
State Organization of Tax Affairs

## Payment Certificate of Tax on Inheritance

(First Page)

Subject of Article 35 of direct taxes rule approved on 22/02/1988 and following amendments

No.: 1174

Date: 08/04/2009

| General Department of Tax Affairs of Tehran-West | Tax Affairs Dept.: 256/18 |
|---|---|
| Tax Unit: 256/18331 | File No.: 1182 |

**Taxpayer**

Name: ZAHRA SOLTANI TEHRANI, ID Card No.: 2554, issued in Abadan

Representative for affairs of the deceased with following particulars:

Mr. REZA VAHABZADEH, holder of ID Card No.: 115 issued in Mashhad, passed away on 02/02/2009

**Description of Properties**

1-Six portions of a residential apartment located in east side of ninth floor with total area of 178.52 square meters, separated plot no. 26 under registration plate no. 74/3334 located in district 11 of Tehran in addition to six portions of two parking lots with each one area of 12 square meters in separated plot no. 11 and 12 in underground and six portions of a store with area of 4.45 square meters in separated plot no. 30 located in ninth floor equipped by water, gas systems and joint share of building area and other common parts based on apartment ownership act and related executive bylaws without any key-money right with ownership right of telephone line under no. 88070370 and

2- Ownership of an automobile, Peykan deluxe system made in 1986 under engine no. 126506766 and chassis no. 19476/72 and disciplinary no. 17M237 22

3-Amount of 825 shares per share 1000 rials from Oil Industry Investment Company (public joint stock) with affiliated interest which is 125400 rials

4-Account balance under no. 8000748 with price of 15670 rials with Bank Melli Iran, West Abbas Abad branch

5- Account balance under no. 276143476 with price of 15670 rials and account balance no. 276298763 with price of 751561 rials and account balance no. 56752862 with price of 130469790 rials with bank Tejarat, North Kargar Branch

6- Account balance under no. 819858/6 with price of 59840 rials with Bank Melat, Eghtesad Branch

7- Account balance under no. 275296356 under price of 500000 rials with Bank Keshavarzi, Khaaf Branch

I the undersigned, .........., confirm that this notice was notified to the payer at business place

Signed & sealed by Tax superior expert

Signed & sealed by Head of tax group

In the Name of God
Islamic Republic of Iran
Ministry of Economic Affairs and Finance
Certificate of Settlement of Inheritance Tax
State Organization of Tax Affairs

## Payment Certificate of Tax on Inheritance

(Second Page)

Subject of Article 35 of direct taxes rule approved on 22/02/1988 and following amendments

No.: 1041

Date: 08/04/2009

| General Department of Tax Affairs of Tehran-West | Tax Affairs Dept.: 256/18 |
|---|---|
| Tax Unit: 256/1833 | File No.: 1182 |

**Taxpayer**

Name: ZAHRA SOLTANI TEHRANI, ID Card No.: 2554, issued in Abadan

**Representative for affairs of the deceased with following particulars:**

Mr. REZA VAHABZADEH, holder of ID Card No.: 115 issued in Mashhad, passed away on 02/02/2009

**Description of Properties**

8- Account balance under no. 342076021 under price of 240040460 rials with Bank Mellat, Khaaf Branch

9-Six portions of a plot of farming land under area of 2420000 square meters with a well plot no.5 registered plate no. 1/756 located in district.6 of Torbat Heydarich in Khaaf city which has no building ad without key-money right

I the undersigned, ..........., confirm that this notice was notified to the payer at business place

Signed & sealed by Tax superior expert

Signed & sealed by Head of tax group

برگ معاملات یک برگی

سازمان ثبت اسناد و املاک کشور

وجوهیکه طبق مقررات برای تنظیم این
سند دریافت شده بشرح زیر است

درآمد حق الثبت ............ ریال
حق التحریر ............ ریال
بهای اوراق و قبوض اقساطی ........ ریال
............ ریال
............ ریال
جمع کل ............ ریال

۲۰۰ ریال

نوع سند قطعی غیر منقول

محل امضای دفتریار و مهر دفتر خانه

محل امضای دفتریار و مهر دفتر خانه    دفتر اسناد رسمی شماره    حوزه ثبتی

[متن دست‌نویس فارسی که به‌صورت کامل و دقیق قابل خواندن نیست]

تذکر : تبصره ۲ ماده ۳۴ قانون اصلاح قانون ثبت ـ در کلیه اسناد وسی پایین الانکاه متعاملی بطور وضوح در سند قید شود.

وجوهیکه طبق مقررات برای تنظیم این
سند دریافت شده بشرح زیر است
حق الثبت ————— ریال
حق تحریر ————— ریال
بهای اوراق و لیوس اسنادی ————— ریال
————— ریال
————— ریال
جمع کل ————— ریال

سازمان ثبت اسناد و املاک کشور
برگ معاملات یک بوگی

نوع سند وکالتنامه

۲۰۰ ریال

دفتر اسناد رسمی شماره ۱۴ حوزه ثبتی تهران

محل امضای دفتریار و مهر دفترخانه

[چند سطر دست‌نویس فارسی]

[چند سطر دست‌نویس فارسی]

[چند سطر دست‌نویس فارسی]

تذکر : تبصره ۳ ماده ۳۲ قانون اصلاح قانون ثبت ...

THE JUDICIARY
STATE ORGANIZATION FOR REGISTRATION OF DEEDS AND PROPERTIES
One-Page Transaction Sheet
Type of Deed: **Power of Attorney**
Notary Public No. 145of Tehran
Serial No.: 86/H 0872947

This deed has been registered on page 46 of entry book 356-even under No.: 142334 on 28/01/2009

**Principal:**
Ms. Bibi Batoul Ghorshi, daughter of Mirzamohammad, ID Card No.26428, issued in Mashhad, born in 1924, National No.: 0930263911 and Postal Code: 1466764141 residing in Tehran

**Attorney:**
1-Ms. Sahar Vahabzadeh, daughter of Reza, ID Card No.1835, issued in Tehran, born in 1983, National No.: 0067395341
2- Ms. Sara Vahabzadeh, daughter of Reza, ID Card No.4775, issued in Tehran, born in 1981, National No.: 0067222821
3- Mr. Mohammad Vahabzadeh, son of Reza, ID Card No.0012041423, issued in Tehran, born on 09/06/1990, National No.: 0067222821

All of them are son/daughter of the deceased **Mr. Reza Vahabzadeh**, residing in Shahrak Gharb, Tehran, Post Code: 1465893455 (they act in deals an transfers jointly and equally but solely in administrative affairs)

**Object of Power of Attorney**
Observing all legal aspects and presenting related, required documents in order to refer to all organizations including but not limited to registration department, department of property, municipality, social security, courts, institutes and other organization, and also refer to ministry of economic affairs and property, to perform administrative affairs and for judicial affairs in relation to obtain probate and paying tax on inheritance of the deceased **Mr. Reza Vahabzadeh** (the principal's son) including movable and immovable and paying legal expenses and obtaining any legal allowance in organizations of registration, deeds & properties registration, municipality, water, gas, electricity and sewage departments and other affairs in order to settle legal, judicial, constructional and registration debits considering heirs' proportions as for:

1- Six portions of registered real estate under separated subplot no. 33340 out of main plot no. 74 located in dist.11 of Tehran under reg. no. 308997 in page 296 in book 122612
2- Six portions of registered real estate under separated subplot no. 756 out of main plot no. 1 located in dist.6 of Torbat Heydarieh under reg. no. 49197 in page 215 in book 69

Considering area and standing property and all attachments of mentioned real estate that attorney are aware of them objectively after obtaining required licenses and inquires and clearances regarding settling affiliated costs and legal expenses, handling any obligation and commitment for mentioned real estate, entering into contract with construction engineer,

obtaining and receiving construction license, non-violation certificate and work completion certificate and their revision and in case of necessary, regarding type of obligation, obtaining, receiving and registering concerning subscription branches of water, electricity and telephone and in case of necessary, separation, obtaining and receiving formed verbal process, presenting any claim and responding to any claim against mentioned real estates and to enter into contract with the judicial attorneys and legal advisors, and in case of removal of any legal obstacle, having right to any deal including final sale, transfer, mortgage, compromising, division letter and other contracts , jointly regarding all attachment, whole the standing property and mentioned subscription systems and regarding stipulations as to issue title deed and waving options even option of fraud for any amount and to receive amounts and slips and for any commitments and guaranty for any corruption and in case of necessary, performing ant required ceremonies and procedures, and finally obtaining any title deed including original or duplicate deed and reforming all related papers, deeds and documents.

2-To refer to related banks and receiving share of inheritance from account no. 276298763 from Bank Tejarat, North Kargar, account no. 3420760/21 from Bank Mellat, Khaaf branch, account no. 275296356 from Bank Keshavarzi, Khaaf branch, interest-free account no. 276298763 from Bank Tejarat, North Kargar, interest-free account no.81985/165 from Bank Mellat, Daneshkadeh-Eghtesad branch, short-term investment deposit account no.8000748 from Bank Melli, west Abbasabad branch, and stock payment from share no. 293211 from Oil Industry Investment Company under any title and name and for any amount and level of mentioned accounts and to receive/give receipts and signing papers and books and presenting documents and obligating and pursuing all legal, bank, administrative affairs and also pursuing afore-mentioned procedures and blocking account and receiving original of related profit and wages.

3-To perform all administrative affairs in relation to six portions of a sedan car of Peykan model made in 1986, white-colored, under disciplinary no. 17M237/Iran22 in any aspect/respect and signing related papers and deeds and obtaining non-violation certificate and technical examination of the car and annual duties of car and to obligate necessary commitments in a way that there will be no need to presence of the principal and performing all mentioned affairs until final result in any matter , so that there is no secondary permit from the principal with right of substitution.

**Scope of Powers:**

The attorney is fully authorized to perform the object of power of attorney in all procedures in a way that any action and signature by attorneys shall be regarded as action and signature by the principal and content of this deed is effective merely for object of power of attorney.

**Date: 31/01/2009**

Signed by Parties-Signed and Sealed by Notary Public Office No.: 145 of Tehran

بسمه تعالی

شماره:

ریاست محترم شورای حل اختلاف شعبه ۷ خواف-شهر سلامی

با سلام و دعای خیر

احتراما عطف به کارشناسی ابلاغی کلاسه پرونده۱۰۱/۹۶/ ح۷مورخ۹۶/۱/۲۷ درخصوص دعوی آقای محمود وهاب زاده فرزند رضا ساکن تهران .-خیابان دولت-خیابان دیباچی جنوبی شغل ازادو کشاورز بعنوان خواهان علیه خواهان محمد وسارا وسحر وهاب زاده فرزند رضا ساکن تهران -شغل ازاد - مبنی بر مطالبه وجه بر اورد قیمت یک حلقه چاه عمیق واراضی متعلق به ان موسوم به چاه شماره پنج قریشی واقع درحاشیه جنوبی ازاد راه خواف به سلامی وتربت حیدریه و حسب دستور آن مقام محترم قضایی اینجانب به عنوان کارشناس وارزیاب منتخب پس از مطالعه پرونده و بازدید ومعاینه محل وبررسی های میدانی ومحلی گزارش خود را به شرح ذیل به حضور ایفاد می دارم:

الف)شرح دعوی:خواهان مدعی است که مالک نیم دانگ از شش دانگ یک حلقه چاه عمیق واب واراضی متعلق به ان واقع در حدود ۴کیلومتری متری جاشیه شرقی شهر سلامی موسوم به چاه شماره پنج قریشی به مساحت{ کل زمین حدود ۲۴۰هکتار} از محل ارث مادرشان بی بی بتول قریشی میباشدلذا جهت براورد قیمت تقاضای ارجاع امر به کارشناس را نموده است. بر همین اساس درمعیت طرفین ووکیل قانونی ایشان ومعتمدین محلی بازدیدوگزارش انجام گردید.

ب)موقعیت محل و مشاهدات:

زمین مورد نظر عبارت است از نیم دانگ از شش دانگ یک حلقه چاه عمیق و اراضی متعلق به ان واقع در ۴ کیلو متری شرق شهر سلامی و حاشیه ازاد راه خواف- سلامی -تربت حیدریه از پلاک ۷۵۶ فرعی از یک اصلی از بخش ۶تربت حیدریه -خواف موسوم به سلامی که اراضی از حق السهم ایشان از محل ۲ساعت حق ابه چاه مزبور از یک شبانه روز ابیاری میگردد. که باتوجه به عرف رایج در منطقه وهمین چاه وبر اساس مدار ابیاری ۱۰شبانه روز وسهم بی بی بتول قریشی {یک دانگ} معادل ۴۰ساعت از ۲۴۰ساعت از مدار ۱۰شبانه روز بوده که حق السهم اب ایشان از نیم دانگ سهم ارث مادرشان ۲۰ساعت اب و زمین{از مدار ۱۰شبانه روز}متعلقه میباشد.که کشت رایج والگوی کشت اراضی مزبور کشت گندم وجو وباغ و نهال پسته وزعفران و جالیز میباشد. همچنین چاه عمیق مزبور دارای دبی حدود ۳۰لیتر بر ثانیه {پنج اینچ}میباشد.و دارای حق



السهم  قانونی از اب تنگل سده به میزان مندرج در سند میباشد.چاه مزبور برقی بود اراضی بسیار مناسب ونسبتا حاصلخیز میباشد  در اراضی همین چاه ابنیه وساختمانهای دامی وپروانه گاوداری شیری {گاوداری در حال احداث وفاقد دام موجود} -انبار علوفه -هانگارد -گاراژ وساختمانهای مسکونی وکارگری به مساحت کل حدود پانصد متر مربع از مصالح اجر واهن وسیمان و... مشاهده گردید. چاه دارای یک استخر  ذخیره اب و سیستم ابیاری تحت فشار  قطره ای وبارانی در قسمتی از اراضی {مساحت حدود۵۵هکتار}میباشد که هم اکنون در در حال انجام میباشد {از محل اعتبارات سال۹۵ جهاد کشاورزی  ومتقاضی }همچنین هم اکنون اسناد ومدارک موجود حکایت ازانتقال چاه واراضی توسط خواندگان فوق به نام خانم زهرا سلطانی تهرانی دارد.که توسط ایشان کشت وکار ومدیریت میگردد.

## ج)نتیجه :

باتوجه به بازدید میدانی انجام شده وبررسی اسنادو همچنین نوع زمین وبافت خاک -حاصلخیزی خاک-دبی چاه- مساحت اراضی  -سطح کشت و چند هکتار نهال و باغ موجود پسته ٤ ساله – میزان حدثنات وابنیه های موجود  -مساحت زمین و موقعیت استقرار ان- سیستم ابیاری تحت فشار ولوله گذاریهای مزارع و غیره  وارزش اب استحصالی  و لحاظ  نمودن عرف رایج در محل ورعایت فهرست بها  سال ۹٦ و جمیع جهات کارشناسی  به نظر بنده ودرحال حاضر  ارزش کل چاه مزبور مبلغ پنج میلیارد  تومان معادل ۵۰میلیارد ریال وجه رایج جمهوری اسلامی ایران براورد میگردذ که با توجه به حق السهم  هر دانگ حدود   {۸۳٤میلیون تومان } و ارزش نیم دانگ متعلق به ایشان مبلغ ٤۱۷ میلیون تومان معادل ٤۱۷۰ میلیون ریال  وجه رایج جمهوری اسلامی ایران  براورد میگردد. مراتب جهت بهره برداری و هر گونه دستور لازم  به حضور ایفاد میگردد.

با احترام :

جمشید عطاریان-

کارشناس منتخب پرونده



نورالدین یوسفی، مترجم زبان انگلیسی، شماره پروانه ۷۴۲، شهر تهران، دفتر ترجمه رسمی ۱۹۹

نشانی: اضلاع شمال شرقی پل سید خندان، بین بیمارستان رسالت و خیابان شریعتی، پلاک ۱۲۸۵، طبقه اول

تلفن تماس، ایمیل مترجم: ۲۲ ۸۸ ۰۹ ۰۱ - ۲    nyousefi@yahoo.com

Nouroddin Yousofi, English Language Translator, License No.:742,
City: Tehran. Translathon Office No.: 199.
Add.: 3 Fl.,No.1285, Next to Ressalat Hospital, Northeast Side of
Seyed Khandan Bridge.
Translator's Tel. Fax.& Email: nyousefi@yahoo.com  22 88 09 01 - 2



ردیف دفتر ثبت

Official Translation

Date: 27/04/2017

Number: 6/A/96

To:

## Head of the dispute resolution council branch 7 of the city of Khwaf

### -city of Salami

Pursuant to communicated expert opinion of file 7H/101/96 dated 16/04/2017 regarding the lawsuit of Mr. Mahmod Wahabzadeh son of Reza at address: Dibaji Jonobi St., Dolat St., Tehran, self-employed and farmer (plaintiff) against Mohammad and Sara and Sahar Wahabzadeh children of Reza at address: Tehran, self-employed; for money demand and price estimation of one deep well and land belonging to it called well no.5 Ghoreishi located at the south margin of Khwaf freeway to Salami and Torbat Heydarieh and based on your judicial authority order, I, as selected expert and appraiser, after visiting the site and field and local reviews, report as follows:

(A) Claim description: Plaintiff claims the ownership of half a part or the whole 6 parts of a deep well and water and land belonging to it called well no.5 Ghoreishi located at 4 kilometers of the east margin of the city of Salami with an area of {the whole land area is approximately 420 hectares} inherited from mother Bibi Batol Ghoreishi, and therefore to estimate the price had asked for an expert opinion. Therefore, in the company of the parties and their attorney at law and local trusted persons we visited and place and prepared a report.

