UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF MAHMOUD VAHABZADEH. | Case No. 20-mc-80116-DMR<br><br>**ORDER ON MOTION TO VACATE ORDER GRANTING 28 U.S.C. § 1782 APPLICATION AND TO QUASH SUBPOENA**<br><br>Re: Dkt. No. 4 |

Petitioner Mahmoud Vahabzadeh ("Mahmoud") filed an ex parte application seeking discovery pursuant to 28 U.S.C. § 1782 from Respondent Mostafa Vahabzadeh ("Mostafa") to obtain evidence for use in foreign proceedings. On August 28, 2020, the court granted Petitioner's section 1782 application and authorized issuance of a document subpoena to Mostafa. [Docket No. 3.] Mostafa now moves pursuant to section 1782 and Federal Rule of Civil Procedure 45 to vacate the order authorizing discovery and quash the subpoena. [Docket No. 4.]

This matter is appropriate for disposition without oral argument. For the following reasons, the motion to vacate is denied. The motion to quash is denied without prejudice, subject to the parties' meeting and conferring and submitting a joint letter in accordance with the court's previous instructions. [Docket No. 15.]

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mahmoud filed this application seeking discovery in aid of proceedings in France regarding the distribution of his late mother's estate. Bibi Batoul Ghoraichi was an Iranian citizen who died in Paris in 2014. [Docket No. 1-2 (Weissberg Decl., July 9, 2020) ¶¶ 4, 8.] Ghoraichi was survived by Mahmoud, her youngest son; Mostafa, her eldest son; and Sahar, Sara, and

Mohammad Vahabzadeh, who are the three children of her late son, Reza Vahabzadeh. *Id*. at ¶ 8.[1] Mahmoud avers that before her death, Ghoraichi executed two wills in which she bequeathed her entire estate in France to him. *Id*. at ¶¶ 5, 6, 8, Ex. A. Ghoraichi's estate consists of "movable assets and immovable property located in both France and Iran." In October 2014, ownership of Ghoraichi's apartment in Paris transferred to Mahmoud. Weissberg Decl. ¶¶ 9, 11.

In 2017, Sahar, Sara, and Mohammad filed a lawsuit in Paris Civil Court against Mahmoud and Mostafa claiming a share of Ghoraichi's French estate. Mostafa subsequently filed a legal brief in that action claiming his own share of the estate. *Id*. at ¶¶ 15, 16, Exs. D, E. Mahmoud is the defendant in the French lawsuit and disputes their claims. According to Mahmoud, although Mostafa, Sahar, Sara, and Mohammad have "den[ied] constantly that they have received anything" from the estate, he has evidence of "deeds of donations" of an apartment, farm, and land in Iran to Mostafa and his nieces and nephew, which he contends contradicts their claims. Weissberg Decl. ¶ 18, Ex. F.

On January 29, 2019, the Tribunal de Grand Instance de Paris ruled that the claims by Mostafa, Sahar, Sara, and Mohammad for assets of Ghoraichi's French estate "were admissible, without taking in account any assets they received in Iran" from Ghoraichi. Weissberg Decl. ¶ 19, Ex. G. Mahmoud filed an appeal of the January 29, 2019 judgment which remains pending. Weissberg Decl. ¶ 20, Ex. H. According to Mahmoud, Mostafa, Sahar, Sara, and Mohammad "are concealing the assets they have received in Iran . . . [and] are attempting to get an illegitimate share of [his] bequeath" from Ghoraichi. Weissberg Decl. ¶ 21.

Mahmoud sought leave to serve two subpoenas on Mostafa, who lives in San Ramon, California. The subpoenas seek documents and deposition testimony regarding Ghoraichi's estate and assets in Iran and worldwide. The document subpoena contains 17 requests for production of documents ("RFPs"). Mot. Ex. 1. The deposition subpoena seeks Mostafa's testimony if necessary after production of the requested documents. Mot. Ex. 2. On August 28, 2020, the court granted the section 1782 application in part. The court granted leave to serve the document

---

[1] Because the key individuals share the same surname, the court refers to Ghoraichi's children and grandchildren by their first names for clarity and concision.

subpoena but denied without prejudice the request for leave to serve the deposition subpoena as Mahmoud failed to submit a list of topics for examination. [Docket No. 3.] The order permitted Mostafa to contest the subpoena by filing a motion to quash. *Id*. at 5. Mahmoud served the subpoena on Mostafa on September 4, 2020. [Docket No. 6 (Lvovich Decl., Oct. 12, 2020) ¶ 3.]