(B) Site location and observations:

The land is half a part or the whole 6 parts of a deep well and land belonging to it located at 4 kilometers of the east of the city of Salami at the margin of Khwaf freeway to Salami and Torbat Heydarieh, from plate no. 756 divided from main plate 1 at district 6 of Torbat Heydarieh- Khwaf which is called Salami and the lands, based on his share are irrigated 2 hours in every 24 hours from that well. According to the common customs in the region and this well and based on 10 nights and days irrigation cycle and the share of Bibi Batol Ghoreishi (1 part) equivalent to 40 hours of 240 hours of the 10 nights and days irrigation cycle and his water share from the



Nouroddin Yousofi, English Language Translator. License No.:742,
City: Tehran, Translathon Office No.: 199.
Add.: 2 Fl., No.1285, Next to Ressalat Hospital, Northeast Side of
Seyed Khandan Bridge.
Translator's Tel. Fax & Email: nyousofi@yahoo.com. 27 28 09 01 - 2

half a part inheritance of his mother was 20 hour water and land (from the 10 nights and days cycle).

Customary cultivation pattern of those lands is wheat, barley, orchard and seedlings of pistachio and saffron and patches. The deep well has a debit of 30 l/s (five inches) and has the legal share from the water of Tanglsadeh to the amount indicated in the title deed.

The well is electric with very good and almost fertile land. In the lands of same well, we observed buildings, and buildings for livestock and dairy-cow animal husbandry permits (cow animal husbandry is under construction without livestock), feed silo - hangard, garaz, and residential and workers buildings with the total area of about 500 square meters made of brick, iron and cement, etc. materials.

The well has a water reservoir and pressurized drip and rain irrigation system in some parts of the lands (an area of about 55 hectares) under construction (financed by credit from Agricultural Jihad of the year 2016 and the applicant). Also, at the time being, the available documents showed the transfer of well and land by above defendants to Ms. Zahra Soltani Tehrani that are managed and cultivated by her.

(C) Conclusion:

With regard to field visits and reviews of documents and also the land type and soil texture, soil fertility, well debit, land area, cultivated surface area, and a few hectares of seedlings and available 4-year-old pistachio orchard, the existing buildings, land area and its location, pressurized irrigation system and farm pipeline, etc. and the value of obtained water, and inclusion of common norms at the location and observing price list of the year 2017 and all expert opinion aspects, I set the current price of the well at IRR 50 billion (5 billion tomans) and with regard to the shares each part is 834 million tomans and the value of half part that belongs to him is 417 million tomans equal to IRR 4170 million. The information was submitted to you for exploitation and issuing any necessary orders.

Signed & sealed by Jamshid Atarian, Selected expert of the case

Signed & sealed by general legal affairs court manager of branch 1 of Khwaf certifying the copy as identical with original document.

· True translation certified.          VA-03-05-2017



**E X H I B I T**  **G**

**TRIBUNAL DE GRANDE INSTANCE DE PARIS**



2ème chambre civile

N° RG : 17/13211 -
N° Portalis 352J-W-
B7B-CLLVD

N° MINUTE : 3

Assignation du :
02 Juin 2017

Extrait des Minutes du Greffe
du Tribunal de Grande Instance
de PARIS

**JUGEMENT
rendu le 29 janvier 2019**

**DEMANDEURS**

**Madame Sara VAHABZADEH**
Shahrak Ghods
Iranzamin ave Iranian Building 11th FL
TEHERAN (IRAN)
*représentée par Maître Mohsen ASSADOLLAHI, avocat au barreau de PARIS, vestiaire #D1745*

**Madame Sahar VAHABZADEH**
235 NW Anthony Street Apt 2 Pullman
WA 99163 (ETATS UNIS)
*représentée par Maître Mohsen ASSADOLLAHI, avocat au barreau de PARIS, vestiaire #D1745*

**Monsieur Mohammad VAHABZADEH**
Shahrak Ghods
Iranzamin ave Iranian Building 11th FL
TEHERAN (IRAN)
*représenté par Maître Mohsen ASSADOLLAHI, avocat au barreau de PARIS, vestiaire #D1745*

**DÉFENDEURS**

**Monsieur Mahmoud VAHABZADEH**
159 Promenade Way
33458-3013
JUPITER (FL - ETATS UNIS)
*représenté par Maître Kenneth WEISSBERG de la SELARL WEISSBERG, avocats au barreau de PARIS, vestiaire #P0046*

**Monsieur Mostafa VAHABZADEH**
San Ramon
CA209 NORHILL / ETATS UNIS
*représenté par Maître Emmanuel RAVANAS de la SELEURL ERAVANAS - AVOCAT, avocats au barreau de PARIS, vestiaire #D1318*

**Expéditions exécutoires délivrées le :**
Copies certifiées conformes délivrées le : 19/02/19 à Me Assadollahi, Me Weissberg, Me Ravanas,

Page 1

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

## COMPOSITION DU TRIBUNAL

Monsieur Jérôme HAYEM, Vice-Président
Monsieur Quentin SIEGRIST, Juge
Madame Mélanie HAMON, Juge

assistés de Juliette JARRY, Greffière lors des débats et de Frédérique ADENET-LOUVET, Greffière lors de la mise à disposition

## DÉBATS

A l'audience du 04 décembre 2018 tenue publiquement devant M. Hayem et M. Siegrist, en formation double juges rapporteurs. M. Hayem a été entendu en son rapport, puis, après avoir entendu les conseils des parties, en a rendu compte au tribunal, conformément aux dispositions de l'article 785 du code de procédure civile. Avis a été donné aux conseils des parties que le jugement serait rendu par mise à disposition au greffe le 29 janvier 2019.

## JUGEMENT

Rendu publiquement par mise à disposition au greffe
Contradictoire
En premier ressort

---

### FAITS ET PROCÉDURE

Par testament authentique du 26 janvier 2006, Bibi Ghoraichi a légué la totalité de ses biens sis en France à Mahmoud Vahabzadeh.

Par testament olographe du 19 décembre 2012, elle a confirmé le legs consenti à Mahmoud Vahabzadeh.

Elle avait son domicile à Paris. Elle est décédée le 5 avril 2014, laissant ses deux enfants, Mostafa et Mahmoud Vahabzadeh et ses trois petits enfants, issus de son fils prédécédé Reza Vahabzadeh, Sara, Sahar et Mohammad Vahabzadeh.

Les biens existants sis en France au jour du décès sont les suivants:
- une somme d'argent de 9.800 euros,
- des bijoux et objets d'art estimés à 23.170 euros,
- un compte de dépôt à la BNP dont le solde était de 20.096,68 euros,
- un livret de développement durable dont le solde était de 5.493,57 euros,
- un compte titres d'une valeur de 2.898 euros au jour du décès,
- un bien immobilier sis à Paris d'une valeur de 750.000 euros au jour du décès.

Par actes d'huissier des 02 juin et 26 septembre 2017, Sara, Sahar et Mohammad Vahabzadeh (ci-après les consorts Vahabzadeh) ont assigné Mahmoud et Mostafa Vahabzadeh devant le tribunal de céans aux fins, en l'état de leurs dernières écritures notifiées par voie électronique le 5 juillet 2018, de:
- ordonner l'ouverture des opérations de compte liquidation et partage de la succession de Bibi Ghoraichi pour les biens situés en France,

Page 2

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

- condamner Mahmoud Vahabzadeh à leur verser à chacun une indemnité de réduction de 67.548,33 euros,
- ordonner la licitation du bien immobilier dépendant de la succession,
- ordonner l'exécution provisoire,
- condamner Mahmoud Vahabzadeh à leur verser une somme de 10.000 euros au titre de l'article 700 du code de procédure civile.

Par conclusions notifiées par voie électronique le 7 juin 2018, Mostafa Vahabzadeh demande au tribunal de:

- ordonner l'ouverture des opérations de compte liquidation et partage de la succession de Bibi Ghoraichi pour les biens situés en France et en Suisse,
- condamner Mahmoud Vahabzadeh à lui verser une indemnité de réduction de 202.645 euros,
- ordonner l'exécution provisoire,
- condamner Mahmoud Vahabzadeh à lui verser une indemnité de 10.000 euros en réparation de son préjudice moral et une somme de 5.000 euros au titre de l'article 700 du code de procédure civile.

Par conclusions notifiées par voie électronique le 8 mars 2017, Mahmoud Vahabzadeh prie le tribunal de:

- déclarer irrecevable l'action en partage et en réduction des consorts Vahabzadeh,
- rejeter les demandes en partage et réduction,
- les déclarer coupables avec Mostafa Vahabzadeh de recel,
- les condamner solidairement à restituer les biens recelés,
- dire que la restitution se fera par prélèvement sur les biens sis en France et pour partie en règlement à Mahmoud Vahabzadeh d'une somme de 1.380.548 euros,
- subsidiairement, si le recel n'est pas admis:
  - condamner solidairement les consorts Vahabzadeh et Mostafa Vahabzadeh à lui verser une indemnité de réduction de 255.447,90 euros, ou très subsidiairement de 102.080,76 euros, en application de la loi iranienne,
- condamner solidairement les consorts Vahabzadeh et Mostafa Vahabzadeh à lui verser une indemnité de 10.000 euros pour son préjudice moral et une somme de 15.000 euros au titre de l'article 700 du code de procédure civile.

L'ordonnance de clôture a été rendue le 5 octobre 2018 et l'audience de plaidoiries fixée au 4 décembre suivant.

A l'issue des débats, les parties ont été informées que la décision serait rendue par mise à disposition au greffe le 29 janvier 2019.

## MOTIFS DE LA DÉCISION

Vu les conclusions des consorts Vahabzadeh notifiées par voie électronique le 5 juillet 2018;

Vu les conclusions de Mostafa Vahabzadeh notifiées par voie électronique le 7 juin 2018;

Page 3

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

Vu les conclusions de Mahmoud Vahabzadeh notifiées par voie électronique le 8 mars 2017;

### 1°) Sur la recevabilité des demandes

#### 1.1°) Sur la prescription

Mahmoud Vahabzadeh fait valoir:
- que l'action en réduction se prescrit par deux années à compter de la connaissance par les réservataires de l'atteinte à leur réserve,
- qu'il a publié son titre sur le bien immobilier le 22 octobre 2014, que c'est donc à cette date que les consorts Vahabzadeh ont eu connaissance de l'atteinte prétendue,
- qu'en assignant en 2017, ils ont agi tardivement.

Sur ce, l'article 921 du code civil dispose que l'action en réduction se prescrit par cinq ans à compter de l'ouverture de la succession, ou par deux ans à compter du jour où les héritiers ont eu connaissance de l'atteinte portée à leur réserve, sans jamais pouvoir excéder dix ans à compter du décès.

Dès lors que l'un des deux délais alternatifs n'est pas expiré, l'action n'est pas prescrite.

L'action en réduction ne peut donc être prescrite dans les cinq années suivant le décès.

Le décès étant intervenu en 2014, les consorts Vahabzadeh avaient au moins jusqu'en 2019 pour agir en réduction. Par suite, en agissant en 2017, ils ne sont pas prescrits.

#### 1.2°) Sur l'intérêt à agir

Mahmoud Vahabzadeh expose:
- que la défunte était de nationalité iranienne,
- que l'article 6 du code civil iranien dispose que la loi successorale applicable aux sujets iraniens est la loi iranienne, qu'en droit iranien, le mécanisme de la représentation n'existe pas, que les consorts Vahabzadeh n'ont donc aucune vocation successorale,
- qu'ils sont donc sans intérêt à agir en partage ou réduction.

Sur ce, le dernier domicile de la défunte était situé en France.

Le décès de Bibi Ghoraichi entraîne l'ouverture de plusieurs successions: celle comportant ses biens meubles sis en France et à l'étranger et ses immeubles sis en France, qui sera désignée sous le terme de succession française, et celles comportant ses immeubles sis à l'étranger, qui seront dénommées successions étrangères.

La loi applicable à la succession française est la loi française.

Les consorts Vahabzadeh viennent donc à la succession française de la défunte en représentation de son fils prédécédé, Reza Vahabzadeh.

Ils ont donc un intérêt à agir en partage et en réduction sur la succession française.

Page 4

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

### 2°) Sur le partage

La succession française comprend l'intégralité des biens meubles de la défunte quelle que soit leur situation.

Ni les consorts Vahabzadeh ni Mostafa Vahabzadeh ne sollicitent le partage de la succession française en totalité puisqu'ils restreignent leur demande aux biens situés en France et en Suisse.

Il s'agit donc d'une demande de partage partiel. Or, le partage partiel suppose l'accord des parties sur le périmètre du partage. Faute d'accord de Mahmoud Vahabzadeh, la demande doit être rejetée.

Par suite, étant une opération de partage, la licitation ne peut être ordonnée.

### 3°) Sur le recel

Mahmoud Vahabzadeh fait valoir:
- que les consorts Vahabzadeh et Mostafa Vahabzadeh ont dissimulé l'existence de biens en Iran, qu'ainsi, ils ne les ont pas mentionnés dans la déclaration de succession,
- qu'ils nient avoir bénéficié de libéralités portant sur des biens en Iran,
- qu'ils sont coupables de recel.

Sur ce, les libéralités portant sur des immeubles en Iran se situent en dehors de la succession française. Leur éventuelle dissimulation n'a pas pu avoir pour effet de rompre l'égalité des copartageants dans la succession française. Il ne peut donc y avoir de recel du chef de l'éventuelle dissimulation de ces immeubles.

Par ailleurs, il n'est pas établi que les consorts Vahabzadeh ou Mostafa Vahabzadeh aient bénéficié de libéralités de meubles situés en Iran.

Il n'est pas plus établi qu'ils ont dissimulé des biens meubles existants iraniens. En effet, les seuls biens meubles iraniens sont les comptes bancaires de la défunte dont il n'est pas démontré que les consorts Vahabzadeh et Mostafa Vahabzadeh avaient connaissance précise. De plus, ils ont indiqué sur la déclaration de succession l'existence d'actifs en Iran et notamment d'un compte bancaire. Ainsi, il ne peut leur être reproché d'avoir conservé par devers eux le peu d'informations dont ils disposaient.

Il convient donc de rejeter la demande en déclaration de recel.

### 4°) Sur la réduction

#### 4.1°) Sur la réduction afférente à la succession française

Les consorts Vahabzadeh et Mostafa Vahabzadeh observent:
- que les consorts Vahabzadeh n'ont aucun droit dans la succession iranienne, que la masse de calcul se limite aux biens situés en France,
- qu'il n'existe ni rapport ni représentation en droit iranien, qu'il doit donc être fait abstraction de la succession iranienne,
- que les consorts Vahabzadeh ont droit au quart des biens sis en

Page 5

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

France, soit 202.645 euros, que Mostafa Vahabzadeh a droit à la même somme.

Mahmoud Vahabzadeh oppose:
- qu'il doit être tenu compte des biens sis en Iran,
- que la masse de calcul est donc de 2.454.862,87 euros,
- qu'en tenant compte des libéralités de biens sis en Iran et dont ils ont déjà bénéficié, les consorts Vahabzadeh ont déjà reçu 45 % de la succession, qu'ils sont donc remplis de leur réserve française qui est du quart de la succession, que Mostafa Vahabzadeh a lui aussi reçu 22 % de la succession par libéralités de biens iraniens, qu'en joignant ses droits dans la succession iranienne, il est aussi rempli de sa réserve française.

Sur ce, l'indemnité de réduction doit se calculer sur la succession française.

Il résulte de l'article 922 du code civil que la masse de calcul comprend les biens existants immeubles situés en France et meubles à laquelle doivent être adjointes les donations consenties par la défunte portant sur des immeubles sis en France ou des meubles et retranché le passif de la défunte.

Il résulte de la déclaration de succession signée par l'ensemble des parties que le passif de la défunte était de 2.424,38 euros.

Les seules libéralités alléguées portent sur des immeubles situés en Iran. Il ne doit donc pas en être tenu compte. La masse de calcul se réduit donc, pour l'actif, aux biens existants.

Si Mostafa Vahabzadeh allègue l'existence d'un compte bancaire en Suisse, il n'en démontre pas l'existence, le courrier de son conseil faisant état d'un tel compte étant dénué de toute force probante.