Mostafa now moves to quash the subpoena pursuant to section 1782 and Rule 45. On December 1, 2020, the court issued an order vacating the hearing on the motion. [Docket No. 15.] In its order, the court noted that in the event that the court denies the motion to vacate, "it must then decide whether the subpoena is appropriately tailored and may be enforced in whole or in part." *Id*. The court ordered Mahmoud and Mostafa to meet and confer about the scope of the subpoena to eliminate or narrow remaining disputes if the court deems the subpoena enforceable, and to submit a joint letter by December 16, 2020 setting forth their best and final proposed compromise for each issue. *Id.*

## II.     LEGAL STANDARDS

### A.     Discovery Pursuant to 28 U.S.C. § 1782

28 U.S.C. § 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The language of section 1782 permits district courts to authorize discovery "where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'"

3

*Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting § 1782(a)).

"However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010) (citing *Intel*, 542 U.S. at 264). The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

### B. Motion to Quash

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. Fed. R. Civ. P. 45. The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b). Advisory Committee Notes to 1970 Amendment; Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).

Rule 45 provides that "on timely motion, the court for the district where compliance is

4

required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "Of course, if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'" *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680 (citation omitted). The party who moves to quash a subpoena bears the "burden of persuasion" under Rule 45(c)(3). *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted).

## III. DISCUSSION

Mostafa does not dispute that Mahmoud's application satisfies the statutory requirements of 28 U.S.C. § 1782. Instead, he argues that the application does not satisfy the third and fourth *Intel* discretionary factors. Mot. 5. The court discusses each in turn.

### A. Third *Intel* Factor

The third *Intel* factor examines "whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States." *Husayn v. Mitchell*, 938 F.3d 1123, 1128 n.9 (9th Cir. 2019).

Mostafa argues that this factor "weighs strongly" against Mahmoud and in favor of vacating the court's order. According to Mostafa, Mahmoud seeks discovery of material that he could have attempted to obtain by following the foreign tribunal's discovery rules. Mostafa submits a declaration by his attorney in France, Robinson Ladreit De Lacharriere, who states that French law recognizes litigants' rights to gather evidence by way of a discovery procedure and that French judges "authorize such measures under strict conditions." [Docket No. 5 (Ladreit Decl., Oct. 12, 2020) ¶ 11 (emphasis removed).] Ladreit states that Mahmoud did not attempt to seek any of the documents requested by the subpoena in France even though he could have pursued such production. *Id*. at ¶ 12.

Mostafa also argues that if Mahmoud had attempted to use the French discovery

procedure, it is likely that a French judge would not have permitted him to obtain all of the documents he now seeks via the subpoena. According to counsel, a party seeking an order to produce evidence in France must prove that "the documents will be useful for the Judge to assess in ruling on the case" and "must prove the documents exist." *Id*. at ¶ 12. Mostafa suggests that Mahmoud would be unable to satisfy these requirements, arguing that many of the documents requested by the subpoena are not relevant to the French proceeding because they are related to real property located in Iran. According to Mostafa, only Ghoraichi's "French estate" is at issue in the French proceedings, and the French estate does not include real property located in Iran or elsewhere. Instead, the French estate consists only of "her movable assets located in France and in foreign countries and her real property in France." Therefore, he argues, documents related to real property in Iran are not relevant to the proceedings in France. *Id*. at ¶¶ 5-6, 13-14.

Additionally, Mostafa notes that in order to obtain the requested discovery from the French court, Mahmoud would have to prove "that additional documents do exist." Ladreit Decl. ¶ 15. Mostafa states that he already provided "all available information regarding Ms. Ghoraichi's Iranian bank accounts and tax certificates" to Mahmoud's counsel in France during the lower court proceedings." *Id*.

Based on the foregoing, Mostafa contends that "it appears that Mahmoud is trying to use § 1782 to circumvent or avoid the considered policies and procedures of France." Mot. 7.

In response, Mahmoud submits a declaration by his French counsel, Kenneth M. Weissberg, who disputes the availability and effectiveness of French procedures to gather evidence for use in this case. [Docket No. 9-1 (Weissberg Decl., Oct. 23, 2020 ("Weissberg Decl. II") ¶¶ 6-8, 9-10.] He states that the available discovery proceedings in France "would not at all achieve the same results as discovery proceedings pursuant to U.S.C. § 1782" for various reasons, including limited methods of enforcement by French courts. He avers that this is why Mahmoud requested the assistance of this court to obtain evidence from Mostafa. *Id*. at ¶¶ 10-15.[2]

---

[2] Petitioner also disputes Mostafa's contentions that documents regarding real property in Iran are not relevant to the French proceeding and that Mostafa provided all "available information" in his possession to Petitioner's counsel. Weissberg Decl. II ¶¶ 18-21. The court need not resolve these disputes in order to rule on the present motion.