La masse de calcul s'établit donc comme suit:
- une somme d'argent en France: 9 800,00 €
- bijoux et objets d'art se trouvant en France: 23.170,00 €
- compte de dépôt à la BNP: 20.096,68 €
- livret de développement durable en France: 5.493,57 €
- compte titres en France: 2.898,00 €
- bien immobilier sis à Paris: 750.000,00 €
- comptes bancaires en Iran: 197.650,44 €
  (6.899.516.045 rials au taux de 286,47 euros pour 10.000.000 rials au 5 avril 2014, jour du décès)
- passif de la défunte: -2.424,38 €

total: 1.006.684,31 €

En présence de trois enfants, la quotité disponible est donc de 251.671,08 euros (1.006.684,31 / 4).

La seule libéralité consentie est le legs de la totalité des biens sis en France à Mahmoud Vahabzadeh.

Etant accordée à titre préciputaire, elle doit s'imputer sur la quotité disponible.

Page 6

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

L'assiette de cette libéralité doit être discutée.

En effet, si la localisation des meubles corporels de la défunte ne pose pas de difficultés, il n'en va pas de même de ses biens incorporels comme ses créances de sommes d'argent.

La défunte étant décédée en 2014, soit avant l'entrée en vigueur de l'ordonnance 2016-131, ses créances de somme d'argent sont quérables en application de l'article 1247 dernier alinéa du code civil dans sa rédaction alors applicable. Par suite, elles sont situées aux domiciles de ses débiteurs.

En conséquence, ses créances au titre de ses comptes bancaires de dépôt se trouvent aux domiciles de ses banques. Les comptes bancaires ouverts en France sont donc inclus dans l'assiette du legs consenti à Mahmoud Vahabzadeh. En revanche, les comptes bancaires ouverts auprès de banques ayant leur domicile en Iran en sont exclus.

Ainsi, la libéralité porte sur les biens suivants:
- une somme d'argent en France:                        9 800,00 €
- bijoux et objets d'art se trouvant en France:        23.170,00 €
- compte de dépôt à la BNP:                            20.096,68 €
- livret de développement durable en France:           5.493,57 €
- compte titres en France:                             2.898,00 €
- bien immobilier sis à Paris:                        750.000,00 €
                                          total:      811.458,25 €

La libéralité excède donc la quotité disponible de 559.787,17 euros (811.458,25 – 251.671,08). Le taux de réduction est donc de 68,99 % (559.787,17 x 100 / 811.458,25).

En application de l'article 924-2 du code civil, l'indemnité de réduction doit être liquidée en considération de la valeur des biens donnés ou légués au jour du partage.

Les parties étant en indivision sur les comptes bancaires en Iran, l'indemnité de réduction n'est exigible qu'au jour du partage comme le prévoit l'article 924-3 du code civil.

Par suite, Mahmoud Vahabzadeh ne peut être condamné au paiement d'une indemnité de réduction. En revanche, le taux de réduction du legs litigieux sera fixé.

<u>4.1°) Sur la réduction afférente à la succession iranienne</u>

Mahmoud Vahabzadeh fait valoir:
- qu'en droit iranien, la quotité disponible est d'un tiers,
- qu'en prenant en considération le total du patrimoine de la défunte, quelle que soit la situation des biens, en faisant application du droit iranien qui prive les consorts Vahabzadeh de toute vocation successorale et qui fixe la quotité disponible à 1/3, le total de ses droits est de 971.657,77 euros, que les consorts Vahabzadeh et Mostafa Vahabzadeh lui doivent la différence entre ce qu'il a effectivement recueilli et ses droits, soit 255.447,90 euros,
- que dans l'hypothèse où il serait reconnu des droits aux consorts Vahabzadeh dans la succession française malgré les

Page 7

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

dispositions de la loi iranienne, la différence entre ses droits et ce qu'il a reçu serait de 102.080,76 euros.

Sur ce, il ne peut être fait masse des successions iranienne et française pour déterminer la quotité disponible et l'indemnité de réduction comme le fait Mahmoud Vahabzadeh.

Par suite, la demande doit être rejetée.

Mahmoud Vahabzadeh ayant pu se méprendre sur l'étendue de ses droits, il n'y a pas lieu de le condamner à indemniser Mostafa Vahabzadeh du préjudice moral occasionné par la présente procédure.

Pour les mêmes motifs, il n'y a pas lieu d'indemniser Mahmoud Vahabzadeh pour le préjudice moral consécutif à la présente instance.

Compte tenu de la nature familiale du litige chacune des parties doit conserver la charge de ses frais irrépétibles.

Il n'y a pas lieu à exécution provisoire.

## PAR CES MOTIFS

Le tribunal statuant publiquement, par jugement contradictoire et en premier ressort:

Déclare recevables les demandes en partage et en réduction des consorts Vahabzadeh et de Mostafa Vahabzadeh;

Déboute les consorts Vahabzadeh de leur demande tendant à:
- ordonner l'ouverture des opérations de compte liquidation et partage de la succession de Bibi Ghoraichi pour les biens situés en France,
- condamner Mahmoud Vahabzadeh à leur verser à chacun une indemnité de réduction de 67.548,33 euros,
- ordonner la licitation du bien immobilier,
- ordonner l'exécution provisoire,
- condamner Mahmoud Vahabzadeh à leur verser une somme de 10.000 euros au titre de l'article 700 du code de procédure civile;

Déboute Mostafa Vahabzadeh de ses demandes tendant à:
- ordonner l'ouverture des opérations de compte liquidation et partage de la succession de Bibi Ghoraichi pour les biens situés en France et en Suisse,
- condamner Mahmoud Vahabzadeh à lui verser une indemnité de réduction de 202.645 euros,
- ordonner l'exécution provisoire,
- condamner Mahmoud Vahabzadeh à lui verser une indemnité de 10.000 euros en réparation de son préjudice moral et une somme de 5.000 euros au titre de l'article 700 du code de procédure civile;

Fixe à 68,99 % le taux de réduction du legs consenti à Mahmoud Vahabzadeh par testament authentique du 26 janvier 2006 et confirmé

Décision du 29 Janvier 2019
2ème chambre 2ème section
N° RG : 17/13211 - N° Portalis 352J-W-B7B-CLLVD

par testament olographe du 19 décembre 2012;

Déboute Mahmoud Vahabzadeh de ses demandes tendant à:
- déclarer les consorts Vahabzadeh et Mostafa Vahabzadeh coupables de recel,
- les condamner solidairement à restituer les biens recelés,
- dire que la restitution se fera par prélèvement sur les biens sis en France et pour partie en règlement à Mahmoud Vahabzadeh d'une somme de 1.380.548 euros,
- condamner solidairement les consorts Vahabzadeh et Mostafa Vahabzadeh à lui verser une indemnité de réduction de 255.447,90 euros, ou très subsidiairement de 102.080,76 euros, en application de la loi iranienne,
- condamner solidairement les consorts Vahabzadeh et Mostafa Vahabzadeh à lui verser une indemnité de 10.000 euros pour son préjudice moral et une somme de 15.000 euros au titre de l'article 700 du code de procédure civile;

Condamne Mahmoud Vahabzadeh aux dépens;

Dit n'y avoir lieu à exécution provisoire;

Fait et jugé à Paris le 29 janvier 2019

**La greffière**                                    **Le président**

Frédérique ADENET-LOUVET                Jérôme HAYEM

Copie certifiée conforme
à l'original

Page 9

TRANSLATION

REGIONAL
COURT OF
PARIS

Extract from the Records of
the Regional Court of PARIS

2nd civil chamber

Case number:
**17/13211 -**
Portalis number
**352J-W-
B7B-CLLVD**

MINUTES No.: 3

Writ dated: June
02nd, 2017

**JUDGMENT**
issued on January 29th, 2019

**PLAINTIFFS**

**Ms. Sara VAHABZADEH**
Shahrak Ghods
Iranzamin ave Iranian Building 11th FL
TEHERAN, IRAN
*Represented by Attorney Mohsen ASSADOLLAHI, Attorney at the
PARIS Bar Association, Box #D1745*

**Ms. Sahar VAHABZADEH**
235 NW Anthony Street Apt 2
Pullman WA 99163, UNITED
STATES OF AMERICA
*Represented by Attorney Mohsen ASSADOLLAHI, Attorney at the
PARIS Bar Association, Box #D1745*

**Mr. Mohammad VAHABZADEH**
Shahrak Ghods
Iranzamin ave Iranian Building 11th FL
*Represented by Attorney Mohsen ASSADOLLAHI, Attorney at the
PARIS Bar Association, Box #D1745*

**DEFENDANTS**

**Mr. Mahmoud VAHABZADEH**
159 Promenade Way
33458-3013
JUPITER, FL (UNITED STATES OF AMERICA)
*Represented by Attorney Kenneth WEISSBERG from SELARL
WEISSBERG, Attorneys at the Paris Bar Association, Box #P0046*

**Mr. Mostafa VAHABZADEH**
San Ramon
CA209 NORHILL / UNITED STATES OF AMERICA
*Represented by Attorney Emmanuel RAVANAS from SELEURL
ERAVANS - AVOCAT, Attorneys at the Paris Bar Association, Box
#D1318*

**Enforceable copies delivered on**:
Certified true copies delivered on: February 19th, 2019 to Attorney Assadollahi, Attorney
Weissberg, Attorney Ravanas

Page 1

Order dated January 29ᵗʰ, 2019 2ⁿᵈ chamber, 2ⁿᵈ
section
Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

## COMPOSITION OF THE COURT

Mr. Jérôme HAYEM, Vice-Presiding Judge
Mr. Quentin SIEGRIST, Judge
Ms. Mélanie HAMON, Judge

Assisted by Juliette JARRY, Court Clerk during the discussions
and Frédérique ADENET-LOUVET, Court Clerk when the order
was made available at the Registry

## DISCUSSION

At the hearing held on December 04ᵗʰ, 2018, in public before Mr.
Hayem and Mr. Siegrist, both as reporting judges. Mr. Hayem's
report was heard, then after hearing the parties' counsels, he
reported the same to the court, in accordance with the provisions
of Article 785 of the Civil Procedure Code. The parties 'counsels
were advised that the judgment would be issued by making it
available at the Court Registry on January 29ᵗʰ, 2019.

## JUDGMENT

Issued in public by making it available at the
Court Registry, in accordance with the adversarial
principle
In first instance

---

## FACTS AND PROCEEDINGS

In an authentic will dated January 26ᵗʰ, 2006, Bibi Ghoraichi
bequeathed all her property located in France to Mahmoud
Vahabzadeh.

In a holograph will dated December 19th, 2012, she confirmed
this bequest granted to Mahmoud Vahabzadeh.

She had her domicile in Paris. She died on April 5th, 2014,
leaving her two children Mostafa and Mahmoud Vahabzadeh and
her three grandchildren, born to her predeceased son Reza
Vahabzadeh, Sara, Sahar and Mohammad Vahabzadeh.

The existing property located in France as of the day of the death
are as follows:
- An amount of money of EUR 9,800
- Jewelry and artwork estimated at EUR 23,170
- A deposit account with the BNP, the balance of which was
  EUR 20,096.68
- A sustainable development passbook account, the balance
  of which was EUR 5,493.57
- A securities account valued at EUR 2,898 as of the day of
  the death,
- A piece of real property located in Paris valued at EUR
  750,000 as of the day of the death.

By way of writs delivered by a process server dated June 02ⁿᵈ
and September 26ᵗʰ, 2017, Sara, Sahar and Mohammad
Vahabzadeh (hereafter referred to as "Vahabzadeh et al.") have
brought proceedings against Mahmoud and Mostafa Vahabzadeh

Page 2

Order dated January 29th, 2019 2nd chamber, 2nd section
Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

before this court for the purpose of, as stated in their latest submissions notified by electronic means on July 5th, 2018:

- Ordering the opening of the accounting operations, liquidation and distribution of Bibi Ghoraichi's estate for the property located in France,
- Ordering Mahmoud Vahabzadeh to pay to each of them a reduction indemnity in the amount of EUR 67,548.33
- Ordering the auction of the piece of real property of the estate,
- Ordering the provisional enforcement,
- Ordering Mahmoud Vahabzadeh to pay them the amount of EUR 10,000 under Article 700 of the Civil Procedure Code.

In pleadings submitted by electronic means on June 7th, 2018, Mostafa Vahabzadeh asked the Court to:

- Order the opening of the accounting operations, liquidation and distribution of Bibi Ghoraichi's estate for the property located in France and Switzerland,
- Order Mahmoud Vahabzadeh to pay to him a reduction indemnity in the amount of EUR 202.645,
- Order the provisional enforcement,
- Order Mahmoud Vahabzadeh to pay to him EUR 10,000 as compensation for the moral harm he suffered and EUR 5,000 under Article 700 of the Civil Procedure Code.

In pleadings submitted by electronic means on March 8th, 2017, Mahmoud Vahabzadeh requests that the Court:

- Declare Vahabzadeh et al.'s distribution and reduction action inadmissible,
- Dismiss the claims for distribution and reduction,
- Declare that they and Mostafa Vahabzadeh are guilty of embezzlement,
- Order them severally to return the embezzled property,
- Declare that said restitution shall be made by deduction on the property located in France and in part as payment to Mahmoud Vahabzadeh of the amount of EUR 1,380,548,
- Subsidiarily, if embezzlement is not found:
  - Order severally Vahabzadeh et al. and Mostafa Vahabzadeh to pay to him a reduction indemnity in the amount EUR 255,447.90, or in the further alternative in the amount of EUR 102,080.76, pursuant to Iranian law,
- Order severally Vahabzadeh et al. and Mostafa Vahabzadeh to pay to him EUR 10,000 as compensation for the moral harm he suffered and EUR 15,000 under Article 700 of the Civil Procedure Code.

The order for termination of the proceedings was issued on October 5th, 2018 and the hearing was scheduled on December 4th.

At the end of the discussion, the parties were informed that the decision would be issued by making it available at the Court Registry on January 29th, 2019.

## GROUNDS FOR THE DECISION

Having regard to Vahabzadeh et al.'s submissions sent by electronic means on July 5th, 2018;

Page 3

Order dated January 29th, 2019 2nd chamber, 2nd section
Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

Having regard to Mostafa Vahabzadeh's submissions sent by electronic means on June 7th, 2018;

Having regard to Mahmoud Vahabzadeh's submissions sent by electronic means on March 8th, 2017;

## 1°) On the admissibility of the claims

### 1.1°) On the statute of limitations

Mahmoud Vahabzadeh argues that:
- the reduction action has a two-year limitation period starting from the time the compulsory heir learned about the infringement on their reserved portion of the estate,
- He published his title to the real property on October 22nd, 2014, therefore that is the date when Vahabzadeh et al. learned about the alleged infringement,
- In bringing proceedings in 2017, they acted belatedly.

On this matter, Article 921 of the Civil Code provides that the reduction action has a limitation period of five years from the opening of the succession, or two years from the day when the heirs learned about the infringement on their reserved portion of the estate, without being able to exceed ten years from the death.

As long as one of the two alternative time periods has not lapsed, the action has not become time-barred.

Thus, the reduction action cannot be time-barred within the five years following the death.

Since the death occurred in 2014, Vahabzadeh et al. had at least until 2019 to bring reduction proceedings. Consequently, the action brought in 2017 is not time-barred.

### 1.2°) On standing

Mahmoud Vahabzadeh states that:

- The deceased was an Iranian national,
- Article 6 of the Iranian Civil Code provides that the succession law applicable to Iranian nationals is Iranian law and under Iranian law, the mechanism of representation does not exist, and Vahabzadeh et al. have no entitlement to inheritance,
- Therefore, they have no standing to bring proceedings for the purposes of distribution or reduction.

On this matter, the last domicile of the deceased was located in France.

Bibi Ghoraichi's death gives rise to the opening of several estates: one including her movable assets located in France and in foreign countries and her real property in France, which shall be referred to as her French estate, and those including her real property located in foreign countries, which shall be referred to as her foreign estate.

Thus, the law applicable to the French estate is French law.

Page 4

Order dated January 29th, 2019 2nd chamber. 2nd section

Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

Thus Vahabzadeh et al. inherit the French estate of the deceased as representatives of her predeceased son Reza Vahabzadeh.

Consequently, they have standing to bring a distribution and reduction action on the French estate.

### 2°) On distribution

The French estate includes the entirety of the deceased's movable assets regardless of where they are located.

Neither Vahabzadeh et al. nor Mostafa Vahabzadeh are requesting the distribution of the French estate in its entirety since they have limited their claim to the assets located in France and Switzerland.

Consequently, this is a partial distribution claim. However, partial distribution requires that the parties agree on the scope of the distribution. Since there is no agreement from Mahmoud Vahabzadeh, the claim must be dismissed.

It follows that, being a distribution operation, an auction cannot be ordered.

### 3°) On embezzlement

Mahmoud Vahabzadeh argues that:
- Vahabzadeh et al. and Mostafa Vahabzadeh concealed the existence of assets in Iran, thus they did not mention said assets in the declaration of succession,
- They deny that they have received donations pertaining to assets located in Iran,
- They are guilty of embezzlement.