6

The record does not support Mostafa's claim that Mahmoud's application is an attempt to circumvent French proof-gathering restrictions. The evidence Mostafa offers to support his position appears to be Mahmoud's failure to seek this discovery in the French proceeding coupled with Mostafa's belief that Mahmoud would not have been able to obtain the requested documents even if he had pursued discovery in France. These arguments are unavailing, because "[t]he fact that more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application." *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO (TSH), 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020) (citing *In re Nikon Corp.*, No. 17-mc-80071-BLF, 2017 WL 4647753, at *4 (N.D. Cal. Oct. 16, 2017)). Instead, "[a] petitioner seeks to circumvent foreign discovery restrictions when it seeks discovery 'that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents.'" *Illumina*, 2020 WL 820327, at *5 (quoting *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (emphasis in original)); *see also In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) ("Seeking more discovery than Russian discovery procedures allow does not circumvent Russian law." (citation omitted)). Here, Mostafa presents no evidence that French policy or restrictions "prohibit the discovery sought" by Mahmoud. *See In re Accent Delight*, 791 F. Appx at 251 ("[t]hat a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means." (quotation and citation omitted)); *see also In re Ex Parte Application of Mentor Graphics Corp.*, No. 16-MC-80037-HRL, 2017 WL 55875, at *2 (N.D. Cal. Jan. 4, 2017) (finding that third *Intel* factor weighed in favor of permitting discovery for use in French proceedings, noting "the French court may still determine for itself whether to admit the evidence obtained through discovery in the United States."). Moreover, contrary to Mostafa's apparent position, the Supreme Court has held that there is no foreign discoverability limitation on the provision of section 1782 assistance, i.e., the statute does not bar granting section 1782 applications simply because the documents would be unobtainable if located in the foreign jurisdiction. *Intel*, 542 U.S. at 260-61 ("nothing in the text of § 1782 limits a district court's

1    production-order authority to materials that could be discovered in the foreign jurisdiction if the
2    materials were located there.").

3          Additionally, while Mahmoud does not indicate whether he has requested discovery in the
4    French proceeding, there is "no requirement that the party seeking discovery pursuant to section
5    1782 must first request discovery from the foreign tribunal." *In re Republic of Kazakhstan for an*
6    *Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp.
7    3d 512, 517 (S.D.N.Y. 2015) (citing *Application of Malev Hungarian Airlines,* 964 F.2d 97, 100
8    (2d Cir. 1992)); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013
9    WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) ("Courts need not determine that an applicant has
10   exhausted its discovery attempts abroad.").

11         Accordingly, the court concludes that the third *Intel* factor does not support vacating its
12   order granting section 1782 discovery.

13         **B.**    **Fourth *Intel* Discretionary Factor**

14         Under the fourth *Intel* factor, the court asks whether the discovery is "unduly intrusive or
15   burdensome." *Intel*, 542 U.S. at 265. Once a court has determined that discovery through section
16   1782 is not being used to circumvent foreign proof-gathering restrictions and grants the section
17   1782 application, "the ordinary tools of discovery management, including [Federal Rule of Civil
18   Procedure] 26, come into play; and with objections based on the fact that discovery is being
19   sought for use in a foreign court cleared away, section 1782 drops out." *Husayn*, 938 F.3d at 1128
20   n.9 (quotation and citation omitted). "In other words, once a section 1782 application is granted,
21   the ordinary rules of civil procedure relating to discovery shift into place." *Id*.

22         As noted, Mostafa moves to quash the subpoena pursuant to Rule 45. His sole argument in
23   favor of quashing the subpoena is that compliance would be unduly burdensome. According to
24   Mostafa, the subpoena seeks documents that "would likely be located in Ms. Ghoraichi's Parisian
25   apartment to which only Mahmoud has access" or are "outside the United States, in Iran or
26   France." Mot. 8. He states that due to COVID-19 and restrictions on international travel, he "is
27   poorly positioned to search for the requested documents." *Id*. Notably, Mostafa offers no
28   evidence to support his assertions about the location of, his access to, or the burden associated

8

1  with producing responsive documents.

2      As noted, the court ordered the parties to meet and confer about the scope of the subpoena in order to eliminate or narrow their disputes and to submit a joint letter setting forth their final compromises for each dispute. That letter is due by December 16, 2020. [*See* Docket No. 15.] Therefore, Mostafa's motion to quash the subpoena is denied without prejudice. To the extent that the parties are unable to resolve their disputes about the subpoena and Mostafa maintains his objection that production of some or all of the requested documents would be unduly burdensome, any joint letter must be accompanied by a sworn declaration by Mostafa that sets forth in detail all facts that support any such argument.

## IV. CONCLUSION

For the foregoing reasons, Mostafa Vahabzadeh's motion to vacate the August 28, 2020 order authorizing discovery is denied. The motion to quash is denied without prejudice.

**IT IS SO ORDERED.**

Dated: December 8, 2020



Donna M. Ryu
United States Magistrate Judge