On this matter, the donations pertaining to real property located in Iran are outside the French estate. The possible concealment of those assets cannot have resulted in upsetting the equality between the beneficiaries of the French estate. Therefore, there cannot be any embezzlement on the grounds of the possible concealment of these pieces of real property.

Additionally, it is not established that Vahabzadeh et al. have received donations pertaining to movable assets located in Iran.

It is not established either that they have concealed existing Iranian movable assets. In fact, the only Iranian movable assets are the deceased's bank accounts and it is not shown that Vahabzadeh et al. and Mostafa Vahabzadeh had specific knowledge of those. Moreover, they indicated on the declaration of succession that there were assets in Iran, in particular a bank account. Thus, they cannot be blamed for failing to disclose what little information they had.

It is thus appropriate to dismiss the claim that embezzlement should be found.

### 4°) On reduction

#### 4.1°) On the reduction pertaining to the French estate

Vahabzadeh et al. and Mostafa Vahabzadeh note that:
- Vahabzadeh et al. have no right to the Iranian estate, and that calculations of the estate are limited to the assets

Page 5

Order dated January 29th, 2019 2nd chamber. 2nd section
Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

located in France,
- There is no report or representation under Iranian law, therefore the Iranian estate must be ignored,
- That Vahabzadeh et al. are entitled to a quarter of the assets located in France i.e. EUR 202,645, and that Mostafa Vahabzadeh is entitled to the same amount.

In response, Mahmoud Vahabzadeh argues that:
- The assets located in Iran must be taken into account,
- The estate as a whole is thus valued at EUR 2,454,862.87,
- That taking into account the donations of assets located in Iran they have already received, Vahabzadeh et al. have already received 45% of the estate, therefore they have already received their portion of the French estate which is a quarter of the estate, that Mostafa Vahabzadeh also received 22% of the estate by way of donations of Iranian assets, that in combining his rights to the Iranian estate, he has also received the portion of the French estate he was entitled to.

On this matter, the reduction indemnity must be calculated based on the French estate.

It results from Article 922 of the Civil Code that the calculation of the estate includes the existing real property located in France and the movable assets to which the donations granted by the deceased pertaining to real property or movable assets located in France must be added, and from which the deceased's liabilities must be subtracted.

It results from the declaration of succession signed by all the parties that the deceased's liabilities amounted to EUR 2,424.38.

The only donations alleged pertain to real property located in Iran. Therefore, they must not be taken into account. The calculations of the estate only include, in terms of assets, the existing property.

While Mostafa Vahabzadeh alleges the existence of a bank account in Switzerland, he does not provide evidence of the same, since the letter from his counsel mentioning such an account does not have any probative force.

The calculation of the estate is thus as follows:
- An amount of money in France: EUR 9,800.00
- Jewelry and artwork located in France: EUR 23,170.00
- Deposit account with BNP: EUR 20,096.68
- Sustainable development passbook account in France EUR 5,493.57
- Securities account in France: EUR 2,898.00
- Real property in Paris: EUR 750,000.00
- Bank accounts in Iran: EUR 197,650.44
  (At the rate of EUR 286.47 for IRR 10.000.000 as of April 5th 2014, day of the death)
- Liabilities of the deceased: EUR -2,424.38
  total EUR 1,006,684.31

In the presence of three children, the available share is thus EUR 251,671.08 (1,006,684.31 / 4).

Page 6

Order dated January 29th, 2019 2nd chamber. 2nd section
Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

The only donation granted is the bequest of the entirety of the assets located in France to Mahmoud Vahabzadeh.

Being granted on a preferential basis, it must be deducted from the available share.

The basis of this donation must be discussed.

Indeed, while the location of the deceased's personal property is not an issue, the same cannot be said about her intangible assets such as her monetary claims.

Since the deceased died in 2014 i.e. before Ordinance 2016-131 entered into force, her monetary claims are collectable pursuant to the last paragraph of Article 1247 of the Civil Code as it was written and applicable at the time. It follows that they are located at the domiciles of her debtors.

Consequently, her claims under her deposit bank accounts are at the domiciles of her banks. Thus, the bank accounts opened in France are included in the basis of the bequest granted to Mahmoud Vahabzadeh. However, the bank accounts opened with banks whose domicile is located in Iran are excluded from that basis.

Thus, the donation pertains to the following assets:

| | |
|---|---|
| • An amount of money in France: | EUR 9,800.00 |
| • Jewelry and artwork located in France: | EUR 23,170.00 |
| • Deposit account with BNP: | EUR 20,096.68 |
| • Sustainable development passbook account in France | EUR 5,493.57 |
| • Securities account in France | EUR 2,898.00 |
| • Piece of real property located in Paris: | EUR 750,000.00 |
| total: | EUR 811,458.25 |

The donation thus exceeds the available share by EUR 559,787.17 (811,458.25 - 251,671.08). Thus, the reduction rate is 68.99 % (559,787.17 x 100 / 811,458.25).

Pursuant to Article 924-2 of the Civil Code, the reduction indemnity must be liquidated taking into account the value of the assets gifted or bequeath as of the day of the distribution.

The parties having joint ownership over the bank accounts in Iran, the reduction indemnity is only due on the day of the distribution as provided for by Article 924-3 of the Civil Code.

It follows that Mahmoud Vahabzadeh cannot be ordered to pay a reduction indemnity. However, the reduction rate of the bequest in dispute shall be set.

4.2°) On the reduction pertaining to the Iranian estate

Mahmoud Vahabzadeh argues:
- That under Iranian law, the available share is one third of the estate,
- That taking into account the entirety of the deceased's assets, regardless of where they are located, and pursuant to Iranian law which deprives Vahabzadeh et al. of any entitlement to the estate and sets the available share to 1/3,

Page 7

Order dated January 29th, 2019 2nd chamber. 2nd section

Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

the total of his rights amounts to EUR 971,657.77, that Vahabzadeh et al. owe him the difference between what he has actually collected and his rights i.e. EUR 255,447.90,

- That should rights to the French estate be recognized for Vahabzadeh et al. despite the provisions of Iranian law, the difference between his rights and what he has received would be EUR 102,080.76.

On this matter, the Iranian and French estates cannot be added together to determine the available share and the reduction indemnity as Mahmoud Vahabzadeh did.

It follows that the claim must be dismissed.

Since Mahmoud Vahabzadeh may have been mistaken as to the extent of his rights, there are no grounds to order him to compensate Mostafa Vahabzadeh for the moral harm caused by these proceedings.

For the same reasons, there are no grounds to compensate Mahmoud Vahabzadeh for the moral harm stemming from these proceedings.

Given the domestic nature of the dispute, each party must bear their own irrecoverable costs.

There are no grounds for provisional enforcement.

## WHEREFORE

The Court, ruling in public, in accordance with the adversarial principle and in first instance, shall:

Declare Vahabzadeh et al. and Mostafa Vahabzadeh's claims for distribution and reduction admissible;

Dismiss Vahabzadeh et al.'s request that the Court:
- Order the opening of the accounting operations, liquidation and distribution of Bibi Ghoraichi's estate for the property located in France,
- Order Mahmoud Vahabzadeh to pay to each of them a reduction indemnity in the amount of EUR 67,548.33
- Order the auction of the piece of real property,
- Order the provisional enforcement,
- Order Mahmoud Vahabzadeh to pay to them EUR 10,000 under Article 700 of the Civil Procedure Code;

Dismiss Mostafa Vahabzadeh's requests to:
- Order the opening of the accounting operations, liquidation and distribution of Bibi Ghoraichi's estate for the property located in France and in Switzerland,
- Order Mahmoud Vahabzadeh to pay to him a reduction indemnity in the amount of EUR 202.645,
- Order the provisional enforcement,
- Order Mahmoud Vahabzadeh to pay to him 10,000 EUR as compensation for the moral harm suffered and EUR 5,000 under Article 700 of the Civil Procedure Code;

Page 8

Order dated January 29th, 2019 2nd chamber. 2nd section
Case number: 17/13211 - Portalis number 352J-W-B7B-CLLVD

Sets the reduction rate of the bequest granted to Mahmoud Vahabzadeh by the authentic will dated January 26th, 2006 and confirmed by a holograph will dated December 19th, 2012 to 68.99%;

Dismiss Mahmoud Vahabzadeh's requests to:
- Declare Vahabzadeh et al. and Mostafa Vahabzadeh guilty of embezzlement,
- Order them severally to return the embezzled property,
- Declare that said restitution shall be made by deduction on the property located in France and in part as payment to Mahmoud Vahabzadeh of the amount of EUR 1,380,548,
- Order severally Vahabzadeh et al. and Mostafa Vahabzadeh to pay to him a reduction indemnity in the amount EUR 255,447.90, or in the further alternative in the amount of EUR 102,080.76, pursuant to Iranian law,
- Order severally Vahabzadeh et al. and Mostafa Vahabzadeh to pay to him EUR 10,000 as compensation for the moral harm he suffered and EUR 15,000 under Article 700 of the Civil Procedure Code.

Order Mahmoud Vahabzadeh to pay the costs of the proceedings;

Declare that there are no grounds for provisional enforcement;

Done and ordered in Paris on January 29th, 2019

**Court Clerk**

Frédérique ADENET-LOUVET

[signature]

**The Presiding Judge**

Jérôme HAYEM

[signature]

Page 9

EXHIBIT H

# COUR D'APPEL DE PARIS

34, Quai des Orfèvres
75055 PARIS CEDEX 01
Tél : 01.44.32.52.52
Fax : 01.44.32.68.71

## AVIS DE DECLARATION D'APPEL

| |
|---|
| **DECLARATION D'APPEL N° 19/09739**<br>**N° RG : 19/08623**<br>Pôle 3 - Chambre 1<br><br>**en date du** 18 Avril 2019 à 14 h 15<br><br>**enregistrée le** 15 Mai 2019 à 13 h 56<br>**effectuée par** Me François TEYTAUD de TEYTAUD SALEH (AARPI)<br><br>N° de dossier à l'étude : 20190099<br><br>A l'encontre d'un jugement rendu le 29 Janvier 2019 (RG n°17/13211) par le Tribunal de Grande Instance de PARIS |

Me François TEYTAUD de
TEYTAUD-SALEH (AARPI)
10 RUE DE ROME
75008 PARIS

## AU NOM DE :

**M. Mahmoud VAHABZADEH**
159 Promenade Way
33458-3013 JUPITER
. FLORIDE - USA

Pour qui domicile est élu au cabinet de **Me François TEYTAUD de TEYTAUD-SALEH (AARPI)**, avocat au barreau de PARIS dont le siège est 10 RUE DE ROME, 75008 PARIS lequel se constitue pour le/la/les sus-nommé/e/és/ées, et déclare par la présente interjeter appel de la ou des décision(s) désignée(s) ci dessus :

## A L'ENCONTRE DE :

**M. Mostafa VAHABZADEH**
San Ramon
CA 209 NORHILL/ETAT UNIS

**M. Mohammad VAHABZADEH**
SHARAK GHODS
Iranzamin ave Iranian Building 11 th FL
, TEHERAN - IRAN

**Mme Sahar VAHABZADEH**
235 NW Anthony Street Apt 2 Pullman
99163 WA - ETATS UNIS

**Mme Sara VAHABZADEH**
Sharak Ghods
Iranzamin ave Iranian Building 11 th FL
. TEHERAN - IRAN

Le greffier de la cour d'appel vous avise de la déclaration d'appel dans l'affaire mentionnée ci-dessus dont l'objet est :

Les chefs du jugement critiquées sont ceux par lesquels le Tribunal de Grande Instance de PARIS a déclaré recevables les demandes en partage et en réduction des consorts VAHABZADEH et de Mostafa VAHABZADEH
-        fixé à 68,99% le taux de réduction du legs consenti à Mahmoud VAHABZADEH par testament authentique du 26 janvier 2006 et confirmé par testament olographe du 19 décembre 2012 et à condamner Monsieur Mahmoud VAHABZADEH aux dépens
- Ainsi que les chefs du jugement par lesquels le Tribunal a débouté Mahmoud VAHABZADEH de toutes ses demandes tendant à :
-Déclarer les consorts VAHABZADEH et Mostafa VAHABZADEH coupables de recel,
-Les condamner solidairement à restituer les biens recelés, dire que la restitution se fera par prélèvement sur les biens sis en France et pour partie en règlement à Mahmoud VAHABZADEH d'une somme de 1.380.548 euros,
-condamner solidairement les consorts VAHABZADEH et Mostafa VAHABZADEH à lui verser une indemnité de réduction de 255.447,90 euros, ou très subsidiairement de 102.080,76 euros en application de la loi iranienne,
-condamner solidairement les consorts VAHABZADEH et Mostafa VAHABZADEH à lui verser une indemnité de 10.000 euros pour son préjudice moral et une somme de 15.000 euros au titre de l' article 700 du code de procédure civile et aux dépens .

Conformément à l'article 902 du code de procédure civile, vous êtes avisé(e) de l'obligation de constituer avocat dans un délai d'un mois à compter de la présente lettre.

Il vous est rappelé que, conformément à l'article 665-1 du code de procédure civile, faute pour vous de comparaître, vous vous exposez à ce qu'un arrêt soit rendu contre vous sur les seuls éléments rendus par votre adversaire.

Le 15 Mai 2019

Le Greffier

TRANSLATION

## PARIS COURT OF APPEAL

34, Quai des Orfèvres
75055 PARIS CEDEX 01
Tél : 01.44.32.52.52
Fax : 01.44.32.68.71

### NOTICE OF APPEAL

---

**STATEMENT OF APPEAL N° 19/09739**
**N° RG : 19/08623**
Division 3 - Chamber 1

**On the date of** 18 April 2019 at 14:15
**Registered on** 15 May 2019 at 13:56
**Conducted by** Me François TEYTAUD from TEYTAUD
SALEH (AARPI)

N° file: 20190099

Against a judgement issued on 29 January 2019
(RG n°17/13211) by the Tribunal de Grande Instance of
PARIS

---

Me François TEYTAUD from
TEYTAUD-SALEH (AARPI)
10 RUE DE ROME
75008 PARIS

**IN THE NAME OF:**

**Mr. Mahmoud VAHABZADEH**
159 Promenade Way
33458-3013 JUPITER
. FLORIDA – USA

For whom domicile is elected to the firm of **Me François TEYTAUD from TEYTAUD-SALEH (AARPI)**, lawyer at the Paris Bar, headquartered in 10 RUE DE ROME, 75008 PARIS, who is constituted for the aforementioned, and hereby declares that it appeals the decision(s) designated above:

**AGAINST:**

**M. Mostafa VAHABZADEH**
San Ramon
CA 209 NORHILL/USA

**M. Mohammad VAHABZADEH**
SHARAK GHODS
Iranzamin ave Iranian Building 11 th FL
, TEHERAN - IRAN

**Mme Sahar VAHABZADEH**
235 NW Anthony Street Apt 2 Pullman
99163 WA - USA

**Mme Sara VAHABZADEH**
Sharak Ghods
Iranzamin ave Iranian Building 11 th FL
, TEHERAN – IRAN

The clerk of the Court of Appeal notifies you of the statement of appeal in the above-mentioned case, the subject of which is:

The disputed rulings of the judgment are those by which the Tribunal de Grande Instance of PARIS declared admissible the claim for liquidation of the Estate and reduction of the VAHABZADEH consorts and of Mostafa VAHABZADEH :

- set at 68.99% the rate of reduction of the legacy granted to Mahmoud VAHABZADEH by authentic will of 26 January 2006 and confirmed by holograph will of 19 December 2012 and to order Mr Mahmoud VAHABZADEH to pay the procedural costs
- As well as the rulings of the judgment by which the Tribunal dismissed all Mahmoud VAHABZADEH's claims to:
- Declare the consorts VAHABZADEH and Mostafa VAHABZADEH guilty of concealment,
- Order them jointly to return the property concealed, declare that the return will be made by deducting from the property located in France and in part in payment to Mahmoud VAHABZADEH of the sum of 1,380,548 euros,
- Order jointly the consorts VAHABZADEH and Mostafa VAHABZADEH to pay him a reduction compensation of 255,447.90 euros, or in the alternative 102,080.76 euros pursuant to Iranian law,
- Order jointly the consorts VAHABZADEH and Mostafa VAHABZADEH to pay him compensation of EUR 10,000 for his non-material damage and EUR 15,000 under Article 700 of the Code of Civil Procedure and to pay the costs.

In accordance with article 902 of the Code of Civil Procedure, you are informed of the obligation to appoint a lawyer within one month from this letter.

You are reminded that, in accordance with Article 665-1 of the Code of Civil Procedure, if you fail to appear, you are exposed to the risk of a judgment being delivered against you only on the elements delivered by your opponent.

15 May 2019

The Clerk

E
X
H
I
B
I
T

I

# Tribunal de grande instance, Paris, 3e chambre, 2e section, 29 Septembre 2016 – n° 15/00961

**Tribunal de grande instance**

**Paris**
**3e chambre, 2e section**

**Ordonnance**

**29 Septembre 2016**
**Répertoire Général : 15/00961**

Monsieur Alain R
Société META SYSTEMS (SARL), Société MENTOR GRAPHICS CORPORATION

Contentieux Judiciaire

**Notice de l'INPI**

**Domaine** : BREVET

**Référence INPI** : B20160137

**Titre du brevet** : Method and apparatus for gate-level simulation of synthesized register transfer level designs with source-level debugging

**Nature de la décision** : DECISION FRANCAISE

**Numéro(s) d'enregistrement des titres de propriété industrielle** : US 6240 376

**Parties** : R (Alain) / META SYSTEMS SARL ; MENTOR GRAPHICS CORPORATION (États-Unis)

**Publication** : PIBD 2016, 1062, IIIB-944

REPUBLIQUE FRANCAISE
AU NOM DU PEUPLE FRANCAIS

TRIBUNAL DE GRANDE INSTANCE DE PARIS

ORDONNANCE DU JUGE DE LA MISE EN ETAT rendue le 29 septembre 2016

3ème chambre 2ème section

N° RG : 15/00961

Assignation du : 02 janvier 2015



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

INCIDENT

DEMANDEUR

Monsieur Alain R

(ETATS UNIS)

représenté par Me Philippe SCHMITT, avocat au barreau de PARIS, vestiaire #A0677

DEFENDERESSES

Société META SYSTEMS (SARL)

Immeuble le Pasteur

[...]

92360 MEUDON LA FORET

Société MENTOR GRAPHICS CORPORATION

8005 SW Boeckman Rd

Wilsonville

97070 OREGON (ETATS-UNIS)

représentées par Maître Grégoire DESROUSSEAUX de la SCP AUGUST & DEBOUZY et associés, avocats au barreau de PARIS, vestiaire #P0438

MAGISTRAT DE LA MISE EN ETAT

François A, Premier Vice-Président adjoint

assisté de Jeanine R, faisant fonction de Greffier

DEBATS

À l'audience du 08 septembre 2016, avis a été donné aux avocats que l'ordonnance serait rendue le 29 septembre 2016.

ORDONNANCE

Prononcée publiquement par mise à disposition au greffe

Contradictoire

Par contrat de travail signé le 15 février 1996, Monsieur Alain R a été salarié en tant qu'ingénieur de la société française META SYSTEMS jusqu'au 13 octobre 1999. Monsieur Alain R a été désigné comme inventeur du brevet américain n° US 6 240 376 intitulé « Method and apparatus for gate-level simulation of synthesized register transfer level designs with source-level debugging » déposé le 31 juillet 1998 par la société américaine MENTOR GRAPHICS CORPORATION.

Page 2

Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

La société META SYSTEMS se présente comme une société française spécialisée dans la création et le développement d'outils et de solutions informatiques pour la production de systèmes électroniques. La société META SYSTEMS appartient au groupe MENTOR GRAPHICS. La société MENTOR GRAPHICS CORPORATION est une société de droit américain qui dirige le groupe MENTOR GRAPHICS.

Par acte d'huissier en date des 2 et 13 janvier 2015, enregistré au rôle au numéro 16/00961, Monsieur Alain R a fait citer la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION devant le Tribunal de grande instance de Paris aux fins de les voir condamner au paiement, sur le fondement de l'article L. 611- 7 du Code de la propriété intellectuelle, d'une rémunération supplémentaire pour l'invention objet du brevet US'376 réalisée dans l'exécution de ses fonctions au sein de la société META SYSTEMS.

Le 17 juin 2015, la société META SYSTEMS a saisi la Commission Nationale des Inventions de Salariés (« CNIS ») aux fins de voir qualifier d'invention de mission l'invention réalisée par Monsieur R dans le cadre de ses fonctions au sein la société META SYSTEMS.

Par conclusions notifiées par voie électronique le 17 juin 2015, la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION ont sollicité du juge de la mise en état un sursis à statuer dans l'attente de la réception de la proposition de conciliation de la CNIS.

Sans statuer sur cette demande, le juge de la mise en état a renvoyé l'affaire au 18 février 2016, dans l'attente de la décision de la CNIS.

Parallèlement à la procédure initiée en France, la société MENTOR GRAPHICS CORPORATION a, par requête du 16 février 2016, saisi le Tribunal de District pour la Californie du Nord ( United States District Court, Northern District of California) d'une demande d'information (procédure de discovery) dirigée à rencontre de Monsieur Alain R, résidant en Californie, aux fins d'obtenir, sur le fondement de l'article 1782 du titre 28 du Code « USC », pour un usage dans le cadre de la procédure engagée devant le tribunal de grande instance de Paris, des informations permettant, d'une part, d'établir sa connaissance de l'exploitation et de la valeur du brevet susvisé.

Par conclusions notifiées par voie électronique le 26 février 2016, faisant suite à la saisine de la juridiction américaine par la société MENTOR GRAPHICS CORPORATION, Monsieur R a sollicité du juge de la mise en état de voir :

- Ordonner à la société MENTOR GRAPHICS CORPORATION de retirer sa demande de Discovery présentée le 16 février 2016 devant le Tribunal du District Nord de Californie et si celle-ci a déjà été accordée, d'y renoncer, et d'en justifier à Monsieur R sous astreinte de 100 000 € par jour passé un délai de 24 heures après le premier de ces deux événements le prononcé de l'ordonnance sollicitée ou son envoi par le greffe aux conseils des parties via le RPVA ;

- Ordonner à la société MENTOR GRAPHICS CORPORATION de communiquer à Monsieur R par attestation de son dirigeant avec mention des dispositions de l'article 441-7 du Code pénal, la liste et la copie de l'intégralité des pièces présentées au juge américain du District Nord de Californie à l'appui de la demande de Discovery du 16 février 2016 et de ses suites sous astreinte de 10 000 € au bénéfice de Monsieur R par semaine de retard passé un délai de 7 jours après le premier de ces deux événements le prononcé de l'ordonnance sollicitée ou son envoi par le greffe aux conseils des parties par le RPVA.

La CNIS a rendu sa décision le 22 mars 2016 proposant une conciliation entre les parties en fixant le montant de la rémunération supplémentaire afférente à l'invention à la somme globale et définitive de 35 000 euros brute.

Aux termes de conclusions du 30 mars 2016, Monsieur R a indiqué qu'il n'acceptait pas la proposition de conciliation de la CNIS et a, par assignation en date des 14 et 15 avril 2016, enregistrée au rôle au numéro RG

Copyright © 2019 LexisNexis. Tous droits réservés.



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

16/06083, délivrée aux sociétés MENTOR GRAPHICS CORPORATION et META SYSTEMS, saisi à le Tribunal de grande instance de Paris.

Ces affaires ont été jointes à l'affaire RG 15/00961 par mention au dossier le 23 juin 2016.

Par conclusions notifiées par voie électronique le 31 mars 2016, la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION ont saisi le juge de la mise en état d'un incident aux fins de :

- DECLARER nulles les assignations délivrées les 2 et 13 janvier 2015 respectivement à la société Meta Systems et à MENTOR GRAPHICS CORPORATION ;

- SE DECLARER incompétent pour ordonner à la société MENTOR GRAPHICS CORPORATION de retirer sa demande de Discovery présentée le 16 février 2016 devant le Tribunal du District Nord de Californie ;

- DIRE Monsieur R mal fondé dans sa demande,

- CONSTATER que la liste et la copie de l'intégralité des pièces présentées au juge américain du District Nord de Californie à l'appui de la demande de Discovery du 16 février 2016 ont été transmises au conseil de Monsieur R le 30 mars 2016 ;

En conséquence,

- REJETER le surplus des demandes formulées par Monsieur R,

- CONDAMNER Monsieur R à payer conjointement à Meta Systems et MENTOR GRAPHICS CORPORATION la somme de 10.000 € au titre de l'article 700 du code de procédure civile ;

- CONDAMNER Monsieur R aux entiers dépens.

Au soutien de leurs demandes, la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION exposent notamment que les assignations des 2 et 13 janvier 2015 encourent la nullité en application des dispositions de l'article 56 du Code de procédure civile, faute pour Monsieur R d'avoir chiffré sa demande, sollicitant seulement que MENTOR GRAPHICS CORPORATION et Meta Systems soient condamnées à payer à Monsieur R la rémunération supplémentaire pour son invention ayant fait l'objet du brevet américain US 6 240 376 , sans fournir aucun élément de nature à permettre aux juges d'évaluer leur montant et ce alors qu'il est de jurisprudence constante que les prétentions du demandeur doivent être exposées dès l'assignation avec un degré de précision suffisant.

Par conclusions notifiées par voie électronique le 11 juillet 2016, Monsieur Alain R demande au juge de la mise en état de :

- Dire irrecevable à tout le moins mal fondée la demande en nullité de l'assignation délivrée les 30 décembre 2014 pour tentative et les 2 et 13 janvier 2015 aux sociétés META SYSTEMS et MENTOR GRAPHICS CORPORATION.

- Rejeter toutes les demandes des sociétés META SYSTEMS et MENTOR GRAPHICS CORPORATION.

- Ordonner à la société MENTOR GRAPHICS CORPORATION de transmettre au Tribunal du District Nord de Californie, la copie intégrale et traduite des conclusions prises au nom de Monsieur R le 13 avril 2016 devant le Juge de la Mise en État et le 13 avril 2016 au Tribunal et celles du 23 avril 2016 devant le Juge de la Mise en État et les présentes écritures sous astreinte à hauteur de 5 000 € par jour de retard au bénéfice de Monsieur R passé un délai de 48 heures après le prononcé de la décision sollicitée ou son envoi par le greffe aux conseils des parties via le RPVA et d'en avoir justifié à Monsieur R.

Page 4

Copyright © 2019 LexisNexis. Tous droits réservés.

Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

- Interdire à la société MENTOR GRAPHICS CORPORATION et à la société META SYSTEMS d'invoquer aux débats les pièces et informations éventuellement obtenues par cette Discovery tant que le Tribunal de grande Instance de Paris n'aura pas statué sur l'utilité de cette Discovery.

- Ordonner aux sociétés MENTOR GRAPHICS CORPORATION et META SYSTEMS de communiquer les rapports d'expert de Dr. Majid S, Stephen A. D, Suzanne S, Charlie S, et de James K qu'ils ont déposés devant le Tribunal Fédéral de l'Oregon ayant donné lieu à la décision du 10 octobre 2014, sous astreinte à hauteur de 100 € par jour de retard et par rapport omis au bénéfice de Monsieur R passé un délai de 15 jours après le prononcé de la décision sollicitée ou son envoi par le greffe aux conseils des parties via le RPVA.

- Se réserver la liquidation d'astreinte.

- Condamner solidairement la société MENTOR GRAPHICS CORPORATION et la société META SYSTEMS à payer la somme de 3 500 € à Monsieur R en application de l'article 700 du Code de procédure civile.

- Condamner solidairement la société MENTOR GRAPHICS CORPORATION et la société META SYSTEMS aux dépens au profit de Me Philippe Schmitt.

Au soutien de ses demandes, Monsieur R soulève l'irrecevabilité du moyen tiré de la nullité de l'assignation aux motifs que l'article 74 du Code de procédure civile pose le principe de la concentration du contentieux des exceptions de procédure en début d'instance et que les conclusions en nullité du 31 mars 2016 étant intervenues après les conclusions du 17 juin 2015 en demande de sursis de la procédure dans l'attente de la décision de la CNIS que la société META SYSTEMS a saisi par courrier du 17 juin 2015 de son conseil, ces conclusions en nullité de l'assignation sont irrecevables pour violation de l'article 74 du Code de procédure civile. Il ajoute que cette demande en nullité est sans incidence procédurale dès lors qu'il a saisi à nouveau en application de l'article L. 615-21 du code de la propriété intellectuelle, le Tribunal de grande instance de Paris, par assignation des 14 et 15 avril 2016 (RG 16/06083), et que cette instance a été jointe avec l'assignation des 2 janvier 2015 et 13 janvier 2015 étant observé que les sociétés META SYSTEMS et MENTOR GRAPHICS CORPORATION ne contestent pas la validité de cette seconde assignation.

Monsieur R ajoute que la procédure de discovery engagée par la société MENTOR GRAPHICS CORPORATION devant le tribunal du District Nord de Californie est sans utilité dans le cadre du présent litige dès lors que la Cour de cassation considère que le point de départ du délai de prescription de 5 ans applicable à l'action tendant à obtenir le paiement d'une rémunération supplémentaire est celui de la connaissance par le salarié non seulement du principe de cette rémunération mais aussi de son quantum de telle sorte que le délai ne court qu'à compter du jour où le salarié dispose des éléments nécessaires au calcul de la rémunération supplémentaire. Il estime donc que la seule date à laquelle il aurait été informé de l'exploitation du brevet US 376 que vise à rechercher la procédure de discovery est insuffisante à faire courir le délai de prescription et que la société MENTOR GRAPHICS CORPORATION devait informer le juge américain sur l'exigence de ces deux conditions. Il demande dès lors au juge de la mise en état d'ordonner sous astreinte à la société MENTOR GRAPHICS CORPORATION de transmettre au juge américain ces éléments ainsi que la copie de ses écritures devant le juge de la mise en état.

Monsieur R soutient en outre que dans le cadre de cette procédure de discovery, les règles de confidentialité applicables devant la CNIS en vertu des articles L. 615-21 et R. 615-28 du code de la propriété intellectuelle ont été méconnues dès lors que les déclarations de Monsieur R devant cette commission ont été évoquées dans le cadre de la procédure de discovery et qu'il a été dissimulé au juge américain l'effet suspensif de toute procédure à la suite de la saisine de la CNIS. Monsieur R considère que les informations qui seraient obtenues par cette procédure de discovery ne peuvent pas être examinées par le juge français dès lors que cette demande de discovery intervient en dehors de toute demande de commission rogatoire prévue par la convention de LA HAYE du 18 mars 1970 ; que cette procédure est contraire à la demande de sursis présentée par la société MENTOR GRAPHICS CORPORATION devant le juge de la mise en état, ce qui est contraire au principe de l'estoppel et qu'aucune des

Copyright © 2019 LexisNexis. Tous droits réservés.



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

décisions de jurisprudence citées ne démontre que le juge français a d'ores et déjà accepté des informations obtenues par une discovery.

Monsieur R fait valoir que l'objet réel de cette procédure de discovery est de le contraindre financièrement pour le faire renoncer à sa propre demande étant observé que les demandes de la société MENTOR GRAPHICS CORPORATION sont très vastes puisqu'elles visent non seulement à déterminer la connaissance par le salarié de l'exploitation de l'invention mais aussi toutes exploitations par tous tiers qui pourraient avoir porté atteinte au brevet et ce sans limitation de temps.

Il sollicite en outre afin de pouvoir disposer des éléments lui permettant de déterminer le montant de la rémunération qu'il estime lui être due, la communication des documents produits par la société MENTOR GRAPHICS CORPORATION devant le juge américain, dont seule une partie lui a été communiquée.

Par conclusions notifiées par voie électronique en date du 6 septembre 2016, la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION demandent au juge de la mise en état, au visa des articles L. 611-7, L. 615-21 et R. 615-25 du Code de la propriété intellectuelle, de :

- DIRE Monsieur R irrecevable et mal fondé dans sa demande d'interdiction de production de pièces obtenues lors de la Discovery américaine,

- CONSTATER que la société MENTOR GRAPHICS CORPORATION a transmis au juge américain l'ensemble des écritures prises par les parties dans le cadre de la procédure au fond ainsi que d'incident ;

- CONSTATER que les sociétés MENTOR GRAPHICS CORPORATION et Meta Systems ont communiqué à Monsieur R les pièces qu'il a réclamées à l'exception de celles couvertes par la confidentialité,

En conséquence,

- REJETER l'ensemble des demandes formulées par Monsieur R,

- CONDAMNER Monsieur R à payer conjointement à Meta Systems et MENTOR GRAPHICS CORPORATION la somme de 20.000 € au titre de l'article 700 du CPC ;

- CONDAMNER Monsieur R aux entiers dépens de l'incident.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION, qui précisent qu'elles ne maintiennent pas leurs demandes de nullité de l'assignation, exposent qu'aucune décision n'a été rendue à ce jour par les juridictions américaines sur cette demande de production de documents et de déposition et que le Tribunal américain a été informé non seulement de l'incident soulevé par Monsieur R en France devant le juge de la mise en état mais également qu'il avait sollicité la fixation d'une audience de plaidoirie pour évoquer cet incident et ajoutent que le Tribunal américain a sollicité de la société MENTOR GRAPHICS CORPORATION qu'elle le tienne informé de la décision à intervenir, celle-ci pouvant affecter sa décision d'octroyer ou non la mesure de Discovery.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION considèrent qu'aucune déloyauté procédurale ne peut être reprochée à la société MENTOR GRAPHIC CORPORATION étant observé qu'elles n'ont jamais indiqué que le juge américain n'examinerait sa demande de Discovery, qu'à la lumière de la décision du juge français, ni qu'il attendrait la décision du juge français pour examiner la recevabilité de la demande de Discovery - et encore moins qu'il aurait suspendu l'examen de cette demande de Discovery mais seulement que le juge américain pourrait refuser de faire droit à la demande de production de documents si la juridiction française décide que cette production n'est pas recevable.

Page 6

Copyright © 2019 LexisNexis. Tous droits réservés.

Lexis 360°

Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION ajoutent qu'il ne peut leur être reproché une déloyauté envers le juge américain, dont l'appréciation au demeurant devrait relever de ce seul juge et ce alors que la société MENTOR GRAPHICS CORPORATION a répondu aux demandes du magistrat américain sans qu'une quelconque dissimulation d'information ne puisse lui être reprochée. Elles précisent qu'après avoir informé le juge américain de la contestation par Monsieur R de la demande en Discovery, celui-ci a demandé dans son ordonnance du 24 mars 2016 à être informé des développements relatifs à la décision sur les contestations de Monsieur R, sans toutefois solliciter la communication de document particulier. Elles estiment ainsi que la société MENTOR GRAPHICS CORPORATION a transmis au juge américain le 20 juin 2016, les conclusions de Monsieur R du 26 février 2016, les conclusions des défenderesses du 31 mars 2016 et le 20 juillet 2016, les conclusions de Monsieur R du 13 avril 2016 (incident et fond), du 24 avril 2016 et du 11 juillet 2016.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION considèrent sur les arguments relatifs à l'inutilité de la procédure de discovery, que la décision de la cour de cassation citée du 12 juin 2012 a été rendue sous l'empire de la loi ancienne et non de l'article 2224 du code civil issu de la réforme de la prescription par la loi du 17 juin 2008, applicable en l'espèce, et qu'aux termes de cet article, c'est la preuve de la connaissance par Monsieur R de ce que la qualification d'invention de mission était acquise et lui ouvrait droit à la rémunération supplémentaire, ou à tout le moins de l'exploitation de l'invention - recherchée dans la Discovery - qui doit être regardée comme la connaissance par ce dernier des faits lui permettant d'exercer son éventuel droit à rémunération supplémentaire et qui est donc susceptible de faire courir la prescription à son encontre. Elles estiment en conséquence que cette procédure est utile et qu'en tout état de cause, M. R est irrecevable à former une demande concernant l'interdiction de pièces qui n'ont pas encore été obtenues lors de la procédure de Discovery, étant ajouté qu'il ne peut être déclaré que les informations éventuellement obtenues dans le cadre de la procédure de Discovery ne sont pas utiles au litige, avant même d'avoir connaissance de ces éléments.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION font en outre valoir que la Convention de La Haye du 18 mars 1970 n'est pas exclusive de l'utilisation d'autres mécanismes juridiques, notamment par les parties de telle sorte que les preuves obtenues sur le fondement de la Section 28, paragraphe 1782 USC, sont recevables devant le juge de la mise en état et que si en application de l'article 771 du code de procédure civile, le juge de la mise en état est « seul compétent » pour « ordonner [...] toute mesure d'instruction », cette compétence exclusive n'existe que par rapport aux autres formations du Tribunal et signifie qu'elle n'existe que dans le cas où les parties souhaitent obtenir une mesure d'instruction une fois le juge de la mise en état désigné, par rapport aux autres formations du tribunal saisi.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION indiquent également que le fait d'avoir saisi les juridictions américaines d'une demande de production de documents afin de les utiliser devant le Tribunal de grande instance alors qu'un sursis avait par ailleurs été sollicité devant cette même juridiction, ne constitue en aucun cas un estoppel, les deux actions initiées dont Monsieur R prétend qu'elles sont contradictoires n'étant pas de la même nature dès lors que le sursis à statuer n'est absolument pas contradictoire avec le fait d'initier en parallèle une procédure dont le seul objet est d'obtenir des éléments de preuve afin de nourrir l'argumentation développée au fond dans le cadre de l'instance pendante devant le Tribunal de grande instance.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION estiment en outre qu'elles n'ont pas violé le principe de confidentialité applicable devant la CNIS étant ajouté que ce principe, qui ne s'applique pas à l'existence d'une procédure CNIS, ni à la proposition qui serait faite par la CNIS, a été rappelé au juge américain le 15 février 2016. Elles soutiennent qu'il est dès lors indiscutable que les juridictions françaises accueillent favorablement les preuves obtenues auprès de juridictions étrangères dès lors que les règles fondamentales du procès sont respectées, Monsieur R n'apportant aucun élément en sens contraire.

Elles précisent qu'elles n'ont rien à cacher à Monsieur R concernant le contenu et les modalités d'exercice de la procédure initiée aux États-Unis sur le fondement de la Section 28 § 1782 USC et que l'intégralité de ces

Page 7

Copyright © 2019 LexisNexis. Tous droits réservés.



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

documents est d'ailleurs disponible en ligne aux États-Unis et est accessible facilement à travers la plateforme judiciaire PACER. Elles précisent qu'elles ont produit sous bordereau la liste complète des documents déposés dans le cadre de cette procédure à la date du 30 mars 2016, ainsi que le courrier de transmission de ces documents au conseil français de Monsieur R le 30 mars 2016.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION ajoutent enfin qu'elles ont communiqué aussi à Monsieur R les documents relatifs à la procédure en contrefaçon du brevet US'376 devant le tribunal de l'Oregon ainsi que les informations complémentaires à la suite d'une sommation de communiquer du 21 avril 2016, s'agissant des documents qui n'étaient pas couvertes par des obligations de confidentialité. Elles précisent que les rapports qui n'ont pas été transmis à Monsieur R contiennent des informations confidentielles et qu'ils n'ont pas, à tout le moins en intégralité, été versés aux débats devant le Tribunal de l'Oregon.

MOTIFS DE LA DECISION

Sur le moyen tiré de la nullité des assignations délivrées les 2 et 13 janvier 2015 ;

Aux termes de ses dernières conclusions, la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION ont renoncé à invoquer la nullité des assignations de telle sorte qu'il convient d'en prendre acte.

Sur la demande tendant à voir ordonner à la société MENTOR GRAPHICSCORPORATION de transmettre au Tribunal du District Nord de Californie, lacopie intégrale et traduite des conclusions prises au nom de Monsieur R dansle cadre du litige devant le tribunal de grande instance de Paris,

Il convient de constater que la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION justifient avoir produit le 20 juillet 2016 dans la procédure de discovery engagée devant le juge américain une copie des conclusions produites par Monsieur R devant le juge de la mise en état, avec leur traduction, à savoir ses conclusions du13 avril 2016 devant le juge de la Mise en État et devant le Tribunal au fond et celles du 23 avril 2016 devant le juge de la mise en État.

La société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION justifient en outre de la transmission complémentaire à la même date et sous la même forme au juge américain des dernières conclusions de Monsieur R notifiées en date du 11 juillet 2016 portant sur l'incident de mise en état tranché par la présente ordonnance.

Cette demande, étant satisfaite, sera en conséquence rejetée.

Sur la demande tendant à interdire à la société MENTOR GRAPHICSCORPORATION et à la société META SYSTEMS d'invoquer aux débats les pièceset informations éventuellement obtenues par cette Discovery tant que leTribunal de grande Instance de Paris n'aura pas statué sur l'utilité de cetteDiscovery ;

Sur le moyen tiré de la déloyauté de la société META SYSTEMS et la sociétéMENTOR GRAPHICS CORPORATION dans le cadre de la procédure de discovery ;

Il ressort des pièces versées aux débats que la société MENTOR GRAPHICS CORPORTATION justifie avoir dès le 2 mars 2016 informé le juge américain de l'opposition de Monsieur R à cette procédure de discovery du fait de la procédure engagée devant le tribunal de grande instance de Paris, cette information ayant au demeurant conduit le juge américain à solliciter par ordonnance du 24 mars 2016 qu'il soit tenu informé par la société MENTOR GRAPHIC CORPORTATION de l'état d'avancement de cette procédure considérant que celle-ci pouvait avoir une incidence sur la demande de discovery.

Copyright © 2019 LexisNexis. Tous droits réservés.



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

Cette information a été apportée au juge américain par la production par la société MENTOR GRAPHICS CORPORRATION de plusieurs rapports (« status report ») qu'elle a adressés à ce juge notamment les 20 et 30 juin 2016 pour le tenir informé de l'état de la procédure de mise en état en France.

En outre, il n'est pas contesté que le 30 mars 2016, les conseils de la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION ont transmis au conseil de Monsieur Alain R l'ensemble des pièces qui ont été transmises par elles au juge américain de telle sorte que ce dernier a une parfaite connaissance des termes du débat engagé devant le juge américain et qu'il ne peut être imputé à la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION une attitude déloyale alors au surplus qu'à ce stade, tant que l'ordonnance du juge américain n'a pas été rendue pour statuer sur la recevabilité de la demande de discovery, la procédure devant ce juge n'est pas censée être contradictoire.

L'ensemble de ces transmissions permet ainsi de donner au juge américain, au 20 juillet 2016, une vision complète et fidèle de l'état à cette date du litige en France et des questions et contestations émises par Monsieur R de telle sorte que ce dernier ne peut être suivi lorsqu'il soutient que la procédure engagée devant le juge américain ne l'a pas été de manière loyale.

Sur la recevabilité des éléments de preuve issus de la procédure de discovery devantle juge français ;

Ni la convention de La HAYE du 18 mars 1970 sur l'obtention de preuve à l'étranger, ni les règles du code de procédure civile ne s'opposent à ce qu'il soit fait état par une partie au cours de la présente instance engagée en France de témoignages recueillis dans le cadre d'une procédure de discovery engagée parallèlement aux États-Unis, dès lors que ces éléments de preuve ont été recueillies par une autorité compétente en vertu de la loi applicable devant cet État et selon les formes définies par cette loi étant observé qu'il appartiendra au juge français d'en apprécier la valeur probante et l'incidence sur le fond du litige qui lui est soumis.

À cet égard, il n'est pas démontré par Monsieur R, qui réside aux États-Unis, que la procédure de discovery engagée serait contraire au droit applicable dans cet État étant observé qu'elle l'est sur le fondement de la Section 28, paragraphe 1782 du Code des États-Unis (« USC ») selon lequel un tribunal du district dans lequel une personne réside ou se trouve peut lui ordonner de fournir son témoignage ou sa déclaration ou de produire un document ou tout autre chose destiné à être utilisé dans une procédure devant un tribunal étranger ou international, y compris dans une enquête pénale avant une mise en accusation formelle.

Il convient dès lors de rejeter ce moyen.

Sur l'inutilité des éléments de preuve recherchés dans le cadre de l'instance engagéedevant le tribunal de grande instance de Paris ;

Dans le cadre de l'action engagée par Monsieur R devant le présent tribunal, il appartient au seul tribunal de grande instance, statuant au fond, d'apprécier le bienfondé du moyen tiré de la prescription de l'action en paiement invoqué par la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION, le juge de la mise en état n'étant pas compétent aux termes de l'article 771 du code de procédure civile pour statuer sur une telle fin de non-recevoir.

Dès lors, le juge de la mise en état n'est pas compétent pour apprécier l'utilité ou non des éléments de preuve qui pourraient être recueillies dans le cadre de la procédure engagée devant le juge américain et il n'y a pas lieu d'interdire par principe la production de ces éléments avant que le tribunal statue au fond pour en apprécier l'utilité, ce d'autant que ces éléments ne sont pas encore disponibles, l'ordonnance du juge américain statuant sur la recevabilité de la procédure de discovery engagée devant lui n'ayant pas à ce jour été rendue.

Il convient dès lors de rejeter ce moyen.

Page 9

Copyright © 2019 LexisNexis. Tous droits réservés.



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

Sur le moyen tiré de l'irrecevabilité de la procédure américaine fondée sur le principede l'estoppel ;

Le moyen tiré de l'estoppel s'analyse en une fin de non-recevoir, laquelle tend à faire déclarer irrecevable l'adversaire en sa demande sans examen au fond.

En application de l'article 771 du code de procédure civil, le juge de la mise en état n'est compétent pour statuer sur une telle fin de non-recevoir.

Ce moyen sera en conséquence rejeté.

Au regard de l'ensemble de ces éléments, il convient en conséquence de débouter Monsieur R de sa demande d'interdiction précitée.

Sur la demande de communication de pièces formée par Monsieur R ;

En application de l'article 771 du code de procédure civile, le juge de la mise en état est compétent pour ordonner, même d'office, toute mesure d'instruction.

Il ressort des débats qu'une action en contrefaçon du brevet US 376 a été engagée par la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION devant le Tribunal Fédéral de l'Oregon à l'encontre des sociétés EVE et SYNOPSIS aux termes duquel ce Tribunal a condamné ces deux sociétés au paiement d'une somme de 36 millions de dollars pour ces faits de contrefaçon.

Par sommation en date du 21 avril 2006, Monsieur R a sollicité la communication par la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION des documents relatifs à cette procédure en contrefaçon du brevet US 376.

Il n'est pas contesté que plusieurs documents relatifs à cette procédure ont été communiquées à Monsieur R le 8 juin 2016 à l'exception de l'intégralité des rapports d'expert de Dr. Majid S, Stephen A. D, Suzanne S, Charlie S, et de James K qu'ils ont déposés devant le Tribunal Fédéral de l'Oregon ayant donné lieu à la décision du 10 octobre 2014.

Si la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION exposent que ces documents n'ont pas été communiquées en intégralité à Monsieur R parce qu'ils sont confidentiels, aucun élément n'est produit ni même invoqué pour étayer la confidentialité dont il est fait état au regard notamment de l'objet et du contenu de ces documents.

Dès lors, l'opposition de principe de la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION n'est pas fondée et ce alors que les débats qui ont pu naître dans le cadre de l'action en contrefaçon du brevet 376, notamment sur l'évaluation de leur préjudice ayant conduit le tribunal de l'Oregon au prononcé d'une condamnation d'un montant de 36 millions de dollars, sont de nature à éclairer les débats qui pourront naître sur la valorisation dudit brevet dans le cadre de l'action engagée devant le tribunal de grande instance de Paris.

Il convient dès lors de faire droit à la demande de communication desdits documents sous astreinte étant précisé que cette communication portera sur les seuls documents dans la version effectivement produite devant le Tribunal de l'Oregon et que cette communication sera faite dans un premier temps entre les mains de tel huissier de justice désigné par Monsieur R et aux frais de ce dernier, les documents étant placés sous scellés auprès de cet huissier de justice.

Il appartiendra aux conseils des deux parties, en présence des parties uniquement s'il y a accord entre elles sur ce point et à défaut hors la présence des parties, d'examiner ensemble en présence de l'huissier de justice, le contenu

Page 10

Copyright © 2019 LexisNexis. Tous droits réservés.



Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

desdits documents placés sous scellés afin d'apprécier de l'intérêt et du bien-fondé de leur production dans la présente procédure, et en cas de difficultés d'en référer au juge de la mise en état.

Sur les dépens et les frais irrépétibles

Chacune des parties ayant succombé partiellement dans ses prétentions, il convient de laisser à leur charge respective les frais et dépens liés au présent incident et de les débouter de leurs demandes formées au titre de l'article 700 du code de procédure civile.

PAR CES MOTIFS

Statuant par ordonnance contradictoire rendue publiquement par mise àdisposition au greffe, non susceptible de recours indépendamment du jugementstatuant sur le fond ;

- Constatons que la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION renoncent à invoquer la nullité des assignations délivrées les 2 et 13 janvier 2015 ;

- Ordonnons la communication par la société META SYSTEMS et la société MENTOR GRAPHICS CORPORATION à tel huissier de justice désigné par Monsieur Alain R, et aux frais de ce dernier, des rapports de Dr. Majid S, Stephen A. D, Suzanne S, Charlie S, et de James K tels qu'ils ont déposés devant le Tribunal Fédéral de l'Oregon ayant donné lieu à la décision du 10 octobre 2014, sous astreinte provisoire de 300 € par jour de retard à l'issue d'un délai de 15 jours après la signification de la présente décision pendant un délai de 90 jours ;

- Disons que ces documents seront placés sous scellés auprès de l'huissier de justice désigné par Monsieur Alain R ;

- Disons qu'il appartiendra aux conseils des deux parties, en présence des parties uniquement s'il y a accord entre elles sur ce point, et à défaut, hors la présence des parties, d'examiner ensemble en présence de l'huissier de justice, le contenu desdits documents placés sous scellés afin d'apprécier de l'intérêt et du bien-fondé de leur production dans la présente procédure, et en cas de difficultés d'en référer au juge de la mise en état ;

- Disons que nous nous réservons la liquidation de l'astreinte ;

- Déboutons Monsieur Alain R de ses autres demandes ;

- Renvoyons cette affaire à l'audience du juge de la mise en état du 1er décembre 2016 à 10h00 aux fins de nouvelles conclusions au fond des parties et à défaut de clôture et fixation ;

- Disons que chacune des parties supportera les frais et dépens qu'elles ont exposés dans le cadre du présent incident de mise en état ;

**Pour aller plus loin :**

**Jurisprudence**

:- Paris, 23 mars 2018, n° 15/00961

**Titrage**

Copyright © 2019 LexisNexis. Tous droits réservés.

Lexis 360°

Reference : Aucune
Document consulté sur https://www.lexis360.fr
Jurisprudence
Téléchargé le 16/12/2019

:- Invention de salarié, Invention de mission, Proposition de conciliation de la CNISProcédure, Production de pièces, Procédure de discovery, Droit international (Procédure, Compétence matérielle, Juge de la mise en étatProcédure, Demande d'irrecevabilité, Principe de l'estoppel, Compétence matérielle, Juge de la mise en étatProcédure, Communication de pièces, Confidentialité (Pièces).

**Sommaire**

Il ne peut être reproché une attitude déloyale à l'ancien employeur du salarié et à la société ayant déposé le brevet dont il est l'inventeur, dans le cadre de la procédure de discovery engagée par cette dernière devant un tribunal américain. En effet, cette société a informé le juge américain de l'opposition du salarié à la procédure, du fait d'une procédure parallèle engagée devant le tribunal de grande instance de Paris. En outre, les conseils des deux sociétés ont transmis au conseil du salarié l'ensemble des pièces qu'elles ont transmises au juge américain, de telle sorte que le salarié a une parfaite connaissance des termes du débat engagé devant le juge américain. L'ensemble de ces transmissions permettent à ce dernier d'avoir une vision complète et fidèle de l'état du litige intenté en France et des questions et contestations émises par le salarié.

Ni la convention de La Haye du 18 mars 1970 sur l'obtention de preuve à l'étranger, ni les règles du Code de procédure civile ne s'opposent à ce qu'il soit fait état par une partie au cours d'une instance engagée en France de témoignages recueillis dans le cadre d'une procédure de discovery engagée parallèlement aux États-Unis, dès lors que ces éléments de preuve ont été recueillis par une autorité compétente en vertu de la loi applicable devant cet État et selon les formes définies par cette loi. Il appartient au juge français d'en apprécier la valeur probante et l'incidence sur le fond du litige qui lui est soumis.

Il est fait droit à la demande de communication des documents relatifs à la procédure en contrefaçon du brevet dont le salarié est inventeur, intentée devant le tribunal de l'Oregon par le déposant à l'encontre d'un tiers. Aucun élément n'est produit ni même invoqué pour étayer la confidentialité de ces documents. Les débats qui ont pu naître dans le cadre de l'action en contrefaçon de ce brevet, notamment sur l'évaluation du préjudice, sont de nature à éclairer les débats qui pourront naître sur la valorisation du brevet dans le cadre de l'action en paiement de la rémunération supplémentaire engagée devant le tribunal de grande instance de Paris.

© Institut National de la Propriété Industrielle

Copyright © 2019 LexisNexis. Tous droits réservés.

# Tribunal de Grande Instance, Paris, 3rd Chamber, 2nd Section, September 29, 2016, No. 15/00961

**Tribunal de Grande Instance [Court of First Instance]**

**Paris**
**3rd Chamber, 2nd Section**

**Judgment**

**September 29, 2016**
**Case Number: 15/00961**

Mr. Alain R
Company META SYSTEMS (SARL) (Société à Responabilité Limitée [Limited Liability Company]),
Company MENTOR GRAPHICS CORPORATION

**Legal Proceedings**

**INPI (Institut National de la Propriété Industrielle [National Institute of Industrial Property]) notification**

**Sector**: PATENT

**INPI reference**: B20160137

**Patent title**: Method and apparatus for gate-level simulation of synthesized register transfer level designs with source-level debugging

**Nature of the decision** : FRENCH DECISION

**Patent registration number**: US 6240 376

**Parties**: R. (Alain) / META SYSTEMS SARL; MENTOR GRAPHICS CORPORATION (United States)

**Publication**: PIBD 2016, 1062, IIIB-944

**FRENCH REPUBLIC**
**IN THE NAME OF THE FRENCH PEOPLE**

TRIBUNAL DE GRANDE INSTANCE OF PARIS

DECISION OF THE PRETRIAL JUDGE issued on September 29, 2016

3rd Chamber, 2nd Section

Case No.: 15/00961

Summons of: January 2, 2015

## Lexis/360°

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

INTERLOCUTORY

PLAINTIFF

Mr. Alain R.

(UNITED STATES)

Represented by Maître Philippe SCHMITT, lawyer at the bar of PARIS, ID #A0677

DEFENDANTS

Company META SYSTEMS (SARL)

Le Pasteur Building

[...]

92360 MEUDON LA FORET

Company MENTOR GRAPHICS CORPORATION

8005 SW Boeckman Rd

Wilsonville

OREGON 97070 (UNITED STATES)

represented by Maître Grégoire DESROUSSEAUX of SCP (Société Civile Professionnelle [Professional Civil Partnership]) AUGUST & DEBOUZY and Associates, lawyers at the bar of PARIS, ID #P0438

PRETRIAL MAGISTRATE

François A., First Deputy Vice President

assisted by Jeanine R, acting as Clerk

ORAL ARGUMENTS

At the hearing of September 8, 2016, counsel were advised that the decision would be issued on September 29, 206.

JUDGMENT

Published by filing with the clerk's office

By an employment contract signed on February 15, 1996, Mr. Alain R was employed as an engineer with the French company META SYSTEMS until October 13, 1999. Mr. Alain R was designated as the inventor of American patent no. US 6 240 376 entitled "Method and apparatus for gate-level simulation of synthesized register transfer level designs with source-level debugging" filed on July 31, 1998 by the American company MENTOR GRAPHICS CORPORATION.

Copyright ©2019 LexisNexis.All rights reserved,

## Lexis/360°

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

The company META SYSTEMS presents itself as a French company that specializes in creating and developing computer solutions and tools for producing electronics systems. META SYSTEMS belongs to the MENTOR GRAPHICS Group. MENTOR GRAPHICS CORPORATION is a company under American law which directs the MENTOR GRAPHICS Group.

In a writ served by a bailiff dated January 2 and 13, 2015, recorded under number 16/00961, Mr. Alain R had META SYSTEMS and MENTOR GRAPHICS CORPORATION summoned before the Tribunal de Grande Instance of Paris for the purpose of having them ordered to pay additional compensation on the basis of Article L.611-7 of the French Code of Intellectual Property for the invention that is the subject matter of patent US 376, which was created while performing his duties at META SYSTEMS.

On June 17, 2015, META SYSTEMS filed a request with the National Commission on Employee Inventions ("CNIS" [Commission Nationale des Inventions de Salariés]) to categorize the invention that Mr. R created in the context of his duties at META SYSTEMS as a work-related invention.

In submissions filed electronically on June 17, 2015, META SYSTEMS and MENTOR GRAPHICS CORPORATION asked the pretrial judge to stay proceedings in anticipation of receiving the CNIS conciliation proposal.

Without ruling on this request, the pretrial judge postponed the case until February 18, 2016 in anticipation of the CNIS decision.

In parallel with the proceedings initiated in France, MENTOR GRAPHICS CORPORATION filed a request for information (discovery procedure) on February 16, 2016 with the United States District Court, Northern District of California directed at Mr. Alain R, a California resident, for the purposes of obtaining, on the basis of 28 U.S.C. § 1782, information that would make it possible to establish his knowledge of the use and value of the aforementioned patent, for use in the context of the proceedings before the Tribunal de Grande Instance of Paris.

In submissions filed electronically on February 26, 2016, in response to the suit filed in the American court by MENTOR GRAPHICS CORPORATION, Mr. R asked that the pretrial judge:

- Order MENTOR GRAPHICS CORPORATION to withdraw its discovery request made on February 16, 2016 before the US District Court for the Northern District of California and, if it had already been granted, to waive it and to send proof of same to Mr. R subject to a penalty of €100,000 per day of delay following a period of 24 hours after the first of these two events: issuance of the order or its dispatch by the clerk's office to the parties' counsel via the RPVA (Réseau Privé Virtuel des Avocats [Lawyers' Virtual Private Network]).

- Order MENTOR GRAPHICS CORPORATION to send Mr. R by an affidavit from its director with reference to the provisions of Article 441-7 of the French Criminal Code, a list and a copy of all the documents presented to the American judge of the Northern District of California in support of the discovery request of February 16, 2016 and any follow-up thereto, subject to a penalty of €10,000 to be paid to Mr. R for each week of delay, following a period of 7 days after the first of these two events: the issuance of the requested order or its dispatch by the clerk's office to the parties' counsel via the RPVA.

The CNIS issued its decision on March 22, 2016 proposing a conciliation between the parties and setting the amount of additional compensation related to the invention at the final and total sum of 35,000 euros gross.

Page 3

Copyright ©2019 LexisNexis.All rights reserved,

**Lexis/360°**

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

In submissions dated March 30, 2016, Mr. R indicated that he did not accept the CNIS conciliation proposal and he filed suit with the Tribunal de Grande Instance of Paris, by a summons dated April 14 and 15, 2016, recorded under case number RG 16/06083, delivered to MENTOR GRAPHICS CORPORATION and META SYSTEMS.

These cases were joined to case RG 15/00961 in a note to the case file on June 23, 2016.

In submissions filed electronically on March 31, 2016, META SYSTEMS and MENTOR GRAPHICS CORPORATION filed a motion asking the pretrial judge to:

- DECLARE the summonses delivered on January 2 and 13, 2015 to Meta Systems and MENTOR GRAPHICS CORPORATION, respectively, null and void;

- DECLARE that the court did not have jurisdiction to order MENTOR GRAPHICS CORPORATION to withdraw its discovery request submitted on February 16, 2016 to the District Court of the Northern District of California;

- RULE that Mr. R's suit is groundless;

- FIND that a list and a copy of all the documents presented to the American judge of the Northern District of California in support of the discovery request of February 16, 2016 were sent to Mr. R's counsel on March 30, 2016;

And, as a result,

- REJECT the additional requests made by Mr. R;

- ORDER Mr. R to pay Meta Systems and MENTOR GRAPHICS CORPORATION jointly the sum of €10,000 under Article 700 of the French Code of Civil Procedure;

- ORDER Mr. R to pay all costs.

In support of their requests, META SYSTEMS and MENTOR GRAPHICS CORPORATION

state, in particular, that the summonses of January 2 and 13, 2015 are null and void pursuant to the provisions of Article 56 of the French Code of Civil Procedure, since Mr. R has failed to quantify his claim, requesting only that MENTOR GRAPHICS CORPORATION and Meta Systems be ordered to pay Mr. R the additional compensation for his invention covered by American patent US 6 240 376, without providing any evidence that would enable the judges to assess their amount, even though it is settled jurisprudence that a plaintiff's claims must be set forth with a sufficient degree of precision at the time a summons is issued.

In submissions filed electronically on July 11, 2016, Mr. Alain R. asked the pretrial judge to:

- Rule that the motion to invalidate the summons issued on December 30, 2014 and attempted on January 2 and 13, 2015 to META SYSTEMS and MENTOR GRAPHICS CORPORATION is groundless.

- Reject all the requests of META SYSTEMS and MENTOR GRAPHICS CORPORATION.

- Order MENTOR GRAPHICS CORPORATION to send the District Court of the Northern District of California the full and translated copy of the submissions made on behalf of Mr. R on April 13, 2016 before the pretrial judge and on April 13, 2016 to the Court, and those of April 23, 2016 before the

Page 4

Copyright ©2019 LexisNexis.All rights reserved.

**Lexis/360°**

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

pretrial judge and the present writings, subject to a penalty of €5000 per day of delay paid to Mr. R beyond a period of 48 hours after the announcement of the requested decision or its dispatch by the clerk's office to the parties' counsel via the RPVA and to send proof to Mr. R.

- Prohibit MENTOR GRAPHICS CORPORATION and META SYSTEMS from entering into evidence any documents or information that may have been obtained by this discovery until the Tribunal de Grande Instance of Paris rules on the use of such discovery.

- Order MENTOR GRAPHICS CORPORATION and META SYSTEMS to send the expert reports by Dr. Majid S., Stephen A. D., Suzanne S., Charlie S., and James K., which they submitted to the Federal Court of Oregon having brought about the decision of October 10, 2014, under penalty of €100 paid to Mr. R per day of delay following a period of 15 days after the issuance of the decision in question or its dispatch by the clerk's office to the parties' counsel via the RPVA.

- Reserve the right to liquidate the penalty.

- Order MENTOR GRAPHICS CORPORATION and META SYSTEMS to jointly pay the sum of €3500 to Mr. R pursuant to Article 700 of the French Code of Civil Procedure.

Order MENTOR GRAPHICS CORPORATION and META SYSTEMS to jointly pay all costs to Maître Philippe Schmitt.

In support of its requests, Mr. R claims that the ground alleging the invalidity of the summons is inadmissible on the grounds that Article 74 of the French Code of Civil Procedure sets forth the principle of consolidation of procedural objections at the beginning of the proceedings and that, since the invalidity motion of March 31, 2016 occurred after the pleadings of June 17, 2015 regarding a stay of proceedings in anticipation of the CNIS decision that META SYSTEMS initiated by a letter from its counsel dated June 17, 2015, this motion to invalidate the summons is inadmissible because it violates Article 74 of the Civil Procedure Code. He adds that this motion for a declaration of invalidity is has no procedural implications since he has brought a new action before the Tribunal de Grande Instance Paris, pursuant to Article L. 61521 of the French Code of Intellectual Property by a summons dated April 14 and 15, 2016 (RG 16/06083), and that this case was joined to the summons of January 2, 2015 and January 13, 2015, noting that META SYSTEMS and MENTOR GRAPHICS CORPORATION do not dispute the validity of this second summons.

Mr. R adds that the discovery procedure initiated by MENTOR GRAPHICS CORPORATION before the Court of the Northern District of California is irrelevant in the context of this case since the Court of Cassation considers that the starting point of the 5-year statute of limitation applicable to the action seeking to obtain payment of additional compensation is that of the employee's knowledge, not only of the principle of such compensation, but also of its amount, such that the period runs does not run until the day on which the employee has the elements necessary to calculate the additional compensation. He therefore believes that the date on which he was informed of the use of patent US 376, which the discovery procedure aimed to research, is insufficient to start the limitation period and that MENTOR GRAPHICS CORPORATION should have informed the US judge about the requirement of these two conditions. He therefore asks the pretrial judge to order MENTOR GRAPHICS CORPORATION under penalty to send these items to the American judge, as well as a copy of its submissions to the pretrial judge.

Mr. R further maintains that, in the context of this discovery procedure, the confidentiality rules applicable to the CNIS case pursuant to Articles L.615-21 and R.615-28 of the French Code of Intellectual Property were misunderstood when Mr. R's statements before this commission were raised

Page 5

Copyright ©2019 LexisNexis,All rights reserved,

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

# Lexis/360°

in the discovery procedure and that the suspensive effect of any procedure following the initiation of a case with the CNIS was hidden from the American judge. Mr. R believes that the information that would have been obtained by this discovery procedure cannot be examined by the French judge since this request for discovery takes place outside any letter rogatory provided for by THE HAGUE Convention of 18 March 1970; that this procedure is contrary to the request for a stay submitted by MENTOR GRAPHICS CORPORATION before the pretrial judge, which is contrary to the principle of estoppel, and that none of the cited jurisprudence demonstrates that the French court has already accepted information obtained by means of discovery.

Mr. R emphasizes that the real purpose of this discovery procedure was to financially constrain him in order to get him to withdraw his own claim, since the claims of MENTOR GRAPHICS CORPORATION are very broad as they not only attempt to determine the employee's knowledge of the use of the invention but also all uses by third parties which may have infringed the patent, without a time limit.

He further seeks, in order to have the evidence that would allow him to determine the amount of compensation he believes is due him, to receive the documents produced by MENTOR GRAPHICS CORPORATION before the American judge, only a portion of which had been sent to him,

In the submissions filed electronically on September 6, 2016, META SYSTEMS and MENTOR GRAPHICS CORPORATION ask the pretrial judge, pursuant to Articles L. 6117, L. 615-21 and R. 615-25 of the French Code of Intellectual Property to:

- RULE that Mr. R's request to forbid production of documents obtained during the American discovery procedure is inadmissible and groundless,

- FIND that MENTOR GRAPHICS CORPORATION sent the American judge all the writings taken by the parties in the context of the proceedings on the merits as well as the interlocutory proceedings,

- FIND that MENTOR GRAPHICS CORPORATION and Meta Systems sent Mr. R the documents he seeks, except for those covered by confidentiality,

And, as a result,

- REJECT all the requests made by Mr. R,

- ORDER Mr. R to pay Meta Systems and MENTOR GRAPHICS CORPORATION jointly the sum of €20,000 under Article 700 of the French Code of Civil Procedure;

- ORDER Mr. R to pay all costs.

META SYSTEMS and MENTOR GRAPHICS CORPORATION, who specify that they do not

maintain their requests to invalidate the summons, state that to date no decision has been rendered by the American courts on this request for the production of documents and for a deposition and that the US Court has been informed not only of the interlocutory motion raised by Mr. R in France before the pretrial judge, but also that it had requested that a hearing on the pleadings be scheduled to discuss this motion, and add that the US Court asked MENTOR GRAPHICS CORPORATION to keep it informed of the decision to come, which could affect its decision of whether or not to grant the discovery measure.

META SYSTEMS and MENTOR GRAPHICS CORPORATION believe that MENTOR GRAPHICS CORPORATION cannot be accused of procedural unfairness since they never indicated that the

Page 6

Copyright ©2019 LexisNexis.All rights reserved,

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

# Lexis/360°

American judge would examine its request for discovery, except in the light of the French judge's decision, nor that the judge would wait for the French judge's decision to examine the admissibility of the discovery request—much less that it would have stayed the consideration of this discovery request—but only that the American judge could refuse to grant the request for production of documents if the French court decided that such production was not admissible.

META SYSTEMS and MENTOR GRAPHICS CORPORATION add that they cannot be accused of unfairness toward the American judge whose assessment should be left to that judge alone, while MENTOR GRAPHICS CORPORATION responded to the requests of the American judge without any hint of concealing information. They specify that, after having informed the American judge of Mr. R's challenge to the request for discovery, the judge asked, in an order dated March 24, 2016, to be informed of developments related to the decision on Mr. R's challenge, without however requesting that any particular document be sent. They therefore believe that, on June 20, 2016, MENTOR GRAPHICS CORPORATION sent the American judge Mr. R's submissions of February 26, 2016, the defendant's submissions of March 31, 2016 and July 20, 2016, and Mr. R's submissions of April 13, 2016 (procedure and merits), of April 24, 2016 and of July 11, 2016.

META SYSTEMS and MENTOR GRAPHICS CORPORATION believe, concerning the arguments related to the irrelevance of the discovery procedure, that the cited Court of Cassation decision of June 12, 2012 was rendered under the old law and not under Article 2224 of the French Civil Code after the statute of limitations reform of June 17, 2008, which is applicable in this case, and that under the provisions of this law, it is proof of Mr. R's knowledge that the category of job-related invention had been acquired which gave him the right to additional compensation, or at the very least, the use of the invention—sought in the discovery procedure—which must be considered knowledge by Mr. R of facts that would allow him to exercise any right to additional compensation and which is therefore likely to cause the statute of limitations to run against him. They therefore believe that this procedure is relevant and that, in any event, Mr. R is barred from requesting that documents that have not yet been obtained during discovery be prohibited. Also, one cannot declare that any information that may be obtained in the context of the discovery procedure is not useful to the case, even before gaining knowledge of such items.

META SYSTEMS and MENTOR GRAPHICS CORPORATION further argue that the Hague Convention of 18 March 1970 does not exclude the use of other legal mechanisms, particularly by parties, such that evidence obtained on the basis of 28 U.S.C. § 1782 is admissible before the pretrial judge and that if, pursuant to Article 771 of the French Code of Civil Procedure, the pretrial judge has "sole jurisdiction" to "order [... ] any investigative measure," this exclusive jurisdiction only exists in relation to other panels of the Court and means that it only exists if the parties wish to obtain an investigative measure once the pretrial judge has been appointed, in relation to other panels of the court in question.

META SYSTEMS and MENTOR GRAPHICS CORPORATION also indicate that initiating proceedings in the American courts for the production of documents in order to use them before the Tribunal de Grande Instance while a stay had also been requested before the same court, does not in any way constitute estoppel, since both actions which Mr. R claims are contradictory as they are not of the same nature, since the stay of proceedings is absolutely not in contradiction with the simultaneous initiation of proceedings whose sole purpose is to obtain evidence in support of the arguments developed on the merits in the context of the pending proceedings before the Tribunal de Grande Instance.

META SYSTEMS and MENTOR GRAPHICS CORPORATION further believe that they have not violated the principle of confidentiality which applies to the CNIS case, adding that, on February 15,

Page 7

Copyright ©2019 LexisNexis. All rights reserved,

**Lexis/360°**

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

2016, the American judge was reminded of this principle, which does not apply to the existence of a CNIS procedure or to the proposal that would be made by the CNIS. They maintain that it is therefore indisputable that the French courts welcome evidence obtained from foreign courts as long as fundamental trial rules are respected, since Mr. R does not provide any evidence to the contrary.

They specify that they have nothing to hide from Mr. R concerning the content and methods of carrying out the proceedings initiated in the United States on the basis of 28 U.S.C. § 1782 and that all these documents are furthermore available online in the United States and are easily accessible through the PACER legal platform. They specify that they produced a complete list of the documents filed in the context of these proceedings on March 30, 2016, along with the cover letter for sending these documents to Mr. R's French lawyer on March 30, 2016.

META SYSTEMS and MENTOR GRAPHICS CORPORATION finally add that they also sent Mr. R the documents related to the patent infringement proceedings regarding patent US 376  before the Oregon court, as well as additional information following a subpoena to produce documents of April 21, 2016, regarding documents that were not covered by confidentiality obligations. They specify that the reports that were not sent to Mr. R contained confidential information and that they were not, at least in their entirety, submitted in the proceedings before the Oregon court.

REASONING FOR THE DECISION

Regarding the grounds for invalidity of the summonses delivered on January 2 and 13, 2015;

According to its latest submissions, META SYSTEMS and MENTOR GRAPHICS CORPORATION have waived their right to raise the invalidity of the summonses such that it should be acknowledged.

Regarding the request that MENTOR GRAPHICS CORPORATION be ordered to send the Court of the Northern District of California a complete and translated copy of the submissions made on behalf of Mr. R in the context of the case before the Tribunal de Grande Instance of Paris,

It should be noted that META SYSTEMS and MENTOR GRAPHICS CORPORATION

prove that they produced, on July 20, 2016, in the discovery proceeding initiated before the American judge, a copy of the submissions produced by Mr. R before the pretrial judge, along with their translation, i.e., his submissions of April 13, 2016 before the Pretrial Judge and before the trial Court and those of April 23, 2016 before the Pretrial Judge.

META SYSTEMS and MENTOR GRAPHICS CORPORATION further prove that they also sent to the American judge, on the same date and in the same form, Mr. R's last submissions filed on July 11, 2016 regarding the interlocutory motion decided by this ruling.

Since this request has been met, it will therefore be rejected.

Regarding the request to prohibit MENTOR GRAPHICS CORPORATION and META SYSTEMS from entering into evidence any documents or information that may have been obtained by this discovery until the Tribunal de Grande Instance of Paris rules on the use of such discovery;

Regarding the claim of META SYSTEMS and MENTOR GRAPHICS CORPORATION's alleged unfairness in the context of the discovery proceedings;

It appears from the documents entered into evidence that MENTOR GRAPHICS CORPORATION proves that on March 2, 2016 it informed the American judge of Mr. R's opposition to the discovery

Page 8

Copyright ©2019 LexisNexis,All rights reserved,

**Lexis/360°**

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

procedure due to the proceedings brought before the Tribunal de Grande Instance of Paris. This information led the US judge to request, in an order dated March 24, 2016, that MENTOR GRAPHICS CORPORATION keep the judge informed of the progress of these proceedings, considering that they could have an impact on the discovery request.

This information was brought to the American judge when MENTOR GRAPHICS CORPORATION produced several reports ("status report") which it sent to the judge on June 20 and 30, 2016 to keep the judge informed of the status of the pretrial proceedings in France.

Furthermore, it is not disputed that, on March 30, 2016, counsel for META SYSTEMS and MENTOR GRAPHICS CORPORATION sent to Mr. Alain R's counsel all the documents they had sent to the American judge, such that Mr. R was perfectly aware of the terms of the debate before the American judge and that META-SYSTEMS and MENTOR GRAPHICS CORPORATION could not be accused of an unfair attitude while, in addition, at this stage while the American judge's ruling on the admissibility of the discovery request had not been rendered, the procedure before this judge was not intended to be adversarial.

All these communications thus allowed the American judge, on July 20, 2016, to get a complete and faithful picture of the status of the French lawsuit as of that date as well as Mr. R's questions and challenges, such that Mr. R's contention that the procedure brought before the American judge was done in an unfair manner cannot be understood.

As to the admissibility of evidence from the discovery procedure before the French judge;

Neither the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad nor the rules of the French Code of Civil Procedure preclude a party from referring, in the course of the present proceedings brought in France, to evidence gathered in the context of a discovery procedure brought at the same time in the United States, as long as such evidence was gathered by a competent authority under the applicable law in that State and in accordance with the formalities defined by that law, since it is for the French court to assess its probative value and its impact on the merits of the dispute before it.

In this respect, Mr. R, who resides in the United States, has not shown that the discovery proceeding would be contrary to the applicable law in the US, since it is based on 28 U.S.C. § 1782, according to which a court of the district in which a person resides or is located may order that person to provide testimony or a statement or to produce a document or other thing intended to be used in a foreign or international court, including in a criminal investigation prior to formal indictment.

This ground should therefore be rejected.

Regarding the irrelevance of the evidence sought in the case brought before the Tribunal de Grande Instance of Paris;

In the context of the action brought by Mr. R before this Court, it is for the Tribunal de Grande Instance alone, ruling on the merits, to assess the merits of the claim based on the statute of limitations for the action for payment initiated by META SYSTEMS and MENTOR GRAPHICS CORPORATION, since the pretrial judge does not have jurisdiction under Article 771 of the French Code of Civil Procedure to rule on such grounds for dismissal.

Therefore, the pretrial judge does not have jurisdiction to assess the relevance or irrelevance of evidence that may have been gathered in the context of the proceedings brought before the American judge and there is no reason in principle to prohibit the production of such evidence before the court

Page 9

Copyright ©2019 LexisNexis.All rights reserved.

## Lexis/360°

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

rules on the merits to assess relevance, especially as that evidence is not yet available, since the American judge ruling on the admissibility of the discovery proceedings has not yet issued a ruling.

This ground should therefore be rejected.

Regarding the claim that the American proceedings are inadmissible on the basis of the principle of estoppel;

Claims based on estoppel are analyzed as grounds for dismissal, which seeks to have the adverse party's request declared inadmissible without considering the merits.

Pursuant to Article 771 of the French Code of Civil Procedure, the pretrial judge does not have jurisdiction to rule on such grounds for dismissal.

This ground will therefore be rejected.

In light of all this evidence, Mr. R's aforementioned request for a ban should therefore be rejected.

Regarding Mr. R's request for disclosure of documents;

Pursuant to Article 771 of the French Code of Civil Procedure, the pretrial judge has jurisdiction to order, even ex officio, any investigative measure.

It appears from the proceedings that an infringement action regarding patent US 376 was brought by META SYSTEMS and MENTOR GRAPHICS CORPORATION before the Federal Court of Oregon against the companies EVE and SYNOPSIS under the terms of which the Court ordered these two companies to pay a sum of $36 million for these acts of infringement.

By a writ dated April 21, 2006, Mr. R asked for META SYSTEMS and MENTOR GRAPHICS CORPORATION to send documents related to this action for infringement of patent US 376.

It is undisputed that several documents related to this case were sent to Mr. R on June 8, 2016, except for all the expert reports by Dr. Majid S., Stephen A. D., Suzanne S., Charlie S., and James K., which they filed with the Federal Court of Oregon, having brought about the decision of October 10, 2014.

Although META SYSTEMS and MENTOR GRAPHICS CORPORATION state that these documents were not sent in entirety to Mr. R because they were confidential, no evidence has been produced or even mentioned that would support said confidentiality, particularly regarding the subject matter and content of these documents.

Therefore, META SYSTEMS' and MENTOR GRAPHICS CORPORATION's opposition in principle is unfounded, even though the discussions that may have arisen in the context of the action for infringement of patent 376, particularly on the assessment of their damages having led the Oregon court to order damages in the amount of 36 million dollars, are likely to shed light on the discussions that may arise on the valuation of said patent in the context of the action initiated before the Tribunal de Grande Instance of Paris.

It is therefore appropriate to grant the request that said documents be communicated, subject to a penalty, provided that only documents in the version that was produced before the Oregon Court are communicated and that the documents are first handed over to a bailiff designated by Mr. R and, at his own expense, the documents are placed under seal with this bailiff.

Page 10

Copyright ©2019 LexisNexis.All rights reserved,

# Lexis/360°

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

It will be the responsibility of the lawyers for each party, in the presence of the parties, only if the parties agree on this point and otherwise outside the presence of the parties, to examine together in the presence of the bailiff, the contents of said documents placed under seal in order to assess the relevance and the merits of producing them in this proceeding, and in the event of difficulties to refer them to the pre-trial judge.

Regarding costs and irrecoverable expenses

Since each of the parties has lost part of their claims, it is appropriate to leave the costs and expenses related to the present procedure to be borne by the respective parties and to dismiss their claims under Article 700 of the French Code of Civil Procedure.

FOR THESE REASONS

Ruling after full arguments have been presented by both sides, made public by filing with the clerk, not subject to appeal independently of the judgment on the merits, we

- Find that META SYSTEMS and MENTOR GRAPHICS CORPORATION waive

the right to raise the invalidity of the summonses delivered on January 2 and 13, 2015;

- Order that META SYSTEMS and MENTOR GRAPHICS CORPORATION send to such bailiff as may be designated by Mr. Alain R., and at the expense of the latter, the reports of Dr. Majid S., Stephen A. D., Suzanne S., Charlie S., and James K., as they were filed with the Federal Court of Oregon giving rise to the decision of October 10, 2014, subject to a provisional penalty of €300 per day of delay after a period of 15 days after notification of this decision within a period of 90 days;

- Rule that these documents will be placed under seal with the bailiff designated by Mr. Alain R;

- Rule that it will be the responsibility of the lawyers for each party, in the presence of the parties, only if the parties agree on this point and otherwise outside the presence of the parties, to examine together in the presence of the bailiff, the contents of said documents placed under seal in order to assess the relevance and the merits of producing them in these proceedings, and in the event of difficulties to refer them to the pretrial judge.

- Rule that we reserve the right to liquidate the penalty payment;

- Dismiss Mr. Alain R.'s other requests;

- Refer this case to the pretrial judge's hearing of December 1, 2016 at 10:00 AM for further submissions from the parties on the merits, failing which the case will be closed and recorded;

- Rule that each of the parties will bear the costs and expenses they have incurred in the context of this present interlocutory procedure;

---

**To learn more:**

**Jurisprudence**
Paris, March 23, 2018, No. 15/00961

---

**Titles**

Page 11

Copyright ©2019 LexisNexis.All rights reserved,

## Lexis/360°

Reference: None
Document viewed at https://www.lexis360.fr
Jurisprudence
Downloaded on 12/16/2019

Employee invention, Work-related invention, Conciliation proposal in CNIS procedure, Production of evidence, Discovery procedure, International law (Procedure, Material jurisdiction, Procedural pretrial judge, Inadmissibility claim, Principle of estoppel, Material jurisdiction, Procedural pretrial judge, Communication of evidence, Confidentiality (Evidence).

## Summary

The employee's former employer and the company that filed the patent of which the employee is the inventor cannot be accused of an unfair attitude in the context of the discovery procedure initiated by the latter company before an American court. In fact, this company informed the American judge of the employee's opposition to the proceedings, due to parallel proceedings initiated before the Tribunal de Grande Instance of Paris. Furthermore, counsel for both companies have sent the employee's counsel all the evidence they sent to the American judge, such that the employee has perfect knowledge of the terms of the debate before the American judge. All these communications allow the judge to get a complete and faithful picture of the status of the suit brought in France and the issues and objections raised by the employee.

Neither the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad nor the rules of the French Code of Civil Procedure preclude a party from referring, in the course of the present proceedings brought in France, to evidence gathered in the context of a discovery procedure brought at the same time in the United States, as long as such evidence was gathered by a competent authority under the applicable law of that State and in accordance with the formalities defined by that law. It is for the French court to assess its probative value and its impact on the merits of the dispute before it.

We have granted the request for communication of documents related to the case for infringement of the patent of which the employee is the inventor, which the defendant brought before the Oregon court against a third party. No evidence has been produced or even cited to support the confidentiality of such documents. The discussions that may have arisen in the context of the action for infringement of this patent, particularly on the evaluation of damages, are likely to shed light on discussions that may arise on the valuation of the patent in the context of the action for payment of additional compensation initiated before the Tribunal de Grande Instance of Paris.

© National Institute of Industrial Property

Copyright ©2019 LexisNexis.All rights reserved,